# Exhibit 11

**Frequently Asked Questions Regarding Security-Based Swaps**

The Division of Trading and Markets, U.S. Securities and Exchange Commission (Commission), has prepared the following responses to questions regarding the definition of security-based swap under Section 3(a)(68) of the Securities Exchange Act of 1934 (Exchange Act).  These responses represent the views of the staff of the Division of Trading and Markets.  They are not a rule, regulation, or statement of the Commission.  The Commission has neither approved nor disapproved the content.  These responses, like all staff statements, have no legal force or effect: they do not alter or amend applicable law, and they create no new or additional obligations for any person. Exchange Act 3(a)(68):

Q1:  Would the staff of the Division of Corporation Finance or the Division of Trading and Markets consider a future or forward contract that permits cash or physical settlement to be "intended to be physically settled" and therefore excluded from the definitions of "swap" and "security-based swap" if, at the time the parties enter into the contract, the underlying securities cannot be legally transferred, or the transfer of the underlying securities is restricted by contract?

A1:  No. In Release 33-9338, the Commission stated that the analysis as to whether sales of securities for deferred shipment or delivery are intended to be physically settled is a facts and circumstances determination. However, the Commission also stated in Release 33-9338 that the purchase and sale of the underlying securities occurs at the time when the parties enter into the contract, and that the determination of whether an instrument is a swap or security-based swap should be made prior to execution, but no later than when the parties offer to enter into the instrument. To the extent that at the time of sale the securities underlying a future or forward contract could not be legally transferred, or the transfer of the underlying securities would be restricted by contract, the staff of the Division of Corporation Finance and the Division of Trading and Markets would not consider the contract to be "intended to be physically settled" for purposes of the definitions of "swap" and "security-based swap." Accordingly, for the staff to conclude that a sale of securities for deferred shipment or delivery is intended to be physically settled, it is a necessary prerequisite that at the time the parties enter into the contract (i) the offer and sale of the underlying securities must be registered in compliance with Section 5 of the Securities Act or an exemption from registration must be available with respect to the underlying securities, and (ii) any applicable contractual provisions restricting the transfer of the underlying securities must be satisfied or otherwise waived. [June 9, 2022]

Q2:  Is a swap based on the shares of an exchange traded fund (ETF) that tracks a broad-based securities index, such as the S&P 500, a swap or a security-based swap?

A2:  In the staff's view, the swap based on the shares of an exchange traded fund (ETF) that tracks a broad-based securities index, such as the S&P 500, is a security-based swap.  Section 3(a)(68)(A)(ii)(II) of the Exchange Act provides in part that a security-based swap means any agreement, contract, or transaction that is a swap as defined under section 1a of the Commodity Exchange Act and, among other things, is based on a single security or loan, including any interest therein or on the value thereof.  Interests, or shares, in an ETF or another similar exchange-traded product, such as a commodity pool or physical trust, are securities under

Section 2(a)(1) of the Securities Act of 1933 (Securities Act) and Section 3(a)(10) of the Exchange Act.[1] Such shares represent undivided interests in the underlying assets of the ETF or other similar exchange-traded product. ETFs and other similar exchange-traded products register offerings of shares under the Securities Act, and list such shares for trading on national securities exchanges.[2] Accordingly, a swap based on the shares of an ETF or another similar exchange-traded product meets the definition of security-based swap because it is based on a single security or loan, including any interest therein or on the value thereof.[3] This view does not change depending on the holdings of the ETF or other similar exchange-traded product, or the assets or index the ETF or other similar exchange-traded product tracks. [July 11, 2022]

---

[1] See, e.g., Order Approving Proposed Rule Change by the American Stock Exchange, Inc. Relating to Portfolio Depositary Receipts, Exchange Act Release No. 34-31591 (Dec. 11, 1992), 57 FR 60253, 60257 (Dec. 18, 1992) ("The Commission finds that the AMEX has designed adequate rules and procedures to govern the trading of PDR securities, including SPDRs. Specifically, because PDRs, in general, and SPDRs, in particular, are equity securities that will be subject to the full panoply of AMEX rules governing the trading of equity securities on the AMEX, including, among others, rules governing the priority, parity and precedence of orders and the responsibilities of specialists."); and Order Approving Proposed Rule Change and Notice of Filing and Order Granting Accelerated Approval to Amendments No. 1 and No. 2 Thereto to the Proposed Rule Change by the New York Stock Exchange, Inc. Regarding Listing and Trading of streetTRACKS® Gold Shares, Exchange Act Release No. 34-50603 (Oct. 28, 2004), 69 FR 64614, 64619 (Nov. 5, 2004) ("The Commission finds that the Exchange's proposed rules and procedures for the listing and trading of the proposed Shares are consistent with the Act. Shares will trade as equity securities subject to NYSE rules including, among others, rules governing trading halts, responsibilities of the specialist, account opening, and customer suitability requirements.").

[2] Exchange Traded Funds, Securities Act Release No. 33-10695 (Sept. 25, 2019) 84 FR 57162, 57164 (Oct. 24, 2019). See also Section 24 under the Investment Company Act of 1940.

[3] See also Order Granting Conditional Exemptive Relief, Pursuant to Section 36 of the Securities Exchange Act of 1934 with Respect to Futures Contracts on the SPIKESTM Index, Exchange Act Release No. 34-90510 (Nov. 24, 2020), 85 FR 87285, 87297 (Dec. 1, 2020) (noting that the futures contract at issue (the SPIKES) is "a futures contract *that is based on the value of a single security (i.e., the SPY)*" (an ETF tracking the S&P 500).