# Exhibit  26

Execution Copy

## SPB MASTER CONFIRMATION

This SPB Master Confirmation (this "**SPBMC**") is dated as of March 10, 2021. It sets out the terms and conditions on which Nomura Global Financial Products Inc. ("**Nomura**") agrees to provide a swap transaction facility to Archegos Fund, LP ("**Counterparty**" and, together with Nomura, each a "**Party**" and collectively the "**Parties**").

**1.     Definitions and Interpretation.**

1.1     The definitions and provisions contained in the 2006 ISDA Definitions (the "**Swap Definitions**") and in the 2002 ISDA Equity Derivatives Definitions (the "**Equity Definitions**", and together with the Swap Definitions, the "**Definitions**"), in each case as published by the International Swaps and Derivatives Association, Inc. ("**ISDA**"), are incorporated into this SPBMC and the documents comprising the Confirmation (as hereinafter defined) with respect to each SPB Transaction entered into hereunder subject as specified herein. Any capitalized term not otherwise defined herein (including in Schedule 1 hereto) shall have the meaning assigned to such term in the Definitions.

1.2     In the event of any inconsistency between any of the Swap Definitions, the Equity Definitions, this SPBMC, the SPB General Terms Supplement, an SPB Product Supplement, an SPB Transaction Supplement or the Jurisdiction Supplement (if applicable), the following documents will prevail in relation to the relevant Transaction in the following order of precedence: the SPB Transaction Supplement, the Jurisdiction Supplement (if applicable), the applicable SPB Product Supplement, the SPB General Terms Supplement, this SPBMC, the Equity Definitions and the Swap Definitions.

1.3     Any reference to a currency shall have the meaning contained in the 1998 ISDA FX and Currency Option Definitions, as published by ISDA.

1.4     This SPBMC supplements, forms part of, and is subject to, the ISDA Master Agreement (including the Schedule and Credit Support Annex) entered into between the Parties and dated as of March 8, 2021, as amended and supplemented from time to time (the "**Agreement**").  All provisions in the Agreement govern this SPBMC, except as expressly modified below.

1.5     For the purposes of the Definitions and for the Agreement:

(a)     each SPB Transaction (subject to full or partial termination from time to time pursuant to any SPB Transaction Unwind) shall be a "Transaction" for the purposes of the Agreement and an Equity Swap Transaction for the purposes of the Equity Definitions; and

(b)     the "Confirmation" with respect to each such SPB Transaction shall comprise this SPBMC, the SPB General Terms Supplement, the applicable SPB Product Supplement, the SPB Transaction Supplement relating to that SPB Transaction and, if applicable, the Jurisdiction Supplement.

**2.     Confirmation Process**

2.1     **SPB Transaction Request**

(a)     Counterparty may request on any Scheduled Trading Day after the date of this SPBMC that Nomura enter into an SPB Transaction or effect an SPB Transaction Unwind (each an "**SPB Transaction Request**").  Such SPB Transaction Request shall specify, at a minimum, the number of Units, the Underlying(s) and whether such transaction is to be

1

an SPB Transaction (and if so whether a Long SPB Transaction or a Short SPB Transaction) or an SPB Transaction Unwind.

(b)    Any SPB Transaction Request shall constitute an offer made upon the terms of this SPBMC to Nomura to enter into such SPB Transaction or effect such SPB Transaction Unwind. Counterparty may, by notice to Nomura (such notice being effective only when actually received by Nomura), revoke the offer at any time until Nomura accepts the offer.

(c)    At any time whilst the offer constituted by an SPB Transaction Request for an SPB Transaction or an SPB Transaction Unwind is outstanding Nomura may accept such SPB Transaction Request and shall promptly acknowledge acceptance of such SPB Transaction Request subject to the terms described hereinafter.

## 2.2    SPB Transaction Supplements

(a)    For each SPB Transaction entered into and SPB Transaction Unwind effected on any date Nomura will prepare and make available to Counterparty a transaction supplement substantially in the form appended at Schedule 2 (an "**SPB Transaction Supplement**").

(b)    Following the provision of an SPB Transaction Supplement, Counterparty shall promptly notify Nomura of any disagreements as to any terms. If Counterparty has not contacted Nomura specifying the disagreements within one (1) SPB Business Day of the day on which such SPB Transaction Supplement was made available to it then Counterparty shall be deemed to have agreed to such SPB Transaction Supplement and its terms shall be final and conclusive absent manifest error.

## 2.3    SPB Transaction Unwinds

Under each SPB Transaction against which an SPB Transaction Unwind is applied (but only in respect of the part of that SPB Transaction which is terminated pursuant to such application), a Valuation Date shall occur (the "**Termination Valuation Date**"), which shall be the Scheduled Trading Day agreed between the Parties or, if no agreement has been reached between the Parties at the time of the relevant SPB Transaction Request then the Termination Valuation Date shall be determined by the Calculation Agent. The Final Price, the Cash Settlement Payment Date and Payment Date with respect to the Units of the relevant SPB Transaction(s) (or part thereof) to be unwound shall be determined in accordance with the provisions of the relevant SPB Product Supplement or Jurisdiction Supplement. The number of Units the subject of each SPB Transaction affected by an SPB Transaction Unwind shall be amended by the Calculation Agent to reflect such unwind on each applicable Termination Valuation Date.

## 2.4    Adjustments and modifications to SPB Transaction Supplements

(a)    If Nomura determines, in its good faith discretion, that any adjustments or modifications are required to any terms of any SPB Transaction Supplement, Nomura may:

(i)    if the relevant adjustment or modification relates to any Terms, make such adjustment or modification upon at least five (5) SPB Business Days' written notification to Counterparty of the revised Terms; **provided** that (x) the foregoing is without prejudice to any right that Nomura may have to make a Price Adjustment to any SPB Transaction in accordance with the other terms hereof and (y) Nomura may make adjustments or modifications to the Terms of any Short SPB Transaction related to a security that is classified by Nomura as a hard-to-borrow or non-GC security or an index that includes any such security as a constituent upon notice to Counterparty; or

2

Archegos-CFTC-SEC 011552

(ii)     if the relevant adjustment or modification relates to any other term of an SPB Transaction Supplement, make the relevant adjustment or modification to the relevant SPB Transaction Supplement and make an amended and restated version of such SPB Transaction Supplement available to Counterparty.

(b)     Any notification of amendments to an SPB Transaction made by the Calculation Agent to the Parties, including, without limitation, amendments resulting from any Merger Events, Tender Offers, other Extraordinary Events or Potential Adjustment Events (each a "**Corporate Action**"), will (notwithstanding that such amendments may be notified in an amended and restated SPB Transaction Supplement) not constitute an SPB Transaction Supplement but shall be a notice only (and accordingly clause 2.4(c) shall not apply thereto).

(c)     Following the provision of an amended and restated SPB Transaction Supplement or any adjustment or modification to Terms pursuant to Clause 2.4(a) above, Counterparty shall promptly notify Nomura of any disagreements as to any terms. If Counterparty has not contacted Nomura specifying the disagreements within three (3) SPB Business Days of the day on which such amended and restated SPB Transaction Supplement was made available to it (or, if earlier, the latest day by which the relevant Transaction must be confirmed in accordance with Applicable Law), then Counterparty shall be deemed to have agreed to such amended and restated SPB Transaction Supplement and its terms shall be final and conclusive absent manifest error.

## 2.5    Early Termination

Nomura may, in its sole discretion, by giving at least five SPB Business Days' prior written notice to Counterparty (or such lesser period if required to comply with Applicable Law), terminate any outstanding SPB Transactions at a reasonable market rate determined by the Calculation Agent as if Counterparty had made and Nomura had accepted an SPB Transaction Request in respect of an SPB Transaction Unwind in relation to those SPB Transactions on the day such notice is effective.

## 3.    Synthetic Payment.

Counterparty shall pay to Nomura a Synthetic Payment (a) for each accepted SPB Transaction Request, (b) in respect of each termination (whether under its terms or otherwise) of an SPB Transaction and (c) as otherwise specified in the applicable SPB Product Supplement. A Synthetic Payment shall be calculated by Nomura and will be equal to the product of the Synthetic Payment Adjustment and the Synthetic Payment Notional Amount ("**Synthetic Payment Amount**"). If Combined Synthetic Payment is specified as "Not Applicable" in the relevant SPB Transaction Supplement, Counterparty shall pay all Synthetic Payment Amounts that have accrued but remain unpaid since the previous Synthetic Payment Date on the following Synthetic Payment Date. If Combined Synthetic Payment is specified as "Applicable" in the relevant SPB Transaction Supplement, then such Synthetic Payment Amounts will be included in the Initial Price and Final Price stated in the relevant SPB Transaction Supplement.

## 4.    Margin.

With respect to any SPB Transaction, an Independent Amount with respect to the Counterparty shall be applicable, which Independent Amount shall be determined as follows: (a) if the parties have agreed that SPB Transactions will be margined in accordance with a rules-based margin methodology provided by Nomura to the Counterparty from time to time (the "**Margin Methodology**"), an amount equal to the Equity Value multiplied by a margin rate determined by Nomura in accordance with the Margin Methodology (which Independent Amount may be specified as an aggregate amount in respect of all SPB Transactions and/or other margin positions

Confidential Treatment Requested by King & Spalding      Archegos-CFTC-SEC 011553

Counterparty maintains at Nomura); and (b) otherwise, an amount equal to the Equity Value multiplied by the Margin Percentage specified in the SPB Transaction Supplement. For the avoidance of doubt, the Credit Support Annex to the Agreement shall govern the transfer of any amounts in accordance with this paragraph. In addition, all variation margin applicable to SPB Transactions shall be determined and shall be transferred in accordance with and subject to the Credit Support Annex to the Agreement. "**Equity Value**" means, as determined by Nomura, (i) with respect to an SPB Transaction (which does not reference an Index), the number of Units multiplied by the then fair market value of the Units, and (ii) with respect to an SPB Transaction (which does reference an Index), the number of Index Units multiplied by the then current level of the Index.

**5.      Determinations.**

Where any fact, criterion or qualitative issue is required to be determined by Nomura under any Terms, unless otherwise expressly stated herein, Nomura will exercise such determination in good faith and in its commercially reasonable discretion.

**6.      No Rights in Underlying.**

The entry into an SPB Transaction does not confer on either Party any rights (whether in respect of voting, distributions or otherwise) attaching to the relevant Underlying.

**7.      Miscellaneous.**

**7.1     Entire Agreement**

This SPBMC together with the SPB General Terms Supplement, the applicable SPB Product Supplement, the applicable SPB Transaction Supplement and, if applicable, the Jurisdiction Supplement, constitutes the entire agreement and understanding of the Parties with respect to each SPB Transaction and SPB Transaction Unwind documented thereby and supersedes all oral communication and prior writings with respect thereto.

**7.2     Amendments**

(a)     Nomura may, solely where it considers it necessary in order to comply with any applicable laws, regulations, notifications, circulars, rules, guidelines, clarifications, directions, orders and/or decrees issued, published or promulgated by any governmental or regulatory authority ("**Applicable Law**"), amend the terms of the Jurisdiction Supplement upon at least thirty days' prior written notice to Counterparty of the revised terms (or such lesser period as is necessary to comply with Applicable Law).

(b)     Any other amendment, modification or waiver in respect of this SPBMC, the SPB General Terms Supplement, any SPB Product Supplement or the Jurisdiction Supplement, will only be effective if in writing (including a writing evidenced by a facsimile transmission) and executed by each of the Parties or confirmed by an exchange of electronic messages on an electronic messaging system.

**7.3     Counterparts**

This SPBMC and any document executed pursuant to this SPBMC may be executed in counterparts, each of which will be deemed an original.

**7.4     Headings**

The headings used in this SPBMC are for convenience of reference only and shall not affect the construction of or be taken into consideration in interpreting this SPBMC.

4

7.5     **Additional Acknowledgements in Relation to the Agent**

Each of the Parties acknowledges and agrees that (i) Nomura Securities International, Inc. (the "**Agent**") is acting as agent for Nomura under SPB Transactions pursuant to instructions from Nomura; (ii) the Agent is not a principal or party to any SPB Transaction and may transfer its rights and obligations with respect to any SPB Transaction to a broker-dealer that is registered with the U.S. Securities Exchange Commission and that is in compliance in all material respects with all laws applicable to it; (iii) the Agent shall have no responsibility, obligation or liability to either Party in respect to any SPB Transaction; (iv) neither Nomura nor the Agent has given, and Counterparty is not relying (for the purpose of making any investment decision or otherwise) upon, any statements, opinions, or representations (whether written or oral), other than the representations expressly set forth in this SPBMC or the Agreement; and (v) each Party agrees to proceed solely against the other Party, and not the Agent, to collect or recover any money or securities owed to it in connection with any SPB Transaction.  Each Party hereto acknowledges and agrees that the Agent is an intended third party beneficiary hereunder.  Counterparty acknowledges that the Agent is an affiliate of Nomura.  The time of dealing will be confirmed by Nomura upon request.  Nomura is not a member of the Securities Investor Protection Corporation.

7.6     **Notice regarding Nomura**

Nomura hereby notifies Counterparty that, with respect to collateral delivered to Nomura by Counterparty pursuant to this SPBMC: (i) except as otherwise agreed in writing between Nomura and Counterparty, Nomura may re-pledge or otherwise use such collateral in Nomura's business; (ii) in the event of Nomura's failure, Counterparty will likely be considered an unsecured creditor of Nomura as to such collateral; (iii) the Securities Investor Protection Act of 1970 (15 U.S.C. 78aaa through 78lll) does not protect Counterparty; and (iv) such collateral will not be subject to the requirements of Rules 8c-1, 15c2-1, 15c3-2 or 15c3-3 under the Securities Exchange Act of 1934, as amended.

Confidential Treatment Requested by King & Spalding                                                  Archegos-CFTC-SEC 011555

**IN WITNESS WHEREOF** the Parties have executed this document with effect from the date specified on the first page of this document.

**NOMURA GLOBAL FINANCIAL PRODUCTS INC.**

By:

Name:       Joshual Kurek

Title:       Authorized Representative

**ARCHEGOS FUND, LP**

By:

Name:       Sung Kook Hwang

Title:       Managing Member of the General Partner

Nomura Global Financial Products Inc. / Archegos Fund, LP
SPB Master Confirmation

**SCHEDULE 1**

**Definitions**

Capitalized terms used shall have the meanings given to them in the body of the SPB Transaction Supplement, the Jurisdiction Supplement (if applicable), the applicable SPB Product Supplement, the SPB General Terms Supplement, this SPBMC, the Equity Definitions or the Swap Definitions, as applicable. In addition, the following definitions shall apply:

"**Bonds**" means the bonds or debt securities specified in the SPB Bonds Supplement.

"**Cash Settlement Payment Date(s)**" means, each Scheduled Cash Settlement Payment Date and with respect to any Units subject to an SPB Transaction Unwind each Unwind Cash Settlement Payment Date.

"**Closed Market Country**" means each of the People's Republic of China, India, Indonesia, Korea, Malaysia, Pakistan, Russia, Taiwan, Thailand and each other country as may be agreed to by the Parties in writing from time to time.

"**Currency Day Count Fraction**" means, with respect to a currency, 1 divided by such denominator as the Calculation Agent may elect in order to convert the applicable benchmark overnight rate corresponding to that currency into a rate per day.

"**Custom Basket Shares**" means the Shares of any Issuer included in an SPB Custom Basket.

"**Ex Amount Market**" means each market as determined by the Calculation Agent where the customary practice is that a holder of shares entitlement to a dividend is determined by reference to the date that the Shares have commenced trading ex-dividend on the Exchange.

"**Fee Adjustment**" means, for each SPB Transaction, a percentage which shall be determined from time to time by Nomura acting in a commercially reasonable manner, as specified in the relevant SPB Transaction Supplement and as may be adjusted by Nomura from time to time in accordance with Clause 2.4 of the SPBMC.

"**FX Disruption Event**" means

(A) An event occurs and is continuing on any day with respect to an Underlying Currency that has the effect of preventing Nomura or any of its affiliates directly or indirectly from: (i) converting the Underlying Currency into the Settlement Currency through customary legal channels, (ii) converting the Underlying Currency into the Settlement Currency at a rate at least as favorable as the rate for domestic institutions located in the jurisdiction of the Underlying Currency (the "**Underlying Currency Jurisdiction**"), (iii) delivering the Settlement Currency from accounts inside the Underlying Currency Jurisdiction to accounts outside the Underlying Currency Jurisdiction, (iv) delivering the Underlying Currency between accounts inside the Underlying Currency Jurisdiction or to a party that is a non-resident of the Underlying Currency Jurisdiction, (v) obtaining a rate or a commercially reasonable rate (as determined by the Calculation Agent), in each case, at which its underlying hedge denominated in the Underlying Currency can be exchanged for the Settlement Currency, or (vi) delivering the Underlying Currency between accounts within the Underlying Currency Jurisdiction to a person who is a non-resident of that jurisdiction, including any action by any authority of the Underlying Currency Jurisdiction in the event of natural calamities, wars, conflict of arms or grave and sudden changes in domestic or foreign economic circumstances or other similar circumstances pursuant to any law or regulation of the Underlying Currency Jurisdiction; or

(B) the government of the Underlying Currency Jurisdiction gives public notice of its intention to impose any capital controls which the Calculation Agent determines in good faith are likely to materially affect Nomura or its affiliates ability to hedge its position under the Transaction or to unwind any such hedge;

in either case as determined by the Calculation Agent.

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011557

"**Lender**" means, with respect to an SPB Transaction, any third party entity whom the Calculation Agent determines is engaged in securities lending transactions with Nomura or any of its Affiliates in connection with the SPB Transaction (including on a portfolio basis) involving securities identical or equivalent to (or involving securities of the same issuer in respect of) the relevant Underlying.

"**Long Position**" means with respect to an Underlying that the Counterparty has one or more SPB Transactions where the Counterparty is the Floating Amount Payer.

"**Long SPB Transaction**" means with respect to an Underlying, an SPB Transaction where the Counterparty is the Floating Amount Payer.

"**Multiple Exchange Index**" means, in relation to an SPB Transaction, an Index to which the Calculation Agent determines the provisions of the SPB Index/Futures Supplement relating to "**Multiple Exchange Indices**" shall apply.

"**Open Market Country**" means any country that is not a Closed Market Country.

"**Record Amount Market**" means each market as determined by the Calculation Agent where the customary practice is that a holder of shares entitlement to a dividend is determined by reference to the applicable record date for such dividend.

"**Relevant Exchange Rate**" means the exchange rate for converting one unit of the relevant Underlying Currency into 1 unit of the Settlement Currency at a time on the relevant date as determined by the Calculation Agent in a commercially reasonable manner.

"**Scheduled Cash Settlement Payment Date**" means 1 Settlement Cycle following each Valuation Date, or if not a Currency Business Day, the next following Currency Business Day.

"**Short Position**" means with respect to an Underlying that the Counterparty has one or more SPB Transactions where the Counterparty is the Equity Amount Payer.

"**Short SPB Transaction**" means with respect to an Underlying, an SPB Transaction where the Counterparty is the Equity Amount Payer.

"**SPB Bonds**" means an SPB Transaction that references Bonds and to which the SPB Bonds Supplement applies.

"**SPB Business Day**" means each day on which commercial banks and foreign exchange markets settle payments and are open for business (including dealings in foreign exchange and foreign exchange deposits) in London.

"**SPB Custom Baskets**" means an SPB Transaction that references a basket of Shares and to which the SPB Shares/Custom Baskets Supplement applies.

"**SPB Futures**" means an SPB Transaction that references Futures and to which the SPB Index/Futures Supplement applies.

"**SPB Index**" means an SPB Transaction that references an Index and to which the SPB Index/Futures Supplement applies.

"**SPB Product Supplement**" means each of the SPB Bonds Supplement, the SPB Index/Futures Supplement and the SPB Shares/Custom Baskets Supplement appended to this SPBMC.

"**SPB Product Type**" means the "Product Type" specified in the relevant SPB Transaction Supplement, being SPB Bonds, SPB Futures, SPB Index, SPB Shares or SPB Custom Baskets, as applicable.

Confidential Treatment Requested by King & Spalding Archegos-CFTC-SEC 011558

"**SPB Shares**" means an SPB Transaction that references Shares and to which the SPB Shares/Custom Baskets Supplement applies.

"**SPB Transaction**" means an Equity Swap Transaction entered into under the terms of this SPBMC.

"**SPB Transaction Unwind**" means, with respect to an Underlying referenced in one or more SPB Transactions, the termination (in whole or in part) of one or more SPB Transactions in respect of that Underlying, as effected on the Termination Valuation Date with respect to that SPB Transaction Unwind. The Underlying, number of Units and Termination Valuation Date with respect to each SPB Transaction Unwind shall be set out in an SPB Transaction Supplement.

"**Synthetic Payment Adjustment**" means the value specified in the relevant SPB Transaction Supplement, as may be adjusted by Nomura from time to time in accordance with the provisions of the SPBMC in relation to the Terms.

"**Synthetic Payment Notional Amount**" means for the purposes of determining a Synthetic Payment Amount (i) in respect of an accepted SPB Transaction Request, the Initial Price prior to the first Valuation Date multiplied by the number of Units for the SPB Transaction with respect to that SPB Transaction Request specified in the relevant SPB Transaction Supplement, (ii) in respect of the termination of an SPB Transaction pursuant to an SPB Unwind or Clause 2.3 of the SPBMC, the Final Price determined for the purposes of such SPB Transaction Unwind or termination multiplied by the number of Units subject to such SPB Transaction Unwind or termination, (iii) in respect of the termination of an SPB Transaction other than where Sub-clause (ii) applies, the Final Price determined for the purposes of such termination multiplied by the Number of Units under that SPB Transaction as of the Termination Date and expressed to be payable under the SPB Transaction Supplement.

"**Termination Valuation Date**" has the meaning given to it in Clause 2.3 of the SPBMC. Other than for the purposes of Clause 2.3 of the SPBMC, a Termination Valuation Date shall not be a Valuation Date.

"**Terms**" means each of the following terms: the Transaction Spread, Floating Rate, Dividend/Distribution Percentage, Fee Adjustment and the Synthetic Payment Adjustment.

"**Transaction Spread**" means for each SPB Transaction, the relevant Transaction Spread as specified in the relevant SPB Transaction Supplement, as may be adjusted by Nomura from time to time in accordance with the provisions of the SPBMC in relation to the Terms.

"**Underlying**" means (i) in respect of an SPB Transaction to which Futures Price Valuation does not apply, the bonds, debt securities, index or shares specified in the relevant SPB Transaction Supplement, as applicable in each case, and (ii) in respect of SPB Transactions to which Futures Price Valuation applies, the Futures or the relevant Exchange-traded Contract relating to the Shares or Index specified in the relevant SPB Transaction Supplement, as applicable in each case.

"**Underlying Currency**" means the currency in which the relevant Underlying (or, in the case of Custom Basket Shares, the Shares of any Issuer included in the SPB Custom Baskets) is denominated except that if the Underlying is an Index the Underlying Currency means the relevant currency of the Index as described on the relevant Bloomberg Page or such other source as the Calculation Agent shall reasonably determine.

"**Underlying Jurisdiction**" means, with respect to any SPB Transaction that has an SPB Product Type of (a) SPB Shares, SPB Futures or SPB Index, the jurisdiction of incorporation of the issuer of the Underlying, and (b) SPB Custom Baskets, each of the jurisdictions of incorporation of the issuers of the Shares included in the SPB Custom Basket.

"**Unwind Cash Settlement Payment Date**" mean 1 Settlement Cycle following each Termination Valuation Date, or if not a Currency Business Day, the next following Currency Business Day.

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011559

"**U.S. Underlyings**" mean publicly traded equities or exchange traded funds issued by U.S. issuers or traded on U.S. exchanges (including American depositary receipts), baskets of such equities or exchange traded funds, or regularly quoted and published third party-sponsored indices that include any of such equities or exchange traded funds.

"**Valuation Date**" means as specified in the relevant SPB Transaction Supplement and, if applicable, the relevant SPB Product Supplement.

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 011560

## SCHEDULE 2

### Form of SPB Transaction Supplement

This SPB Transaction Supplement is entered into between Nomura Global Financial Products Inc. ("**Nomura**") and Counterparty ("**Counterparty**" and, together with Nomura, the "**Parties**") on the Trade Date set forth below.

The purpose of this communication is to confirm the terms and conditions of the SPB Transaction entered into between Nomura and Counterparty on the Trade Date specified below.  This SPB Transaction Supplement supplements, forms part of and is subject to the SPB Master Confirmation between the Parties dated as of [●], as may be amended and supplemented from time to time (the "**SPBMC**"), and, together with the SPBMC, the SPB General Terms Supplement, the applicable SPB Product Supplement and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" as referred to in the Agreement.

The terms of the SPB Transaction to which this SPB Transaction Supplement relates are as follows:

| Floating Amount Payer Payment Dates | Valuation Dates | Floating Rate Option | Combined Synthetic Payment | Margin Percentage |
|---|---|---|---|---|
| [Each Cash Settlement Payment Date] [[1st] Business Day of each month and each Unwind Cash Settlement Payment Date] [Last SPB Business Day of each month and each Unwind Cash Settlement Payment Date] | [•] / [1st Scheduled Trading Day of each month] / [Each Scheduled Trading Day] / [(a) 1st February, 1st May, 1st August and 1st November in each year from the Effective Date to the Termination Date, or in each case if not a Scheduled Trading Day, the next following Scheduled Trading Day and (b) the Scheduled Trading Day falling one Settlement Cycle prior to the Termination Date] | [AUD-SWAP OIS-RBA] [HIBOR-HKAB] [JPY-LIBOR-ICE] [NZD-OCR-RBNZ] [SGD-SIBOR-ABS] [USD-LIBOR-ICE] [GBP-LIBOR-ICE] [EUR-EURIBOR-EBF] | [Applicable][Not Applicable] | |

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 011561

| Product Identifier | RIC Code / ISIN | Underlying | SPB Product Type | Trade Date | Effective Date | Long / Short / Unwind | Futures Price Valuation[1] | Multiplier[2] | Maturity Date[3] |
|---|---|---|---|---|---|---|---|---|---|
| | | | [SPB Bonds] [SPB Shares] [SPB Custom Basket][4] [SPB | | | | [Applicable][Not Applicable] | | |

---

[1] This will be "Applicable" where the SPB Product Type is SPB Futures.  Futures Price Valuation may also be applied via the SPB Transaction Supplement to SPB Shares.  For SPB Custom Baskets, please insert "N/A".

[2] This will be "Applicable" where the SPB Product Type is SPB Futures.  Futures Price Valuation may also be applied via the SPB Transaction Supplement to SPB Shares.  For SPB Custom Baskets, please insert "N/A".

[3] This will be "Applicable" where the SPB Product Type is SPB Futures.  Futures Price Valuation may also be applied via the SPB Transaction Supplement to SPB Shares.  For SPB Custom Baskets, please insert "N/A".

[4] Where the Product Type is SPB Custom Basket, the following shall apply:

The information provided to you as counterparty to an SPB Master Confirmation (the "**Information**" and the "**Counterparty**" respectively)  in relation to any custom baskets of shares or other relevant financial instruments created by Nomura International plc (an "**NIP Custom Basket**"), is provided by the Prime Finance department of Nomura International plc ("**NIP**"). NIP is authorised by the Prudential Regulation Authority ("**PRA**"), regulated by the UK Financial Conduct Authority and the PRA and is a member of the London Stock Exchange.

For the avoidance of doubt and without limitation, Information shall include: (i) any materials relating to the NIP Custom Basket; and  (ii) in particular, the level(s) of any such NIP Custom Baskets or the level(s) of transaction(s) linked to the NIP Custom Basket which may be published or communicated by NIP from time to time (including on any page, platform or source, such as Bloomberg) and any corresponding page ticker or identifier (such level and/or ticker together, the "**Level**")).

Information relating to the NIP Custom Basket (or any part of it) is confidential and has been furnished solely for the Counterparty's information, it should be held in complete and strict confidence, and must not be referred to, disclosed, transmitted, reproduced or redistributed, in whole or in part, to another person. By receiving such Information the Counterparty agrees and represents that, (a) unless the Counterparty first obtains written consent from NIP, the Counterparty shall not disclose the Level to any person (including any of the Counterparty's affiliates or group companies) other than those of the Counterparty's own directors, officers and employees whose knowledge of such information is strictly necessary for these purposes and (b) the Counterparty shall inform NIP immediately upon becoming aware of any suspected or actual breach of this requirement. Neither

Confidential Treatment Requested by King & Spalding

|  |  |  | Index] [SPB Futures] |  |  |  |  |  |  |
|--|--|--|--|--|--|--|--|--|--|
|  |  |  |  |  |  |  |  |  |  |

| Number of Units | Initial Price / Final Price[5] | FX Rate | Synthetic Payment Adjustment | Dividend / Distribution Percentage | Transaction Spread (bps) | Fee Adjustment (bps) | Related Exchange |
|--|--|--|--|--|--|--|--|
|  |  |  | [●], or otherwise notified by Nomura to Counterparty from time to time in accordance with the SPBMC. |  |  |  |  |

**Notifications of Calculation Agent amendments:**

Any notification of amendments by the Calculation Agent, including, without limitation, amendments resulting from any Corporate Action will not constitute a Confirmation but shall be a notice only.

---

the Custom Baskets nor Levels are administered as a benchmark for the purposes of the European Benchmark Regulation (Regulation (EU) 2016/1011 ("**EU BMR**")) or the Benchmarks (Amendment and Transitional Provisions) (EU Exit) Regulations 2019 ("**UK BMR**")).

Unless otherwise agreed in writing between the Counterparty and NIP, the Counterparty shall not use any information, NIP Custom Baskets or Levels in any manner which would amount to the use of such information or Levels as a benchmark within the scope of the EU BMR, UK BMR, or within the scope of the IOSCO Principles for Financial Benchmarks, which for the avoidance of doubt includes, use of information, NIP Custom Baskets or Levels: 1. As reference for the issuance of a financial instrument; 2. As reference for the determination of the amount payable under a financial instrument or a financial contract; 3. As reference by a party to a financial contract; and 4. For measuring the performance of an investment fund.

[5]       This will be the "Initial" where the SPB Transaction is a short or long and Final Price where the SPB Transaction is an Unwind

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 011563

**SCHEDULE 3**

**SPB General Terms Supplement**

This SPB General Terms Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the applicable SPB Product Supplement, the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement. This SPB General Terms Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**General Terms:**

| | |
|---|---|
| Termination Date: | For each SPB Transaction (a) as specified in the relevant SPB Transaction Supplement, subject to adjustment in accordance with Following Business Day Convention; and (b) if a Termination Date is not specified, the final Cash Settlement Payment Date in respect of that SPB Transaction. |
| Unit: | A trading unit of the Underlying (or, in the case of an Underlying that is Custom Basket Shares, the number of Shares of each Issuer included in a single SPB Custom Basket) |
| Multiplier: | In respect of SPB Transactions to which Futures Price Valuation applies, a "Multiplier" may be specified in the relevant SPB Transaction Supplement for the purpose only of informing the Counterparty of the multiplier embedded in the relevant Exchange-traded Contract. Notwithstanding any SPB Transaction Supplement, the Multiplier for the purposes of the Equity Definitions shall be 1 for all SPB Transactions. A "Multiplier" specified in any SPB Transaction Supplement is not intended to take operative effective per the Equity Definitions. |

**Equity Amounts payable by Equity Amount Payer:**

| | |
|---|---|
| Equity Amount Payer: | As specified with respect to the relevant Units in the SPB Transaction Supplement. If a Long SPB Transaction, then the Equity Amount Payer shall be Nomura, and if a Short SPB Transaction, then the Equity Amount Payer shall be Counterparty. |
| Number of Units: | As specified with respect to the relevant Underlying in the SPB Transaction Supplement (subject to reduction from time to time pursuant to any SPB Transaction Unwind). |
| Equity Notional Amount: | The product of the Initial Price and the Number of Units (subject to any SPB Transaction Unwind). |
| Equity Notional Reset: | Applicable |
| Type of Return: | As specified in the relevant SPB Transaction Supplement; provided, however, that if Type of Return is not specified in the relevant SPB Transaction Supplement, it shall be Total Return unless the relevant SPB Transaction references an Index, in which case the Type of Return shall be Price Return. Section 8.6(b) of the Equity Definitions shall be amended so that |

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011564

references therein to "Dividend Payment Date" and "Dividend Amount" shall be read as references to "Distribution Payment Date" and "Distribution Amounts", respectively.

**Floating Amounts payable by Floating Amount Payer:**

Floating Amount Payer:

With respect to an SPB Transaction, the Party that is not the Equity Amount Payer.

Notional Amount:

For each day in a Calculation Period, the Equity Notional Amount with respect to that day.

Floating Amount Payer Payment Dates:

As specified in the SPB Transaction Supplement.

Floating Amount:

(1)     With respect to each Floating Amount Payer Payment Date that is an Unwind Cash Settlement Payment Date, the product of:

(a)     the Notional Amount of such SPB Transaction Unwind (which shall be equal to the number of Units the subject of such SPB Transaction Unwind and the Initial Price used to determine the Cash Settlement Amount payable pursuant thereto); and

(b)     the sum of (i) the Floating Rate and (ii) the Spread; and

(c)     D/DCF, where 'D' means the actual number of days from and including the first day of the Calculation Period in which such Unwind Cash Settlement Payment Date falls to but excluding the relevant Unwind Cash Settlement Payment Date and DCF means the denominator usually applied to the Currency Day Count Fraction as determined by the Calculation Agent (each such amount, an "**Unwind Floating Amount**").

(2)     With respect to each Payment Date that is not an Unwind Cash Settlement Payment Date, the Floating Amount payable in respect of such date shall be the aggregate of the Daily Floating Amounts for each day in that Calculation Period less the sum  of all Unwind Floating Amounts payable in relation to that Calculation Period.

Daily Floating Amount:

For each day in a Calculation Period, an amount equal to the product of:

(a)     the Notional Amount on such day; and

(b)     the sum of (i) the Relevant Rate and (ii) the Spread; and

(c)     the Currency Day Count Fraction.

Designated Maturity:

1 Month

Spread:

The sum of the Transaction Spread and the Fee Adjustment

Reset Dates:

Daily, provided it is an SPB Business Day

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 011565

| | |
|---|---|
| Business Days: | Each day which is an SPB Business Day and (if the Settlement Currency is not USD, GBP or JPY) a Currency Business Day with respect to the Settlement Currency |
| Business Day Convention: | Following |

**Settlement Terms:**

| | |
|---|---|
| Cash Settlement: | Applicable (modified relative to the definition thereof in the Equity Definitions as provided herein). The Parties may agree in relation to specific SPB Transactions that amounts payable under section 8.6 of the Equity Definitions be converted into a currency other than the Settlement Currency at prevailing spot rates and satisfied by payment in such currency. |
| Settlement Currency: | As agreed between the Parties from time to time |

**Calculation Agent:** As set forth in the Agreement.

**Additional Disruption Events:**

Change in Law: Applicable. Section 12.9(a)(ii) of the Equity Definitions is hereby amended to read as follows:

(a) where the Underlying Jurisdiction is a Closed Market Country:

""**Change in Law**" means that on or after the Trade Date of any SPB Transaction (A) due to the adoption of or any change in any applicable law or regulation (including, without limitation, any tax law), or (B) due to the promulgation of or any change in the interpretation by any court, tribunal or regulatory authority with competent jurisdiction of any applicable law or regulation (including any action taken by a taxing authority), the Calculation Agent determines in good faith that (1) it will, or there is a substantial likelihood that it will, within the next 30 calendar days, but before the Termination Date of the SPB Transaction, become, or it has become, illegal for a party (or an affiliate of that Party) to that SPB Transaction to hold, acquire or dispose of one or more Hedge Positions relating to such SPB Transaction or (2) a party will incur materially increased cost in performing its obligations under such SPB Transaction (including, without limitation, due to any increase in tax liability, decrease in tax benefit or other adverse effect on its tax position);"

(b) in all other circumstances:

""**Change in Law**" means that on or after the Trade Date of any SPB Transaction (A) due to the adoption of or any change in any applicable law or regulation (including, without limitation, any tax law), or (B) due to the promulgation of or any change in the interpretation by any court, tribunal or regulatory authority with competent jurisdiction of any applicable law or regulation (including any action taken by a taxing authority), the

Confidential Treatment Requested by King & Spalding                                    Archegos-CFTC-SEC 011566

Calculation Agent determines in good faith that (1) it has become illegal for a party to that SPB Transaction to hold, acquire or dispose of one or more Hedge Positions relating to such SPB Transaction or (2) a party will incur materially increased cost in performing its obligations under such SPB Transaction (including, without limitation, due to any increase in tax liability, decrease in tax benefit or other adverse effect on its tax position);"

Failure to Deliver:                Not Applicable

Hedge Positions:                The definition of "**Hedge Positions**" in Section 13.2(b) of the Equity Definitions is amended by inserting the words "or an Affiliate thereof" after the words "a party" in the third line.

Hedging Disruption:            Applicable, **provided** that no event described in Section 12.9(a)(v) of the Equity Definitions that (1) occurs solely due to the deterioration of the creditworthiness of the Hedging Party relative to other comparable financial institutions or (2) could have been avoided by the   Hedging Party, acting in a commercially reasonable manner based on prevailing circumstances applicable to it, shall be deemed to constitute a "Hedging Disruption"; **provided further** that, where the Underlying Jurisdiction is a Closed Market, the term "equity price risk" shall be deemed to include, but shall not be limited to, dividend, interest rate, settlement and currency risk.

Hedging Party:                  Nomura

Increased Cost of Hedging:      Applicable; **provided** that no event described in Section 12.9(a)(vi) of the Equity Definitions that could have been avoided by the Hedging Party, acting in a commercially reasonable manner based on prevailing circumstances applicable to it, shall be deemed to constitute an "Increased Cost of Hedging".

Hedging Party:                  Nomura

Loss of Stock Borrow:           Applicable, provided that Section 12.9(a)(vii) and 12.9(b)(iv) of the Equity Definitions are amended by deleting the words "at a rate equal to or less than the Maximum Stock Loan Rate".

Hedging Party:                  Nomura

Increased Cost of Stock Borrow:  Applicable

Initial Stock Loan Rate:        As determined by Calculation Agent with respect to each SPB Transaction taking into account any Fee Adjustment.

Hedging Party:                  Nomura

Determining Party:              Nomura, provided, however, that any determinations or

Schedule 3 - 4

calculations by the Determining Party shall be made in good faith and in a commercially reasonable manner; provided further that, following any determination or calculation by the Determining Party hereunder, upon a written request by Counterparty, the Determining Party shall promptly (but in any event within five Exchange Business Days) provide to Counterparty by e-mail to the e-mail address provided by Counterparty in such request a report (in a commonly used file form for the storage and manipulation of financial data) displaying in reasonable detail the basis for such determination or calculation (including any quotations, market date or information from internal or external sources, and any assumptions used in making such determination or calculation), it being understood that the Determining Party shall not be obligated to disclose any proprietary or confidential models used by it for such determination or calculation or any information that may be proprietary or confidential or subject to an obligation not to disclose such information.

**Consequences of FX Disruption:**   If an FX Disruption Event exists then the Calculation Agent may delay the relevant conversion into a Settlement Currency to a date when the FX Disruption Event has ceased to exist and consequently make any adjustment to the terms of the relevant SPB Transaction to account for such delay including without limitation delaying the calculation of any Initial Price, Final Price, Dividend Amount, Distribution Amount and/or delaying any applicable Cash Settlement Payment Date.

Consequences of FX Disruption in a Closed Market Country:   In addition to the foregoing, if the Underlying Jurisdiction is a Closed Market Country, the following provisions shall also apply:

If the Calculation Agent determines that an FX Disruption Event has occurred and is continuing on any Valuation Date, Cash Settlement Payment Date, Termination Date or any other valuation, determination or payment date or the date that the SPB Transaction terminates or cancels, that results in any one or more of the following to occur:

(i)    Nomura being prevented, after using commercially reasonable efforts, from performing its obligations with respect to the SPB Transaction;

(ii)   a Hedging Disruption; or

(iii)  the Hedging Party being prevented, after using commercially reasonable efforts, from converting the proceeds from the sale or the unwinding or the disposal of any such assets or instruments into the Settlement Currency,

then the determination of the Equity Amount, the Cancellation Amount, early termination amount or any other amount, as the case may be, and/or Nomura's obligation to pay such amount, as the case may be, to Counterparty, each as determined by the Calculation Agent, may be postponed until the Business Day

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011568

which falls the same number of Business Days after the Business Day on which such FX Disruption Event ceases to exist as a Cash Settlement Payment Date was originally scheduled to be after the relevant Valuation Date.

If the start of an FX Disruption Event coincides with a Disrupted Day, the above provisions shall take effect only after such postponements or adjustments have been made as a result of such Disrupted Day and Nomura's obligation to pay the Equity Amount, the Cancellation Amount, the early termination amount or any other amount, as the case may be, shall continue to be postponed in accordance with the above provisions.

Further, the occurrence of an FX Disruption Event will not constitute an Event of Default and no interest or other sum shall accrue to the Counterparty in the event that the payment of the Equity Amount, the Cancellation Amount, the early termination amount or any other amount, as the case may be, is postponed in accordance with the foregoing.

If the start of an FX Disruption Event coincides with a Hedging Disruption, then the above provisions shall prevail over the Hedging Disruption provisions.

When an FX Disruption Event is continuing, neither party may effect an SPB Transaction Unwind in relation to the relevant SPB Transactions.

Payment of Unpaid Local Taxes or Excess Local Taxes in a Tax Jurisdiction

If the Underlying Jurisdiction is a Closed Market Country or Hong Kong (a "**Tax Jurisdiction**"), the following provisions shall apply:

(a) If any amount of Local Taxes should have been taken into account but was not taken into account in the determination of any amounts payable by Hedging Party and any Potential Adjustment Events or Extraordinary Events (as the case may be, "**Unpaid Local Taxes**"), Counterparty shall pay to Nomura an amount equal to such Unpaid Local Taxes as the Calculation Agent may determine in a commercially reasonable manner on the second SPB Business Day following notification from the Calculation Agent; or if any excess amount of Local Taxes that should not have been taken into account but was taken into account in the determination of any amounts payable by Nomura and any Potential Adjustment Events or Extraordinary Events (as the case may be, "**Excess Local Taxes**"), Nomura shall pay to Counterparty an amount equal to such Excess Local Taxes on the first SPB Business Day following notification from the Calculation Agent.

(b) Counterparty hereby indemnifies and agrees to hold harmless Nomura or its Affiliates for any Unpaid Local Taxes and agrees to, upon demand by Nomura, reimburse Nomura or its Affiliates on a full indemnity basis for all Unpaid Local Taxes until the Indemnity

Confidential Treatment Requested by King & Spalding   Archegos-CFTC-SEC 011569

Cut-Off Date.

The provisions in paragraphs (a) and (b) above relating to Unpaid Local Taxes and Excess Local Taxes shall apply and remain in full force and effect even if the Termination Date has occurred, subject to the Indemnity Cut-Off Date with respect to Unpaid Local Taxes.

As used herein:

"**Indemnity Cut-Off Date**" means, with respect to any SPB Transaction, the date on which the statute of limitations for the recovery of Unpaid Local Taxes by the relevant local taxing expires in the Underlying Jurisdiction.

"**Local Taxes**" means taxes, duties and similar charges (in each case, including interest and penalties thereon) imposed by the taxing authority in any jurisdiction (including, without limitation, any retroactive or Eligible Future Taxes which in the reasonable belief of Nomura are or, in respect of Eligible Future Taxes, will be imposed by such taxing authority), that would be withheld from or paid or otherwise incurred by Nomura or its Affiliates in connection with its Hedge Positions, excluding any corporate income taxes levied on the overall net income of Nomura without regard to any refunds, credits or relief that Nomura or its Affiliates may be entitled to, including any claim for benefits under an applicable double tax agreement.

"**Eligible Future Taxes**" means any taxes, duties or similar charges (in each case, including interest and penalties thereon) that will be withheld from or paid or otherwise incurred by Nomura or its Affiliates in connection with its Hedge Positions pursuant to an announcement, decision or order (howsoever described) of the relevant taxing authority; provided that if any such taxes, duties or similar charges are not ultimately required to be withheld or paid, such amounts shall be taken into account in the calculation of Excess Local Taxes.

| | |
|---|---|
| Dividend Conversion: | With respect to any Dividend Amount, Cash Distribution Amount or Proceeds Value, such amount shall be as converted (where the Settlement Currency is different from the Underlying Currency) from the Underlying Currency into the Settlement Currency at the Relevant Exchange Rate on the relevant Dividend Receipt Date (subject to the occurrence of an FX Disruption Event (if applicable)). |
| Dividend Receipt Date: | With respect to each Dividend Amount, Cash Distribution Amount or Proceeds Value the date on which the relevant amount would have been received by the Equity Amount Payer had the Equity Amount Payer been a holder of record of the relevant Underlying on the relevant record date or ex date (as applicable as determined by the Calculation Agent). |
| Dividend/Distribution Percentage: | As separately specified in the applicable SPB Transaction Supplement for Long SPB Transactions and Short SPB |

Confidential Treatment Requested by King & Spalding   Archegos-CFTC-SEC 011570

Transactions. The Dividend/Distribution Percentage shall be subject to adjustment in accordance with this SPB General Terms Supplement and the provisions of the SPBMC relating to the Terms.

Dividend/Distribution Adjustment Event:
If the Calculation Agent reasonably determines that there has been any Change in Tax Law which would have the effect of reducing or increasing the amount of either the cash receivable in respect of or tax credit attributable to the dividend or distribution that would be paid by the issuer of the applicable SPB Shares, SPB Bonds or SPB Custom Basket Shares to a holder that:

(i)     has a taxable presence or is otherwise resident for taxation purposes in the UK; or

(ii)    if the SPB Transaction is entered into by Nomura through any of its Affiliates as its agent, has a taxable presence or is otherwise resident for taxation purposes in any jurisdiction in which such Affiliate is resident for taxation purposes or otherwise has a taxable presence; or

(iii)   if Counterparty is the Equity Amount Payer under the SPB Transaction, has a taxable presence or is otherwise resident for taxation purposes in any jurisdiction in which any Lender is resident for taxation purposes or otherwise has a taxable presence

(a "**Dividend/Distribution Adjustment Event**"), the Calculation Agent may (after taking into account any adjustment made to the Dividend/Distribution Percentage by Nomura in accordance with the SPBMC) adjust the Dividend Amount or Cash Distribution Amount (as applicable) with immediate effect by notice in writing to the Parties, or, in the event that any such change is expressed to take effect prior to the date upon which Calculation Agent gives such notice, the Calculation Agent may make such adjustments to the payment obligations of the Parties in respect of the SPB Transaction, in each case as it reasonably deems necessary in order to account for such reduction or increase.

If the SPB Transaction shall have previously terminated (including by reason of a Change in Law Additional Disruption Event), but the amount of any payment previously made or subsequently to be made thereunder is or would be affected by any Dividend/Distribution Adjustment Event, the Calculation Agent shall determine the appropriate payment to be made by a party to reflect the amount by which any payment with respect to the Dividend Amount would have been increased or decreased on account of such Dividend/Distribution Adjustment Event, including, in the case of Nomura, costs of funds, payments to any Lender and penalties due to a government or taxing authority (the "**Dividend/Distribution Adjustment Amount**"), and in addition thereto the amount, if any, by which any liability to tax of Nomura is or will be increased as a result

Confidential Treatment Requested by King & Spalding     Archegos-CFTC-SEC 011571

of the Dividend/Distribution Adjustment Amount, so that, taking into account the matter giving rise to the payment of the Dividend/Distribution Adjustment Amount, the payment thereof and the time value of money as it affects Nomura in relation to such matters, Nomura shall be in no better nor worse position by reason of the matter giving rise to the payment of the Dividend/Distribution Adjustment Amount having occurred and such payment having been made than Nomura would have been had the matter giving rise to the payment not occurred and no payment thereof had had to be made. Any Dividend/Distribution Adjustment Amount that is payable by a party shall be payable promptly following demand by the other party; **provided** that, in the case of a Dividend/Distribution Adjustment Amount payable by Nomura, such demand is made within 12 months of the Termination Date and in relation to any SPB Share Transaction that is a Short SPB Transaction, the Dividend/Distribution Adjustment Amount shall be adjusted by Nomura to reflect the amount that a Hypothetical Broker Dealer would actually receive from the relevant Lender in respect of such Dividend/Distribution Adjustment Amount under a securities loan related to the relevant Shares that terminated as of the Termination Date.

"**Change in Tax Law**" means the enactment, promulgation, execution or ratification of, or any change in or amendment to, any tax law (or the official interpretation of any tax law) that occurs after the Parties enter into the relevant SPB Transaction.

| | |
|---|---|
| Adjustments: | In determining any amount, including but not limited to the Final Price, Equity Amount, Dividend Amount, Full Redemption Amount, Cash Partial Redemption Amount, Non-Cash Partial Redemption Amount, Distribution Amount, Non-Cash Distribution Amount, Proceeds Value and the effect of any Potential Adjustment Event, the Calculation Agent may make any adjustments it reasonably considers necessary to account for any costs, commissions, other fees and any Local Taxes that Nomura may be required to or may otherwise incur, or that the Hedging Party may be required to pay or may otherwise incur in connection with its Hedge Positions. |

**Additional Representations, Agreements and Acknowledgments**:

| | |
|---|---|
| Non-Reliance: | Applicable |
| Agreements and Acknowledgments regarding Hedging Activities: | Applicable |
| Additional Acknowledgments: | Applicable |
| **Additional Representations by Counterparty:** | Counterparty represents, as of the date hereof and as of each day on which any SPB Transaction or SPB Transaction Unwind is entered into, that: (a) Counterparty is not entering into any SPB Transaction to create actual or apparent trading activity in any Underlying (or any security convertible into or exchangeable for an Underlying) or to raise or depress or otherwise manipulate |

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011572

the price of such Underlying (or any security convertible into or exchangeable for the same) or otherwise in violation of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), and the rules and regulations thereunder; (b) Counterparty's Section 16 Percentage (as defined herein) shall not, during the term of the Transaction, exceed 10%; (c) Counterparty is not entering into any SPB Transaction "on the basis of" (as such phrase is defined in Rule 10b5-1 under the Exchange Act) any material non-public information regarding any Underlying or any Issuer; (d) Counterparty is not an "affiliate" of any issuer of any Underlying within the meaning of Rule 144 of the Securities Act of 1933, as amended, and has not been an "affiliate" of any such issuer at any time during the prior three calendar month period; and (e) Counterparty is and, after giving effect to each SPB Transaction, will be in compliance with any reporting obligations under the Exchange Act that it has with respect to the relevant Underlying.

For purposes of this paragraph, the term "**Section 16 Percentage**" shall mean, as of any day, the fraction, expressed as a percentage (A) the numerator of which is the number of Shares that Counterparty and any of its affiliates or any other person subject to aggregation with Counterparty for purposes of the beneficial ownership test under Section 13 of the Exchange Act, or any group (within the meaning of Section 13 of the Exchange Act) of which Counterparty is to be a part beneficially owns (within the meaning of Section 13 of the Exchange Act), without duplication, on such day (or, to the extent that for any reason the equivalent calculation under Section 16 of the Exchange Act and the rules and regulations thereunder results in a higher number, such higher number) and (B) the denominator of which is the number of Shares outstanding on such day.

**Account details:**

Account for payments to Nomura:    To be provided in writing prior to settlement

Account for payments to Counterparty:    To be provided in writing prior to settlement

**Consent to Regulatory Disclosure:**

Without prejudice to the generality of any applicable law, Counterparty expressly consents to the disclosure by Nomura or its affiliates to the relevant authorities in the jurisdiction of the incorporation or organization of the Issuer (a "**Relevant Jurisdiction**"), each jurisdiction in which the Underlying and/or Hedge Positions attributable to Nomura and/or its affiliates are located and/or traded (each, a "**Local Jurisdiction**") or any jurisdiction of tax residence of the Issuer (a "**Tax Residence Jurisdiction**"), information relating to the SPB Transaction (including, without limitation, the name of Counterparty and any dates and amounts specified in the SPB Transaction Supplement) as may be required by such relevant authorities from time to time pursuant to applicable laws and regulations of the Relevant Jurisdiction, the Local Jurisdiction and/or the Tax Residence Jurisdiction (as applicable); provided, however, that if Nomura or any of its affiliates determines in good faith that such relevant authorities require such information to be disclosed in connection with an inquiry related specifically to Counterparty (and not, for the avoidance of doubt, a routine regulatory examination or any broadly applicable reporting requirements where

Confidential Treatment Requested by King & Spalding    Archegos-CFTC-SEC 011573

Counterparty's data is aggregated with that of other Counterparties), then Nomura will, to the extent reasonably practicable and not prohibited by applicable law or any relevant judicial, legal or administrative body, provide Counterparty with advance notice of any such disclosure.

Confidential Treatment Requested by King & Spalding                                                    Archegos-CFTC-SEC 011574

## SCHEDULE 4

## PRODUCT SUPPLEMENTS

### SPB Bonds Supplement

The following terms shall apply where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Bonds.

This SPB Bonds Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the SPB General Terms Supplement, the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement.  This SPB Bonds Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**General Terms:**

| | |
|---|---|
| Issuer: | The Issuer of the Bonds. |
| Bonds: | Subject to "Additional Provisions – Conversions" below, the Underlying specified in the relevant SPB Transaction Supplement. |
| Underlying Shares: | In respect only of Bonds that are exchangeable or convertible bonds, the shares, if any, into or for which the Bonds are or may be convertible or exchangeable at a specified time, or from time to time, whether at the option of the Issuer or any holders thereof or on a mandatory basis. |
| Transaction Face Amount: | Number of Units multiplied by the principal amount outstanding of a Bond on the Effective Date.  The Transaction Face Amount shall be subject to reduction by the Calculation Agent on account of any Partial Redemption. |
| Relevant Jurisdiction: | With respect to any amount payable under an SPB Transaction, such of the jurisdictions specified in sub-paragraphs (i), (ii) and (iii) of "Dividend/ Distribution Adjustment Event" in this SPB Bonds Supplement as the Calculation Agent may determine to be material for the purposes of such payment. |
| Scheduled Trading Day: | (a) In respect of Bonds that are not exchangeable or convertible bonds, not applicable; and (b) in respect of Bonds that are exchangeable or convertible bonds, as determined in accordance with Section 1.31 of the Equity Definitions. |
| Bond Business Day: | Each day which is both an SPB Business Day and (if applicable) a Scheduled Trading Day. |
| Observation Date: | In respect of a payment under Bonds (a) that are bearer bonds, the date of such payment and (b) that are registered bonds, whichever of the record date for such payment under such Bonds (as specified by the Issuer or in the legal instrument governing the Bonds or as otherwise determined by the Calculation Agent) and the date of such payment that the Calculation Agent determines to be the more appropriate in |

Confidential Treatment Requested by King & Spalding                                                  Archegos-CFTC-SEC 011575

connection with such Bonds.

| | |
|---|---|
| Exchange: | (a) In respect of Bonds that are not exchangeable or convertible bonds, not applicable; and (b) in respect of Bonds that are exchangeable or convertible bonds, the exchange or quotation system on which the largest volume of Underlying Shares normally trade. |
| Related Exchange: | Not Applicable |

**Equity Amounts payable by Equity Amount Payer:**

Equity Amount:
Each Equity Amount shall be determined as if this SPB Transaction were a Share Transaction; provided that if the Equity Amount is payable on a Cash Settlement Payment Date falling on or after the Full Redemption Date or the Scheduled Maturity Date, the Equity Amount payable on the corresponding Cash Settlement Payment Date shall be equal to:

(i) any amounts of principal actually paid by the Issuer in cash to holders of the Bonds in the Relevant Jurisdiction on the Full Redemption Date or Scheduled Maturity Date, as applicable, in respect of Bonds with an outstanding principal amount equal to the Transaction Face Amount as of the Observation Date relating to the Full Redemption Date or the Scheduled Maturity Date of the Bonds (prior to giving effect to such principal payment), as applicable, minus

(ii) the Initial Price multiplied by the Transaction Face Amount as of the Observation Date relating to the Full Redemption Date or as of the Scheduled Maturity Date of the Bonds (prior to giving effect to such principal payment), as applicable.

Cash Settlement Payment Dates:
Notwithstanding the definition of Cash Settlement Payment Dates in Schedule 1 of the SPMBC, if the Observation Date with respect to the Scheduled Maturity Date or the Full Redemption Date occurs on or prior to the date that would (but for this proviso) have been the final Cash Settlement Payment Date (the "**Scheduled Final Cash Settlement Payment Date**"), such Cash Settlement Payment Date shall not occur, and instead the final Cash Settlement Payment Date shall occur five SPB Business Days following the Scheduled Maturity Date or the Full Redemption Date (as the case may be).

Initial Price:
(i) Prior to and on the first Valuation Date, the Initial Price shall be a price per Unit of the relevant Underlying determined by the Calculation Agent acting in a commercially reasonable manner, as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the Effective Date or relevant Valuation Date, as applicable, using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable); and

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011576

(ii) at any time after the first Valuation Date, the Final Price as at the most recent Valuation Date.

The Initial Price shall be inclusive of accrued interest through the Effective Date, unless the Calculation Agent determines that on the Effective Date the Bonds trade exclusive of accrued interest, in which case such Initial Price will be exclusive of accrued interest.

Final Price:

The Final Price for any Valuation Date shall be a value per Unit of the relevant Underlying determined by the Calculation Agent acting in a commercially reasonable manner, as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the relevant Valuation Date using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable).

The Final Price shall be inclusive of accrued interest through the relevant Valuation Date, unless the Calculation Agent determines that on the Effective Date the Bonds trade exclusive of accrued interest, in which case such Final Price will be exclusive of accrued interest.

Where the Underlying Jurisdiction is Japan, for the purposes of determining the Final Price, the Calculation Agent may take into account any closing special quote per Underlying quoted by the Exchange (*tokubetsu kehaine*).

Valuation Time:

The time selected by the Calculation Agent in a commercially reasonable manner.

Valuation Dates:

As specified in the relevant SPB Transaction Supplement; provided that any reference to "Scheduled Trading Day" in the definition of Valuation Dates as specified in the relevant SPB Transaction Supplement shall be construed as a reference to "Bond Business Day".

Disrupted Day:

Section 6.4 of the Equity Definitions shall not apply. "**Disrupted Day**" means any Scheduled Trading Day on which (a) any event that disrupts or impairs (as determined by the Calculation Agent) the ability of market participants in general to effect transactions in or obtain market values for the Bonds or (in the case of a Bond which is a convertible or exchangeable bond) any Underlying Shares has occurred or (b) in the case of a Bond which is a convertible or exchangeable bond, the Exchange fails to open for trading during its regular trading session. The Calculation Agent shall as soon as reasonably practicable under the circumstances notify the Parties or other Party, as the case may be, of the occurrence of a Disrupted Day on any day that, but for the occurrence of a Disrupted Day, would have been a Valuation Date. Without limiting the obligation of the Calculation Agent to notify the Parties as set forth in the preceding sentence, failure by the Calculation Agent

Confidential Treatment Requested by King & Spalding                                   Archegos-CFTC-SEC 011577

to notify the Parties of the occurrence of a Disrupted Day shall not affect the validity of the occurrence and effect of such Disrupted Day on any SPB Transaction to which this SPB Bonds Supplement applies.

| | |
|---|---|
| Consequences of a Disrupted Day: | Section 6.6 of the Equity Definitions shall not apply.  If any Valuation Date (other than a Valuation Date occurring pursuant to sub-paragraph (a) of the definition thereof in this SPB Bonds Supplement) is a Disrupted Day, then such Valuation Date shall be the first succeeding Bond Business Day that is not a Disrupted Day; provided that if such Valuation Date has not occurred as of the Valuation Time on the eighth Bond Business Day immediately following the date which, but for the occurrence of the event causing the Disrupted Day, would have been such Valuation Date, then (1) that eighth Bond Business Day shall be deemed to be such Valuation Date, and (2) the Calculation Agent shall determine its good faith estimate of the value of the Bonds (inclusive of accrued interest through such eighth Bond Business Day, unless the Calculation Agent determines that on such day the Bonds then trade exclusive of accrued interest), on that eighth Bond Business Day (and such value shall be the Final Price for such Value Date). |
| Full Redemption Date: | The date, if any, on which the Issuer pays all holders of the Bonds in the Relevant Jurisdiction in respect of the entire then outstanding principal amount of the Bonds held by such holders in cash (a "**Full Redemption**") in respect of an Observation Date that occurs during the period extending from and including the Effective Date to but excluding the Scheduled Final Cash Settlement Payment Date. |
| Scheduled Maturity Date: | The date on which the Bonds are scheduled to be redeemed in full (without taking into account any provisions in their terms and conditions relating to the early redemption or acceleration of the Bonds). |
| Full Redemption Amount: | The amount of principal actually paid by the Issuer in cash on the Full Redemption Date to holders of the Bonds in the Relevant Jurisdiction in respect of Bonds with an outstanding principal amount equal to the Transaction Face Amount as of the Observation Date relating to the Full Redemption Date. |
| Synthetic Payment for Full Redemptions: | The Synthetic Payment Notional Amount for the purposes of determining a Synthetic Payment pursuant to the occurrence of a Full Redemption shall be equal to the sum of the Full Redemption Amount and any Proceeds Value determined by the Calculation Agent in connection with such Full Redemption (or that would have been so determined if "Non-Cash Distributions, Redemptions and Conversions Occurring Following the Final Valuation Date" had applied thereto). |

**Additional Equity Amounts:**

| | |
|---|---|
| Additional Equity Amounts Payer: | As specified in the Consequences of Cash Partial Redemptions provision below. |

Confidential Treatment Requested by King & Spalding
Archegos-CFTC-SEC 011578

| | |
|---|---|
| Additional Equity Amounts Period: | The period which commences on, and includes, the Effective Date and ends on, but excludes, the final Cash Settlement Payment Date. |
| Additional Equity Amount: | In respect of any Partial Redemption that consists of cash (in whole or in part), the Additional Equity Amount shall be an amount equal to: |

    (i)      the Cash Partial Redemption Amount; minus

    (ii)     the Initial Price as of the Valuation Date immediately preceding the Observation Date for such Cash Partial Redemption multiplied by the portion of the Transaction Face Amount to which such Cash Partial Redemption Amount relates (as determined by the Calculation Agent).

| | |
|---|---|
| Additional Equity Amounts Payment Dates: | The Additional Equity Amounts Payer shall pay to the other Party any Additional Equity Amount five SPB Business Days following the related Partial Redemption Date, notwithstanding the occurrence of the final Cash Settlement Payment Date (unless the Partial Redemption Date occurs more than six months following the final Cash Settlement Payment Date, in which case the Additional Equity Amount will not be paid). |
| Partial Redemption: | Any repayments of principal on the Bonds or redemption of the Bonds that corresponds to Bonds with an outstanding principal amount equal to the Transaction Face Amount as of the Observation Date for the Partial Redemption, where (i) the Observation Date occurs during the Additional Equity Amounts Period, (ii) such repayment or redemption is expected to be made by the Issuer to holders of the Bonds in the Relevant Jurisdiction, and (iii) such repayment or redemption (a) is all in cash, but is in respect of less than the entire principal amount of the Bonds then outstanding; (b) is comprised partially of cash and partially of securities or assets other than cash, and is in respect of all or any portion of, the principal amount of the Bonds then outstanding; or (c) is comprised solely of securities or assets other than cash, and is in respect of all or any portion of, the principal amount of the Bonds then outstanding. |
| Cash Partial Redemption Amount: | The portion, if any, of a Partial Redemption that consists of cash. |
| Non-Cash Partial Redemption Amount: | The portion, if any, of a Partial Redemption that consists of securities or assets other than cash for which the Observation Date occurs during the Additional Equity Amounts Period, in respect of Bonds with an outstanding principal amount equal to the Transaction Face Amount as of the Observation Date. |
| Partial Redemption Date: | The date on which the Issuer makes a Partial Redemption. |
| Consequences of Cash Partial Redemptions: | If the Additional Equity Amount is positive, the Equity Amount Payer shall pay the related Additional Equity Amount to the Floating Amount Payer on the relevant Additional Equity Amounts Payment Date. |

Confidential Treatment Requested by King & Spalding          Archegos-CFTC-SEC 011579

If the Additional Equity Amount is negative, the Floating Amount Payer shall pay the absolute value of the related Additional Equity Amount to the Equity Amount Payer on the relevant Additional Equity Amounts Payment Date.

Consequences of Non-Cash Partial Redemption:

The Calculation Agent shall adjust the terms of the Transaction, as it reasonably deems appropriate, to account for any Non-Cash Partial Redemption(s), but without giving rise to an obligation for either Party on account of such Non-Cash Partial Redemption which is a delivery rather than a payment obligation, and subject to the "Non-Cash Distributions and Redemptions Occurring Following the Final Valuation Date" provision of this SPB Bonds Supplement.

Synthetic Payment for Partial Redemptions:

Counterparty shall pay to Nomura a Synthetic Payment in respect of each Additional Equity Amount Payment Date. The Synthetic Payment Notional Amount for the purposes of determining such Synthetic Payment shall be equal to the sum of the Cash Partial Redemption Amount and the cash value of the Non-Cash Partial Redemption Amount, as determined by the Calculation Agent (or as would have been so determined if "Non-Cash Distributions, Redemptions and Conversions Occurring Following the Final Valuation Date" had applied thereto).

**Distribution Amounts:**

Distribution Amounts Payer:

Equity Amount Payer

Distribution Amounts Period:

The period that commences on, and includes the Effective Date and ends on, but excludes, the final Cash Settlement Payment Date.

Distribution Amount:

Any and all payments or distributions, including, without limitation, interest and coupon payments and consent fees, but excluding Partial Redemption Amounts or Full Redemption Amounts, that are actually made by the Issuer to holders of the Bonds in the Relevant Jurisdiction in respect of an outstanding principal amount of the Bonds equal to the Transaction Face Amount as of the relevant Observation Date and for which the Observation Date occurs during the Distribution Amounts Period.

Actual Cash Distribution Amount:

The portion of a Distribution Amount, if any, that consists of cash.

Non-Cash Distribution Amount:

That portion of a Distribution Amount, if any, that consists of property other than cash including, without limitation, securities or other non-cash assets.

Consequences of Actual Cash Distribution Amounts:

The Distribution Amounts Payer shall pay the Floating Amount Payer an amount (the "**Cash Distribution Amount**") equal to the product of the applicable Dividend/Distribution Percentage and the Actual Cash Distribution Amount five SPB Business Days following the relevant Distribution Receipt Date,

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011580

notwithstanding the occurrence of the final Cash Settlement Payment Date (unless the Distribution Receipt Date occurs more than six (6) months following the final Cash Settlement Payment Date, in which case the Cash Distribution Amount will not be paid).

| | |
|---|---|
| Consequences of Non-Cash Distribution Amounts: | The Calculation Agent shall adjust the terms of the Transaction, effective as of the relevant Distribution Receipt Date, to account for any Non-Cash Distribution Amount(s), subject to the "Non-Cash Distributions and Redemptions Occurring Following the Final Valuation Date" provision of this SPB Bonds Supplement. |
| Distribution Receipt Dates: | In respect of a Distribution Amount, the date on which the payment or distribution by the Issuer in respect of that Distribution Amount would have been received by holders of the Bonds in the Relevant Jurisdiction. |

**Additional Disruption Events:**

Insolvency Filing:                    Applicable

**Additional Provisions:**

(a) **Conversions.** This provision shall apply only in respect of Bonds that are convertible or exchangeable bonds. If the Issuer converts the Bonds of holders in the Relevant Jurisdiction, whether pursuant to a mandatory conversion or optional conversion rights of the issuer or a holder, in whole or in part, into any securities or assets other than cash (including, without limitation, any Underlying Shares) (a "**Conversion**"), as of any Observation Date that occurs during the period from and including the Effective Date to but excluding the final Cash Settlement Payment Date, then, subject to the "Non-Cash Distributions and Redemptions Occurring Following the Final Valuation Date" provision of this SPB Bonds Supplement:

    (i) if such conversion is in respect of less than all of the SPB Bonds then outstanding, then this SPB Transaction shall become an SPB Transaction with respect to the Bonds and such other securities or such other assets, or any combination of the foregoing, as applicable, and the Calculation Agent shall adjust the terms of such SPB Transaction as it reasonably deems appropriate to account for such conversion; and

    (ii) if such conversion is in respect of all of the Bonds then outstanding, then this SPB Transaction shall become an SPB Transaction with respect to such other securities or such other assets, or any combination of the foregoing, as applicable, and the Calculation Agent shall adjust the terms of such SPB Transaction as it reasonably deems appropriate to account for such conversion.

(b) **Non-Cash Distributions, Redemptions and Conversions Occurring Following the Final Valuation Date.** Notwithstanding anything to the contrary in this SPB Bonds Supplement, if the Observation Date for any Non-Cash Distribution Amount, Non-Cash Partial Redemption or Conversion occurs during the period from and including the final Valuation Date to but excluding the final Cash Settlement Payment Date for an SPB Transaction, then in lieu of making adjustments described under the headings "Consequences of Non-Cash Distribution Amounts", "Consequences of Non-Cash Partial Redemptions" and "Conversions", (i) the Calculation Agent shall determine a cash value of the proceeds (the "**Proceeds Value**") that would be received by a holder in the Relevant Jurisdiction of Bonds with an outstanding principal amount equal to the Transaction Face

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011581

Amount, as of the date that such proceeds are received by holders of the Bonds in the Relevant Jurisdiction (the "**Proceeds Receipt Date**"), and (ii) the Equity Amount Payer shall pay the Proceeds Value to the Floating Amount Payer on the fifth SPB Business Day following the Proceeds Receipt Date, unless the Proceeds Receipt Date occurs more than six months following the final Cash Settlement Payment Date, in which case the Proceeds Value will not be paid.

Confidential Treatment Requested by King & Spalding                          Archegos-CFTC-SEC 011582

### SPB Shares/Custom Baskets Supplement

The following terms shall apply where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares or SPB Custom Baskets.

This SPB Shares/Custom Baskets Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the SPB General Terms Supplement, the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement.  This SPB Shares/Custom Baskets Supplement shall be construed in accordance with Clause 1 of the SPBMC.

### General Terms:

| | |
|---|---|
| Futures Price Valuation: | Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, as specified in the relevant SPB Transaction Supplement, provided that, for purposes hereof, Section 6.8 of the Equity Definitions shall be amended by deleting references to "Index" and "Index Transaction" and replacing them with references to "Share" and "Share Transaction" respectively, and that the words "level of the relevant Index" in Section 6.8(e) of the Equity Definitions shall be deleted and replaced with the words "price of the relevant Shares as determined by the Calculation Agent". |
| Shares: | Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares: (a) If Futures Price Valuation applies, the share that underlies the Exchange-traded Contract; (b) if Futures Price Valuation does not apply, the Underlying. |
| Exchange-traded Contract: | Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares: (a) if Futures Price Valuation applies, the Underlying; (b) if Futures Price Valuation does not apply, Not Applicable. |
| Exchange: | (a)      Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, the exchange or quotation system identified by the Exchange Reuters ID Number in the SPB Transaction Supplement; or |
| | (b)      where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, each exchange or quotation system on which the largest volume of Shares of each Issuer included in the SPB Custom Basket normally trade. |
| Related Exchange: | (a)      Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, All Exchanges; |
| | (b)      where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, each exchange or quotation system where trading has a material effect (as determined by the Calculation Agent) on the overall market for futures or options contracts relating to the Shares of each Issuer included in the SPB Custom Basket; or |

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011583

(c)      in either case, where the Underlying Jurisdiction is a Closed Market Country, All Exchanges, provided that, if the Underlying is the S&P CNX Nifty Index, Related Exchange shall be the National Stock Exchange of India Limited.

**Equity Amounts payable by Equity Amount Payer:**

Initial Price:

(a)      Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares:

(i) Prior to and on the first Valuation Date, the Initial Price shall be a price per Unit of the relevant Underlying determined by the Calculation Agent acting in a commercially reasonable manner, as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the Effective Date or relevant Valuation Date, as applicable, using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable); and

(ii) at any time after the first Valuation Date, the Final Price as at the most recent Valuation Date; or

(b)      where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, the sum of the products, aggregated for all Issuers of Shares in the SPB Custom Basket, of (i) the price per Share of such Issuer on the Trade Date as determined by the Calculation Agent and (if not denominated in the Settlement Currency) converted into the Settlement Currency at the Relevant Exchange Rate on the Effective Date (subject to the Consequences of FX Disruption) multiplied by (ii) the Number of Shares of such Issuer in the SPB Custom Basket.

Final Price:

(a)      Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, the Final Price for any Valuation Date shall be a value per Unit of the relevant Underlying determined by the Calculation Agent acting in a commercially reasonable manner, as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the relevant Valuation Date using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable); or

(b)      where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, the sum of the products, aggregated for all Issuers of Shares in the SPB Custom Basket, (i) the price per Share of such Issuer at the Valuation Time on the relevant Valuation Date as determined by the Calculation Agent and (if not denominated in the Settlement Currency) converted into the Settlement Currency at the Relevant Exchange Rate on the Effective Date (subject to the Consequences of FX Disruption); multiplied by (ii) the Number of Shares of such Issuer in the SPB Custom Basket.

Where the Underlying Jurisdiction is Japan, for the purposes of determining the Final Price, the Calculation Agent may take

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011584

into account any closing special quote per Underlying quoted by the Exchange (*tokubetsu kehaine*).

Valuation Time:

The time selected by the Calculation Agent in a commercially reasonable manner.

Valuation Date:

As specified in the relevant SPB Transaction Supplement; provided that, if Futures Price Valuation applies, the Valuation Date shall be the "Maturity Date" specified in the relevant SPB Transaction Supplement.

**Dividends/Distributions:**

Dividend Period:

Whichever of First Period and Second Period the Calculation Agent determines to be more appropriate with respect to the Share, taking into account such customary procedures with respect to the Share for determining ownership of the Share in connection with the payment of a dividend on it as are in the opinion of the Calculation Agent relevant to such determination.

Dividend Amount:

With respect to any Shares or Custom Basket Shares, where the relevant Exchange is:-

(a) an Ex Amount Market, the Ex Amount multiplied by the Number of Shares as of the date that the Shares have commenced trading ex-dividend on the Exchange; provided that (i) the reference to "100%" in the first line of Article 10.1(b) (Ex Amount) of the Equity Definitions shall be deleted and replaced with "Dividend Percentage" and (ii) the word "declared" in such definition shall be deleted and replaced with "paid"; or

(b) a Record Amount Market, the Record Amount multiplied by the Number of Shares as of the applicable record date; provided that (i) the reference to "100%" in the first line of Article 10.1(a) (Record Amount) of the Equity Definitions shall be deleted and replaced with "Dividend Percentage" and (ii) the words "declared by the Issuer" in such definition shall be deleted and replaced with "paid by the Issuer in respect of the gross cash dividend declared by the Issuer".

Where the Underlying Jurisdiction is Japan, the Dividend Amount shall include any special dividends (*tokubetsu haitou*) or memorial dividends (*kinen haitou*) in the form of cash (collectively, the "**Special Dividends**") that are paid with respect to the Underlying. For the avoidance of doubt, the treatment of any non-cash dividend shall be determined in accordance with the Potential Adjustment Event provisions set out in Section 11.2 (*Adjustments to Share Transactions and Share Basket Transactions*) of the Equity Definitions.

Provided, in each case, that in relation to any SPB Share Transaction that is a Short SPB Transaction, the equivalent Dividend Amount payable by the Counterparty to Nomura shall be adjusted by Nomura to reflect the amount that the relevant Lender would actually receive from a Hypothetical Broker Dealer acting as borrower under a securities loan. "**Hypothetical Broker Dealer**" means a hypothetical broker

Confidential Treatment Requested by King & Spalding                                          Archegos-CFTC-SEC 011585

dealer subject to the same securities laws and rules and regulations of any securities regulators, exchanges and self-regulating organizations as apply to the Hedging Party or any Affiliate(s) designated by it on a case by case basis. The parties expressly acknowledge and agree that the provisions of this paragraph shall apply and remain in full force and effect until the corresponding Hedge Position has been unwound and settled.

Extraordinary Dividend:

As determined by the Calculation Agent

Re-investment of Dividends:

Not Applicable

**Adjustments:**

Method of Adjustment:

Calculation Agent Adjustment.

**Extraordinary Events:**

Consequence of Merger Events:

Share-for-Share:

Calculation Agent Adjustment

Share-for-Other:

Calculation Agent Adjustment

Share-for-Combined:

Calculation Agent Adjustment

Determining Party:

Nomura, provided, however, that any determinations or calculations by the Determining Party shall be made in good faith and in a commercially reasonable manner; provided further that, following any determination or calculation by the Determining Party hereunder, upon a written request by Counterparty, the Determining Party shall promptly (but in any event within five Exchange Business Days) provide to Counterparty by e-mail to the e-mail address provided by Counterparty in such request a report (in a commonly used file form for the storage and manipulation of financial data) displaying in reasonable detail the basis for such determination or calculation (including any quotations, market date or information from internal or external sources, and any assumptions used in making such determination or calculation), it being understood that the Determining Party shall not be obligated to disclose any proprietary or confidential models used by it for such determination or calculation or any information that may be proprietary or confidential or subject to an obligation not to disclose such information.

Tender Offer:

Applicable

Consequences of Tender Offers:

Share-for-Share:

Calculation Agent Adjustment

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011586

| | |
|---|---|
| Share-for-Other: | Calculation Agent Adjustment |
| Share-for-Combined: | Calculation Agent Adjustment |
| Determining Party: | Nomura, provided, however, that any determinations or calculations by the Determining Party shall be made in good faith and in a commercially reasonable manner; provided further that, following any determination or calculation by the Determining Party hereunder, upon a written request by Counterparty, the Determining Party shall promptly (but in any event within five Exchange Business Days) provide to Counterparty by e-mail to the e-mail address provided by Counterparty in such request a report (in a commonly used file form for the storage and manipulation of financial data) displaying in reasonable detail the basis for such determination or calculation (including any quotations, market date or information from internal or external sources, and any assumptions used in making such determination or calculation), it being understood that the Determining Party shall not be obligated to disclose any proprietary or confidential models used by it for such determination or calculation or any information that may be proprietary or confidential or subject to an obligation not to disclose such information. |
| Composition of Combined Consideration: | Not Applicable, provided that where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, the following amendments to Section 12.5 of the Equity Definitions shall apply:<br><br>(a) Section 12.5(b)(i) shall be deleted; and<br><br>(b) Section 12.5(b)(ii) shall be amended by (i) deleting "other" in the first line, (ii) replacing "other than" with ", which may be any combination permitted to holders of any form of Other Consideration including, without limitation, cash, and/or". |
| Nationalization, Insolvency or Delisting: | (a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, Cancellation and Payment; or<br><br>(b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, Partial Cancellation and Payment. |
| Determining Party: | Nomura, provided, however, that any determinations or calculations by the Determining Party shall be made in good faith and in a commercially reasonable manner; provided further that, following any determination or calculation by the Determining Party hereunder, upon a written request by Counterparty, the Determining Party shall promptly (but in any event within five Exchange Business Days) provide to Counterparty by e-mail to the e-mail address provided by Counterparty in such request a report (in a commonly used file form for the storage and manipulation of financial data) displaying in reasonable detail the basis for such determination or calculation (including any quotations, market date or information from internal or external sources, and any |

Confidential Treatment Requested by King & Spalding       Archegos-CFTC-SEC 011587

assumptions used in making such determination or calculation), it being understood that the Determining Party shall not be obligated to disclose any proprietary or confidential models used by it for such determination or calculation or any information that may be proprietary or confidential or subject to an obligation not to disclose such information.

**Additional Disruption Events:**

Insolvency Filing:                     Applicable

**Additional Terms**

Non-benchmark                     Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, the following term shall apply:

The information provided to the Counterparty (the "**Information**") in relation to any custom baskets of shares or other relevant financial instruments created by Nomura International plc (an "**NIP Custom Basket**"), is provided by the Prime Finance department of Nomura International plc ("**NIP**"). NIP is authorised by the Prudential Regulation Authority ("**PRA**"), regulated by the UK Financial Conduct Authority and the PRA and is a member of the London Stock Exchange.

For the avoidance of doubt and without limitation, Information shall include:
  (i)   any materials relating to the NIP Custom Basket; and
  (ii)  (ii) in particular, the level(s) of any such NIP Custom Baskets or the level(s) of transaction(s) linked to the NIP Custom Basket which may be published or communicated by NIP from time to time (including on any page, platform or source, such as Bloomberg) and any corresponding page ticker or identifier (such level and/or ticker together, the "**Level**")).

Information relating to the NIP Custom Basket (or any part of it) is confidential and has been furnished solely for the Counterparty's information, it should be held in complete and strict confidence, and must not be referred to, disclosed, transmitted, reproduced or redistributed, in whole or in part, to another person. By receiving such Information the Counterparty agrees and represents that, (a) unless the Counterparty first obtains written consent from NIP, the Counterparty shall not disclose the Level to any person (including any of the Counterparty's affiliates or group companies) other than those of the Counterparty's own directors, officers and employees whose knowledge of such information is necessary for these purposes and (b) the Counterparty shall inform NIP promptly upon becoming aware of any breach of this requirement. Neither the Custom Baskets nor Levels are administered as a benchmark for the purposes of the European Benchmark Regulation (Regulation (EU) 2016/1011 ("**EU BMR**")) or the Benchmarks (Amendment and Transitional Provisions) (EU

Confidential Treatment Requested by King & Spalding                     Archegos-CFTC-SEC 011588

Exit) Regulations 2019 ("**UK BMR**")).

Unless otherwise agreed in writing between the Counterparty and NIP, the Counterparty shall not use any Information, NIP Custom Baskets or Levels in any manner which would amount to the use of such Information or Levels as a benchmark within the scope of the EU BMR, UK BMR or within the scope of the IOSCO Principles for Financial Benchmarks, which for the avoidance of doubt includes, use of information, NIP Custom Baskets or Levels:

1.  As reference for the issuance of a financial instrument;
2.  As reference for the determination of the amount payable under a financial instrument or a financial contract;
3.  As reference by a party to a financial contract; and
4.  For measuring the performance of an investment fund.

Confidential Treatment Requested by King & Spalding                                              Archegos-CFTC-SEC 011589

**SPB Index/Futures Supplement**

The following terms shall apply where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index or SPB Futures.

This SPB Index/Futures Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the SPB General Terms Supplement, the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement.  This SPB Index/Futures Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**General Terms:**

| | |
|---|---|
| Futures Price Valuation: | (a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, applicable; or |
| | (b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, as specified in the relevant SPB Transaction Supplement. |
| Index: | (a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, the Index will be the index that underlies the Exchange-traded Contract. The Calculation Agent shall determine whether the Index is a Multiple Exchange Index; or |
| | (b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, (i) if Futures Price Valuation applies, the index that underlies the Exchange-traded Contract; or (ii) if Futures Price Valuation does not apply, the Underlying. |
| Exchange-traded Contract: | (a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, the Underlying; or |
| | (b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, (i) if Futures Price Valuation applies, the Underlying; or (ii) if Futures Price Valuation does not apply, Not Applicable. |
| Exchange: | (a) If the Index is not a Multiple Exchange Index, the exchange or quotation system identified by the Exchange Reuters ID Number and (b) if the Index is a Multiple Exchange Index, with respect to each Component Security, the stock exchange where that Component Security is principally traded. |
| Related Exchange: | (a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures and the Underlying Jurisdiction in an Open Market Country, if the Exchange Traded Contract is an option contract or futures contract on the Index, the stock or futures exchange where such options contract or futures contract is principally traded; |
| | (b)    where the SPB Transaction Supplement specifies that |

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011590

the SPB Product Type for an SPB Transaction is SPB Index and the Underlying Jurisdiction in an Open Market Country, (i) if Futures Price Valuation applies and the Exchange-traded Contract is an option contract or futures contract on the Index, the stock or futures exchange where such options contract or futures contract is principally traded; or (ii) if Futures Price Valuation does not apply, Not Applicable; or

(c)      where the Underlying Jurisdiction is a Closed Market Country, All Exchanges, provided that, if the Underlying is the S&P CNX Nifty Index, Related Exchange shall be the National Stock Exchange of India Limited.

**Equity Amounts payable by Equity Amount Payer:**

| | |
|---|---|
| Initial Price: | (i) Prior to and on the first Valuation Date, the Initial Price shall be a price per Unit of the relevant Underlying determined by the Calculation Agent acting in a commercially reasonable manner, as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the Effective Date or relevant Valuation Date, as applicable, using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable); and |
| | (ii) at any time after the first Valuation Date, the Final Price as at the most recent Valuation Date. |
| Final Price: | The Final Price for any Valuation Date shall be a value per Unit of the relevant Underlying determined by the Calculation Agent acting in a commercially reasonable manner, as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the relevant Valuation Date using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable). |
| | Where the Underlying Jurisdiction is Japan, for the purposes of determining the Final Price, the Calculation Agent may take into account any closing special quote per Underlying quoted by the Exchange (*tokubetsu kehaine*). |
| Valuation Time: | (a)      Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, at the Scheduled Closing Time; or |
| | (b)      where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, the time selected by the Calculation Agent in a commercially reasonable manner. |
| Valuation Date: | (a)      Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, the Valuation Date shall be the "Maturity Date" specified in the relevant SPB Transaction Supplement; or |

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011591

(b)      where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, as specified in the relevant SPB Transaction Supplement; provided, however, that if the level of the Index is not published on a day which would but for this provision be a Valuation Date, the applicable Valuation Date shall not occur on such day and shall instead occur on the next date on which the level of the Index is published.

**Index Adjustment Events:**

| | |
|---|---|
| Index Cancellation: | Cancellation and Payment |
| Index Modification: | Calculation Agent Adjustment |
| Index Disruption: | Calculation Agent Adjustment, provided that, if the Index is a Multiple Exchange Index, a failure on the Valuation Date by the Index Sponsor to calculate and announce the Index will not be treated as an Index Disruption but will instead constitute a failure by the Index Sponsor to publish the level of the Index for the purposes of the definition of "Disrupted Day" set out in this SPB Index/Futures Supplement. |

Index Disclaimer:                    (a)      Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, Not Applicable; or

(b)      where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, Applicable.

Determining Party:                   Nomura, provided, however, that any determinations or calculations by the Determining Party shall be made in good faith and in a commercially reasonable manner; provided further that, following any determination or calculation by the Determining Party hereunder, upon a written request by Counterparty, the Determining Party shall promptly (but in any event within five Exchange Business Days) provide to Counterparty by e-mail to the e-mail address provided by Counterparty in such request a report (in a commonly used file form for the storage and manipulation of financial data) displaying in reasonable detail the basis for such determination or calculation (including any quotations, market date or information from internal or external sources, and any assumptions used in making such determination or calculation), it being understood that the Determining Party shall not be obligated to disclose any proprietary or confidential models used by it for such determination or calculation or any information that may be proprietary or confidential or subject to an obligation not to disclose such information.

**Additional Provisions:**

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011592

If the Index is a Multiple Exchange Index, then the following terms shall apply to that SPB Transaction (and the Equity Definitions shall be construed accordingly).

| | |
|---|---|
| Component Security: | Each component security of the Index. |
| Amendment to Section 6.8(e) of the Equity Definitions: | The words "the level of the relevant Index at the close of the regular trading session on the relevant Exchange" on lines 4 and 5 of Section 6.8(e) of the Equity Definitions shall be deleted and replaced with the words "the official closing level of the Index as calculated and published by the Index Sponsor". |
| Scheduled Trading Day: | Any day on which: (i) the Index Sponsor is scheduled to publish the level of the Index; and (ii) the Related Exchange is scheduled to be open for trading for its regular trading session. |
| Valuation Time: | (i) For the purposes of determining whether a Market Disruption Event has occurred: (a) in respect of any Component Security, the Scheduled Closing Time on the Exchange in respect of such Component Security, and (b) in respect of any options contracts or future contracts on the Index, the close of trading on the Related Exchange; and (ii) in all other circumstances, the time at which the official closing level of the Index is calculated and published by the Index Sponsor. |
| Market Disruption Event: | Either: |

(i)   (a)   the occurrence or existence, in respect of any Component Security, of:

   (1)   a Trading Disruption, which the Calculation Agent determines is material, at any time during the one hour period that ends at the relevant Valuation Time in respect of the Exchange on which such Component Security is principally traded;

   (2)   an Exchange Disruption, which the Calculation Agent determines is material, at any time during the one hour period that ends at the relevant Valuation Time in respect of the Exchange on which such Component Security is principally traded; OR

   (3)   an Early Closure; AND

(b)   the aggregate of all Component Securities in respect of which a Trading Disruption, an Exchange Disruption or an Early Closure occurs or exists comprises 20 per cent. or more of the level of the Index; OR

(ii)   the occurrence or existence, in respect of futures or options contracts relating to the Index, of: (a) a Trading Disruption; (b) an Exchange Disruption, which in either case the Calculation Agent determines is material, at any time during the one hour period that

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011593

ends at the Valuation Time in respect of the Related Exchange; or (c) an Early Closure.

For the purposes of determining whether a Market Disruption Event exists in respect of the Index at any time, if a Market Disruption Event occurs in respect of a Component Security at that time, then the relevant percentage contribution of that Component Security to the level of the Index shall be based on a comparison of (x) the portion of the level of the Index attributable to that Component Security to (y) the overall level of the Index, in each case using the official opening weightings as published by the Index Sponsor as part of the market "opening data".

Trading Disruption:

Any suspension of or limitation imposed on trading by the relevant Exchange or Related Exchange or otherwise and whether by reason of movements in price exceeding limits permitted by the relevant Exchange or Related Exchange or otherwise: (i) relating to any Component Security on the Exchange in respect of such Component Security; or (ii) in options or futures contracts relating to the Index on the Related Exchange.

Exchange Disruption:

Any event (other than an Early Closure) that disrupts or impairs (as determined by the Calculation Agent) the ability of market participants in general to effect transactions in, or obtain market values for: (i) any Component Security on the Exchange in respect of such Component Security; or (ii) options or futures contracts relating to the Index on the Related Exchange.

Early Closure:

The closure on any Exchange Business Day of the Exchange in respect of any Component Security or the Related Exchange prior to its Scheduled Closing Time unless such earlier closing is announced by such Exchange or Related Exchange (as the case may be) at least one hour prior to the earlier of: (i) the actual closing time for the regular trading session on such Exchange or Related Exchange (as the case may be) on such Exchange Business Day; and (ii) the submission deadline for orders to be entered into the Exchange or Related Exchange system for execution at the relevant Valuation Time on such Exchange Business Day.

Disrupted Day:

Any Scheduled Trading Day on which: (i) the Index Sponsor fails to publish the level of the Index; (ii) the Related Exchange fails to open for trading during its regular trading session; or (iii) a Market Disruption Event has occurred.

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011594

## SCHEDULE 5

### Jurisdiction Supplement

This SPB General Terms Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the applicable SPB Product Supplement and the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement.  This Jurisdiction Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**1.     India**

The following provisions will apply to SPB Transactions: (i) for which the Underlying Jurisdiction is India; and/or (ii) which are or otherwise involve an offshore derivative instrument ("**ODI**") (as such term is defined for the purposes of Regulation 15A of the Securities and Exchange Board of India (Foreign Institutional Investors) Regulations, 1995) (as may be amended or supplemented from time to time, the "**FII Regulations**"):

(i)     The Parties agree that the provisions of the "Additional Provisions for Use with Indian Underliers" published by ISDA on 28 November 2008 and available on the ISDA website (www.isda.org) (as amended, supplement or replaced from time to time) (the "**Additional Provisions**") are incorporated into the SPB Transaction Supplement.

(ii)    If a representation in the Additional Provisions proves to have been incorrect or misleading in any material respect when made or repeated or deemed to have been made or repeated; or if a party fails to comply with or perform any agreement or obligation undertaken by it in the Additional Provisions, it shall be an Additional Termination Event with all SPB Transactions which are or otherwise involve an ODI being the sole Affected Transactions, and with the Party in breach being the sole Affected Party.

**2.     Malaysia**

The following provisions will apply to SPB Transactions for which the Underlying Jurisdiction is Malaysia:

(i)     the Counterparty acknowledges that no approval of the Securities Commission of Malaysia is or will be obtained, nor will any prospectus be filed or registered with the Securities Commission of Malaysia for the offering of the SPB Transaction in Malaysia;

(ii)    the Parties agree that this SPBMC does not constitute and is not intended to constitute Nomura's making (a) available, (b) an offer for subscription or purchase, or (c) an invitation to subscribe for or purchase any security in Malaysia unless such offer or invitation falls within (x) Schedule 5 of the *Capital Markets and Services Act 2007* ("**CMSA**"), (y) Schedule 6 or 7 to the CMSA as an "excluded offer or excluded invitation" or "excluded issue" within the meaning of Sections 229 and 230 of the CMSA, and (z) where the SPB Transaction is a debenture, Schedule 8 to the CMSA applies; and

(iii)   the Parties agree that this SPBMC and any other offering material or document relating to the SPB Transaction may not be published or distributed, directly or indirectly, to any person in Malaysia except to persons where (a) Schedule 5 and (b) Schedule 6 or 7 to the CMSA, and (c) where the SPB Transaction is a debenture, Schedule 8 to the CMSA, applies to such offer, invitation or issue.

**3.     Taiwan**

The following provisions will apply to SPB Transactions: (i) for which the Underlying Jurisdiction is Taiwan; and/or (ii) which are linked to: (a) securities traded on the Taiwan Stock Exchange or Taipei

Confidential Treatment Requested by King & Spalding                                                                    Archegos-CFTC-SEC 011595

Exchange ("**Taiwan Listed Securities**"), (b) listed futures or option contracts which make reference to Taiwan Listed Securities or indices the components of which consist of Taiwan Listed Securities ("**Taiwan Listed Derivatives**") or (c) indices the components of which consist of Taiwan Listed Securities and/or Taiwan Listed Derivatives, which would involve Nomura or its affiliates investing in Taiwan Listed Securities or Taiwan Listed Derivatives under its "foreign financial institutional investor" ("**FINI**") status under the "Regulations Governing Investments in Securities by Overseas Chinese and Foreign Nationals" ("**Foreign Investment Regulations**") for hedging or other purposes:

(i) The Parties agree that the provisions of Part 1 of Annex I to the "Representations for Taiwan Market Access Products" published by ISDA on 20 September 2019 and available on the ISDA website (www.isda.org) (as amended, supplemented or replaced from time to time) (the "**Taiwan Representations**") are incorporated into the SPB Transaction Supplement, provided that:

   (A) references in the Taiwan Representations to:

      (1) "Party B" shall be deemed to be references to "the Counterparty";

      (2) "Party A" shall be deemed to be references to "Nomura";

      (3) "Transaction" shall be deemed to references to "SPB Transaction"; and

   (B) the representations and warranties set forth in Part 1 of Annex I to the Taiwan Representations shall be deemed to be given on the date on which the relevant SPB Transaction is entered into and at all times thereafter until the termination of the relevant SPB Transaction.

(ii) The Counterparty represents and warrants that it will not enter into the SPB Transaction or SPB Transaction unwind, as applicable, whilst in possession of any material non-public information on any Taiwan Listed Securities which are the underlying of such SPB Transaction in contravention of applicable law.

**4.    Thailand**

The following provisions will apply to SPB Transactions for which the Underlying Jurisdiction is Thailand:

(i) the Counterparty acknowledges that neither Nomura nor any of its affiliates that enters into the SPB Transaction maintain any licenses, authorizations, or registrations for the undertaking of derivatives business as defined in the *Derivatives Act B.E. 2546 (2003)* in Thailand, nor is this SPBMC approved or registered in Thailand. The Counterparty further acknowledges that the SPB Transaction is only intended to be offered, or entered into, by Nomura entities incorporated, licensed or registered in the countries other than Thailand to, or with, clients located outside Thailand, is not being offered or entered into and may not be offered or entered into by Nomura entities incorporated, licensed or registered in the countries other than Thailand and is not being offered or entered into and may not be offered or entered into in Thailand, or to, or with, any person residing in Thailand; and

(ii) the Counterparty represents and warrants that it has not entered into the SPB Transaction in Thailand and that it is not a person residing in Thailand. The Counterparty further represents and warrants that the information in this SPBMC is only intended to be read by it and must not be passed, issued, or shown to the public generally nor copied or redistributed to any other person without the prior consent of Nomura and in no way constitutes an offer or operation of businesses by Nomura in Thailand.

**5.    People's Republic of China**

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011596

The following provisions will apply to SPB Transactions for which the Underlying Jurisdiction is the People's Republic of China:

(i)     The Parties agree that the provisions of (i) the "Representations in relation to China Market Access Products" published by ISDA on 10 February 2011 (the "**PRC Representations**") and (ii) the Additional Provisions for Shares traded through the China connect service published by ISDA on 9 December 2016 ("**Additional Provisions**"), each available on the ISDA website (www.isda.org) (as amended, supplemented or replaced from to time to time) are incorporated into the SPB Transaction Supplement, provided that references in the PRC Representations to:

       (A)     "Party B" shall be deemed to be references to "the Counterparty";

       (B)     "Party A" shall be deemed to be references to "Nomura"; and

       (C)     "Transaction" shall be deemed to be references to "SPB Transaction".

(ii)    The Counterparty agrees that, so long as it has any obligation under the Agreement:-

       (a)     It will comply with all applicable laws and regulations of the PRC in connection with any such SPB Transaction hereunder, including those in relation to disclosure of interests and any related disposal restrictions;

       (b)     It acknowledges that Nomura and/or any of its affiliates may be required to disclose information relating to, among other things, the details of the SPB Transaction or the identities of any party having a legal or beneficial interest in the SPB Transaction as may be required by any relevant governmental or regulatory authorities (including, without limit, CSRC and SAFE) or as may be required under any law, regulation, orders or other lawful request, and it agrees to all such related disclosure and hereby waives confidentiality with regard thereto;

       (c)     It agrees to promptly provide Nomura and the relevant governmental or regulatory authorities with such additional information that the relevant governmental or regulatory authorities may require from Nomura and/or its affiliates from time to time, with regard to the identity and other details of the Counterparty or the beneficial owners in respect of the SPB Transaction, including but not limited to (i) the category to which the Counterparty belongs (i.e., hedge fund, corporate, individual, pension fund, trust, etc.); (ii) in the case where the Counterparty is a fund or the SPB Transaction is entered into by the Counterparty as trustee for a trust fund, names of the fund managers and investment advisors; and (iii) the source of funding of the Counterparty. It agrees that where such information is maintained by any third party on behalf of the Counterparty and the trust fund, it shall ensure that appropriate procedures are implemented with such third party to enable the prompt disclosure of such information to Nomura, its nominated affiliate and/or the relevant governmental or regulatory authorities on request;

       (d)     It will not transfer, novate or assign any SPB Transaction or any of its interest or obligation therein to another party without the prior written consent of Nomura. It acknowledges that Nomura will have the absolute discretion in deciding whether or not to give such consent, and may impose any condition which it sees fit (including, but not limited to, requiring the transferee and the Counterparty to enter into a side letter with Nomura in substantially the same terms of this Agreement and any other letter agreement between Nomura and the Counterparty in connection with such SPB Transaction) in relation to such consent. To the extent such SPB Transaction or any of its interest or obligation therein is transferred, novated or assigned by the Counterparty in accordance with the terms of this Agreement, the Counterparty undertakes to ensure that the transferee gives the representations set out in this paragraph 5 of the Jurisdiction Supplement above to Nomura (as though references to

Confidential Treatment Requested by King & Spalding                                        Archegos-CFTC-SEC 011597

the Counterparty were to such transferee) and that the transferee complies with such representations. Any purported transfer not in compliance with this sub-paragraph (d) will be void; and

(e) The provisions of sub-paragraphs (c) and (d) above shall survive the termination of the SPB Transaction(s).

(iii) Upon the occurrence of a Regulatory Change Event, the Calculation Agent will (a) amend the terms of the SPB Transaction by a Price Adjustment determined by the Calculation Agent to be necessary to reflect the Regulatory Change Event and (b) determine the effective date of such Price Adjustment.

As used herein:

"**CSRC**" means the China Securities Regulatory Commission of the PRC.

"**PRC**" means the People's Republic of China.

"**Regulatory Change Event**" means any event which, in the determination of Nomura acting in good faith and in a commercially reasonable manner, constitutes:

(1) the adoption of, change in or change in the interpretation or administration of, any law, rule or regulation by any governmental authority, central bank or comparable agency ("**Governmental Authority**"); and/or

(2) the compliance by Nomura with any request or directive of any Governmental Authority (whether or not having the force of law),

and which (a) imposes, modifies, applies or eliminates any tax, reserve, special deposit, insurance assessment or any other requirement in respect of assets or deposits of Nomura in respect of any Hedge Positions entered into by Nomura; and/or (b) affects in any other way the cost to Nomura of maintaining its Hedge Positions.

"**SAFE**" means the State Administration of Foreign Exchange of the PRC.

"**trust**" includes a trust fund or any similar arrangement where the legal title to the trust assets are held by a trustee or legal representative but the beneficial interests in the trust assets are held by beneficiaries; and "trustee" shall be construed accordingly.

6.   **USA**

The following terms shall apply solely to each SPB Transaction that references U.S. Underlyings:

(i)   **Pricing**

For any SPB Transaction that references one or more U.S. Underlyings, one of either the Initial Price or the Final Price must be determined by the Calculation Agent using one of the following methods, as agreed by the parties, unless another method is agreed between the parties: VWAP, Closing Price or Opening Price.

"**VWAP**" means, for any Exchange Business Day, the volume-weighted average price for the applicable Underlying over any given period as determined by the Calculation Agent and displayed on Bloomberg or, in the event such price is not so reported for such day for any reason or is manifestly erroneous, as reasonably determined by the Calculation Agent.

Confidential Treatment Requested by King & Spalding                    Archegos-CFTC-SEC 011598

"**Closing Price**" means, for any Exchange Business Day, the official closing price per share as reported by the Exchange, or in the case of an index, the closing level published by the relevant index sponsor, as determined by the Calculation Agent and displayed on Bloomberg or, in the event such price is not so reported for such day for any reason or is manifestly erroneous, as reasonably determined by the Calculation Agent.

"**Opening Price**" means, for any Exchange Business Day, the official opening price per share as reported by the Exchange, or in the case of an index, the opening level published by the relevant index sponsor, as determined by the Calculation Agent and displayed on Bloomberg or, in the event such price is not so reported for such day for any reason or is manifestly erroneous, as reasonably determined by the Calculation Agent.

(ii)     **No Rights in the U.S. Underlying**

Nomura may not both (A) acquire or receive any Hedge Position from and (B) transfer any Hedge Position to Counterparty; provided that with respect to Long Positions, Nomura may, in its sole discretion, carry out a transfer described in either clause (A) or clause (B) hereto (but not both).

Confidential Treatment Requested by King & Spalding                          Archegos-CFTC-SEC 011599