# Exhibit S

## AMENDED AND RESTATED SYNTHETIC PRIME BROKERAGE MASTER CONFIRMATION

This Amended and Restated Synthetic Prime Brokerage Master Confirmation (this "**SPBMC**") is dated as of March 18, 2016. It sets out the terms and conditions on which Nomura International plc ("**Nomura**") agrees to provide synthetic prime brokerage services to Archegos Fund, LP ("**Counterparty**" and, together with Nomura, each a "**Party**" and collectively the "**Parties**").

The Parties previously entered into a Synthetic Prime Brokerage Master Confirmation dated March 22, 2006, as amended and supplemented from time to time (the "Original SPBMC").  The Parties hereby agree to amend and restate the Original SPBMC in its entirety as follows and to have this SPBMC govern the terms of all existing and future SPB Transactions and SPB Transaction Unwinds.

**1.      Definitions and Interpretation.**

1.1      The definitions and provisions contained in the 2006 ISDA Definitions (the "**Swap Definitions**") and in the 2002 ISDA Equity Derivatives Definitions (the "**Equity Definitions**", and together with the Swap Definitions, the "**Definitions**"), in each case as published by the International Swaps and Derivatives Association, Inc. ("**ISDA**"), are incorporated into this SPBMC and the documents comprising the Confirmation (as hereinafter defined) with respect to each SPB Transaction entered into hereunder subject as specified herein. Any capitalized term not otherwise defined herein (including in Schedule 1 hereto) shall have the meaning assigned to such term in the Definitions.

1.2      In the event of any inconsistency between any of the Swap Definitions, the Equity Definitions, this SPBMC, the SPB General Terms Supplement, an SPB Product Supplement, an SPB Transaction Supplement or the Jurisdiction Supplement (if applicable), the following documents will prevail in relation to the relevant Transaction in the following order of precedence: the SPB Transaction Supplement, the Jurisdiction Supplement (if applicable), the applicable SPB Product Supplement, the SPB General Terms Supplement, this SPBMC, the Equity Definitions and the Swap Definitions.

1.3      Any reference to a currency shall have the meaning contained in the 1998 ISDA FX and Currency Option Definitions, as published by ISDA.

1.4      This SPBMC supplements, forms part of, and is subject to, the ISDA Master Agreement (including the Schedule and Credit Support Annex) entered into between the Parties and dated as of March 22, 2006, as amended and supplemented from time to time (the "**Agreement**").  All provisions in the Agreement govern this SPBMC, except as expressly modified below.

1.5      For the purposes of the Definitions and for the Agreement:

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295394
SDNY_P001_0000351302

(a)     each SPB Transaction (subject to full or partial termination from time to time pursuant to any SPB Transaction Unwind) shall be a "Transaction" for the purposes of the Agreement and an Equity Swap Transaction for the purposes of the Equity Definitions; and

(b)     the "Confirmation" with respect to each such SPB Transaction shall comprise this SPBMC, the SPB General Terms Supplement, the applicable SPB Product Supplement, the SPB Transaction Supplement relating to that SPB Transaction and, if applicable, the Jurisdiction Supplement.

**2.     Services.**

Nomura may, in its absolute discretion, agree to enter into equity derivative transactions pursuant to this SPBMC. Nomura will not provide any advice (investment, financial, accounting legal or otherwise) in relation to this Agreement or any SPB Transaction or SPB Transaction Unwind.

**3.     Confirmation Process.**

3.1     **SPB Transaction Request**

(a)     Counterparty may request on any Scheduled Trading Day after the date of this SPBMC that Nomura enter into an SPB Transaction or effect an SPB Transaction Unwind (each an "**SPB Transaction Request**"). Such SPB Transaction Request shall specify, at a minimum, the number of Units, the Underlying(s) and whether such transaction is to be an SPB Transaction (and if so whether a Long SPB Transaction or a Short SPB Transaction) or an SPB Transaction Unwind.

(b)     Any SPB Transaction Request shall constitute an offer made upon the terms of this SPBMC to Nomura to enter into such SPB Transaction or effect such SPB Transaction Unwind. Counterparty may, by notice to Nomura (such notice being effective only when actually received by Nomura), revoke the offer at any time until Nomura accepts the offer.

(c)     At any time whilst the offer constituted by an SPB Transaction Request for an SPB Transaction or an SPB Transaction Unwind is outstanding Nomura may accept such SPB Transaction Request and shall promptly acknowledge acceptance of such SPB Transaction Request subject to the terms described hereinafter.

(d)     Notwithstanding its acceptance of an SPB Transaction Request Nomura, acting in good faith and in a commercially reasonable manner, may reduce the number of Units applicable to such SPB Transaction or SPB

2

Archegos-SDNY-00295395
SDNY_P001_0000351303

Transaction Unwind (for the avoidance of doubt such reduction may be to zero) if Nomura has not been able to fully hedge such SPB Transaction Request at any time after its acceptance of an SPB Transaction Request until the close of the next following trading session on the relevant market (as determined by the Calculation Agent), such reduction be communicated to Counterparty in the relevant SPB Transaction Supplement.

3.2   **SPB Transaction Supplements**

(a)   For each SPB Transaction entered into and SPB Transaction Unwind effected on any date Nomura will prepare and make available to Counterparty a transaction supplement substantially in the form appended at Schedule 2 (an "**SPB Transaction Supplement**").

(b)   Following the provision of an SPB Transaction Supplement, Counterparty shall promptly notify Nomura of any disagreements as to any terms.  If Counterparty has not contacted Nomura specifying the disagreements within one (1) SPB Business Day of the day on which such SPB Transaction Supplement was made available to it then both parties shall be deemed to have agreed to such SPB Transaction Supplement and, absent manifest error, its terms shall be final and conclusive.

3.3   **SPB Transaction Unwinds**

Under each SPB Transaction against which an SPB Transaction Unwind is applied (but only in respect of the part of that SPB Transaction which is terminated pursuant to such application), a Valuation Date shall occur (the "**Termination Valuation Date**"), which shall be the Scheduled Trading Day agreed between the Parties or, if no agreement has been reached between the Parties at the time of the relevant SPB Transaction Request then the Termination Valuation Date shall be determined by the Calculation Agent. The Final Price, the Cash Settlement Payment Date and Payment Date with respect to the Units of the relevant SPB Transaction(s) (or part thereof) to be unwound shall be determined in accordance with the provisions of the relevant SPB Series Confirmation. The number of Units the subject of each SPB Transaction affected by an SPB Transaction Unwind shall be amended by the Calculation Agent, to reflect such unwind on each applicable Termination Valuation Date.

3.4   **Adjustments and modifications to SPB Transaction Supplements**

(a)   If Nomura determines, in its commercially reasonable discretion, that any adjustments or modifications are required to any terms of any SPB Transaction Supplement, Nomura may:

3

Archegos-SDNY-00295396
SDNY_P001_0000351304

(i)     if the relevant adjustment or modification relates to any Terms, make such adjustment or modification with immediate effect upon five (5) SPB Business Days' written notification to Counterparty of the revised Terms (subject to the terms of any applicable notice periods); or

(ii)    if the relevant adjustment or modification relates to any other term of an SPB Transaction Supplement, make the relevant adjustment or modification to the relevant SPB Transaction Supplement and make an amended and restated version of such SPB Transaction Supplement available to Counterparty.

(b)     Any notification of amendments to an SPB Transaction made by the Calculation Agent to the Parties, including, without limitation, amendments resulting from any Merger Events, Tender Offers, other Extraordinary Events or Potential Adjustment Events (each a "**Corporate Action**"), will (notwithstanding that such amendments may be notified in an amended and restated SPB Transaction Supplement) not constitute an SPB Transaction Supplement but shall be a notice only (and accordingly clause 3.4(c) shall not apply thereto).

(c)     Following the provision of an amended and restated SPB Transaction Supplement pursuant to Clause 3.40(ii) above, Counterparty shall promptly notify Nomura of any disagreements as to any terms.   If Counterparty has not contacted Nomura specifying the disagreements within one (1) SPB Business Day of the day on which such amended and restated SPB Transaction Supplement was made available to it then Counterparty shall be deemed to have agreed to such amended and restated SPB Transaction Supplement and its terms shall be final and conclusive, absent manifest error.

3.5     **Early Termination**

Each party may, at any time in its sole discretion, by giving, Sufficient Prior Written Notice to the other party, terminate with immediate effect any outstanding SPB Transactions at a reasonable market rate determined by the Calculation Agent as if the Counterparty had made and Nomura had accepted an SPB Transaction Request in respect of an SPB Transaction Unwind in relation to those SPB Transactions on the day such notice is effective. "Sufficient Prior Written Notice" means one (1) SPB Business Day prior notice from Counterparty to Nomura and five (5) SPB Business Days prior notice from Nomura to Counterparty.

4

Archegos-SDNY-00295397
SDNY_P001_0000351305

4.  **Synthetic Payment.**

Counterparty shall pay to Nomura a Synthetic Payment (a) for each accepted SPB Transaction Request, (b) in respect of each termination (whether under its terms or otherwise) of an SPB Transaction and (c) as otherwise specified in the applicable SPB Product Supplement. A Synthetic Payment shall be calculated by Nomura and will be equal to the product of the Synthetic Payment Adjustment and the Synthetic Payment Notional Amount (**"Synthetic Payment Amount"**). If Combined Synthetic Payment is specified as "Not Applicable" in the relevant SPB Transaction Supplement, Counterparty shall pay all Synthetic Payment Amounts that have accrued but remain unpaid since the previous Synthetic Payment Date on the following Synthetic Payment Date. If Combined Synthetic Payment is specified as "Applicable" in the relevant SPB Transaction Supplement, then such Synthetic Payment Amounts will be included in the Initial Price and Final Price stated in the relevant SPB Transaction Supplement.

5.  **Margin.**

With respect to any SPB Transaction an Independent Amount with respect to the Counterparty shall be applicable which shall be an amount equal to the Equity Notional Amount multiplied by the Margin Percentage specified in the SPB Transaction Supplement or as otherwise agreed by the parties from time to time.

6.  **Determinations.**

Where any fact, criterion or qualitative issue is required to be determined by Nomura or the Calculation Agent under any Terms, unless otherwise stated herein, Nomura or the Calculation Agent, as applicable, shall exercise such determination in good faith and in its commercially reasonable discretion.

7.  **No Rights in Underlying.**

The entry into an SPB Transaction does not confer on either Party any rights (whether in respect of voting, distributions or otherwise) attaching to the relevant Underlying.

8.  **Termination of Agreement.**

If there are no SPB Transactions outstanding under this SPBMC, either Party may terminate this SPBMC by giving two SPB Business Days' notice to the other Party in writing.

9.  **Miscellaneous.**

    (a)      The Parties hereto intend for:

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295398
SDNY_P001_0000351306

(i)    SPB Transactions to be "securities contracts" and "swap agreements" as defined in the Bankruptcy Code (Title 11 of the United States Code) (the "Bankruptcy Code"), and the parties hereto to be entitled to the protections afforded by, among other Sections, Sections 362(b)(6), 362(b)(17), 546(e), 546(g), 555 and 560 of the Bankruptcy Code;

(ii)    a party's right to terminate or liquidate SPB Transactions and to exercise any other remedies upon the occurrence of any Event of Default under the Agreement with respect to the other Party to constitute a "contractual right" as described in the Bankruptcy Code; and

(iii)    each payment and delivery of cash, securities or other property hereunder to constitute a "margin payment" or "settlement payment" and a "transfer" as defined in the Bankruptcy Code.

(b)    Settlement Method

The Parties expressly acknowledge and agree that all SPB Transactions are derivative transactions and shall be subject to Cash Settlement. Each Party acknowledges that no portion of any SPB Transaction shall be settled by making or taking delivery of any Shares or Underlying, and no SPB Transaction shall confer on either Party any right, title or interest in any Shares or Underlying.

## 9.1   Entire Agreement

This SPBMC together with the SPB General Terms Supplement, the applicable SPB Product Supplement, the applicable SPB Transaction Supplement and, if applicable, the Jurisdiction Supplement, constitutes the entire agreement and understanding of the Parties with respect to each SPB Transaction and SPB Transaction Unwind documented thereby and supersedes all oral communication and prior writings with respect thereto.

## 9.2   Amendments

(a)    Nomura may, solely where it reasonably considers it necessary in order to comply with any applicable laws, regulations, notifications, circulars, rules, guidelines, clarifications, directions, orders and/or decrees issued, published or promulgated by any governmental or regulatory authority, amend the terms of the Jurisdiction Supplement by notification to Counterparty of the revised terms, which amendment will take effect on the earlier of (i) fifteen (15) days after written notification to counterparty of the revised terms and (ii) such earlier date as may be required to comply with applicable law.

6

Archegos-SDNY-00295399
SDNY_P001_0000351307

    (b)       Any other amendment, modification or waiver in respect of this SPBMC, the SPB General Terms Supplement, any SPB Product Supplement, or the Jurisdiction Supplement, will only be effective if in writing (including a writing evidenced by a facsimile transmission) and executed by each of the Parties or confirmed by an exchange of electronic messages on an electronic messaging system.

9.3    **Counterparts**

This SPBMC and any document executed pursuant to this SPBMC may be executed in counterparts, each of which will be deemed an original.

9.4    **Headings**

The headings used in this SPBMC are for convenience of reference only and shall not affect the construction of or be taken into consideration in interpreting this SPBMC.

9.5    **Governing Law**

This SPBMC and each SPB Transaction confirmed by a Confirmation documented hereunder and any non-contractual obligations arising out of or in connection with them will be governed by and construed in accordance with the governing law specified in the Agreement.

9.6    **Jurisdiction**

The terms of Section 13(b) of the Agreement shall apply to this SPBMC with references in such Section to "this Agreement" being deemed references to this SPBMC alone and with the following amendment: in the second line thereof, insert after the word "Agreement" the following: "including, without limitation, disputes relating to any non-contractual obligations arising out of or in connection with this SPBMC and each SPB Transaction entered into hereunder.".

9.7    **Third Party Rights**

A person who is not a party to the Agreement has no right under the Contracts (Rights of Third Parties) Act 1999 to enforce any term of the Agreement, but this does not affect any right or remedy of a third party which exists or is available apart from that Act.

**10.**    **Additional Representations of Counterparty**

Counterparty represents, as of the date hereof and as of each day on which any SPB Transaction or SPB Transaction Unwind is entered into, that:

7

Archegos-SDNY-00295400
SDNY_P001_0000351308

(a)     Counterparty is not entering into any SPB Transaction to create actual or apparent trading activity in any Underlying (or any security convertible into or exchangeable for an Underlying) or to raise or depress or otherwise manipulate the price of such Underlying (or any security convertible into or exchangeable for the same) or otherwise in violation of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and the rules and regulations thereunder.

(b)     Regulatory Reporting.  Counterparty is and, after giving effect to each SPB Transaction, will be in compliance with any reporting obligations under Section 16, Section 13(d) and Section 13(g) of the Exchange Act and the rules and regulations thereunder that it has with respect to the relevant Underlying, and Counterparty will provide Nomura with a copy of any report filed thereunder in respect of the SPB Transaction promptly upon filing thereof.

(c)     **No Material Non-public Information.**  Counterparty is not entering into any SPB Transaction "on the basis of" (as such phrase is defined in Rule 10b5-1 under the Exchange Act) any material non-public information regarding any Underlying or any Issuer.

(d)     **Status**.  Counterparty is not an "affiliate" of any issuer of any Underlying within the meaning of Rule 144 of the Securities Act of 1933, as amended, and has not been an "affiliate" of any such issuer at any time during the prior three calendar month period.

**11.**    **Contractual Recognition of Bail-in**

**ISDA BRRD Article 55 Protocol**.  Nomura and Counterparty hereby agree that the definitions and provisions contained in any protocol published or to be published by the International Swaps and Derivatives Association, Inc., as may be amended or modified from time to time, and including any attachment(s) thereto, that addresses or concerns Article 55 of the European Union Bank Recovery and Resolution Directive  (the "ISDA BRRD Article 55 Protocol"), will be deemed to be incorporated herein with effect from the launch date of the ISDA BRRD Article 55 Protocol, mutatis mutandis, as though such definitions and provisions were set out in full herein, with such conforming changes as are necessary to deal with what would otherwise be inappropriate or incorrect cross-references.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295401
SDNY_P001_0000351309

**IN WITNESS WHEREOF** the Parties have executed this document with effect from the date specified on the first page of this document.

**NOMURA INTERNATIONAL PLC**

By:

Name:    Chris Antonelli

Title:    Managing Director

**ARCHEGOS FUND, LP**

By:

Name:    Sung Kook Hwang

Title:    Managing Member of
         The General Partner

9

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295402
SDNY_P001_0000351310

# SCHEDULE 1

## Definitions

For the purposes of all terms under this SPBMC, the following definitions shall apply:

**"Bonds"** means the bonds or debt securities specified in the SPB Bonds Supplement.

**"Cash Settlement Payment Date(s)"** means, each Scheduled Cash Settlement Payment Date and with respect to any Units subject to an SPB Transaction Unwind each Unwind Cash Settlement Payment Date.

**"Closed Market Country"** means each of the People's Republic of China, India, Indonesia, Korea, Malaysia, Pakistan, Russia, Taiwan, Thailand and each other country as may be agreed in writing by the parties from time to time.

**"Combined Synthetic Payment"** has the meaning given to it in Clause 4 of the SPBMC.

**"Corporate Action"** has the meaning given to it in Clause 3.4(b) of the SPBMC.

**"Currency Day Count Fraction"** means, with respect to a currency, 1 divided by such denominator as the Calculation Agent may elect in order to convert the applicable benchmark overnight rate corresponding to that currency into a rate per day.

**"Custom Basket Shares"** means the Shares of any Issuer included in an SPB Custom Basket.

**"Designated Maturity"** means as specified in the SPB General Terms Supplement.

**"Distribution Receipt Date"** means as defined in the SPB Bonds Supplement.

**"Effective Date"** means as specified in the relevant SPB Transaction Supplement.

**"Equity Amount Payer"** means as specified in the SPB General Terms Supplement.

**"Equity Definitions"** means as defined in the SPBMC.

**"Equity Notional Amount"** means as defined in the SPB General Terms Supplement.

**"Equity Notional Reset"** means as specified in the SPB General Terms Supplement.

**"Ex Amount Market"** means each market as determined by the Calculation Agent where the customary practice is that a holder of shares entitlement to a dividend is determined by reference to the date that the Shares have commenced trading ex-dividend on the Exchange.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295403
SDNY_P001_0000351311

"**Exchange**" means as defined in the relevant SPB Product Supplement.

"**Exchange-traded Contract**" means as defined in the SPB Index/Futures Supplement.

"**Fee Adjustment**" means, for each SPB Transaction, a percentage which shall be determined from time to time by Nomura acting in a commercially reasonable manner, as specified in the relevant SPB Transaction Supplement and as may be adjusted by Nomura from time to time in accordance with Clause 3.4 of the SPBMC.

"**Final Price**" means as defined in the relevant SPB Product Supplement.

"**Floating Amount Payer**" means as defined in the SPB General Terms Supplement.

"**Floating Rate Option**" means as specified in the SPB Transaction Supplement.

"**FX Disruption Event**" means, solely where the underlying Currency Jurisdiction is a Closed Market Country.

(A) An event occurs and is continuing on any day with respect to an Underlying Currency that has the effect of preventing Nomura or any of its affiliates directly or indirectly from: (i) converting the Underlying Currency into the Settlement Currency through customary legal channels, (ii) converting the Underlying Currency into the Settlement Currency at a rate at least as favourable as the rate for domestic institutions located in the jurisdiction of the Underlying Currency (the "**Underlying Currency Jurisdiction**"), (iii) delivering the Settlement Currency from accounts inside the Underlying Currency Jurisdiction to accounts outside the Underlying Currency Jurisdiction, (iv) delivering the Underlying Currency between accounts inside the Underlying Currency Jurisdiction or to a party that is a non-resident of the Underlying Currency Jurisdiction, (v) obtaining a rate or a commercially reasonable rate (as determined by the Calculation Agent), in each case, at which its underlying hedge denominated in the Underlying Currency can be exchanged for the Settlement Currency, or (vii) delivering the Underlying Currency between accounts within the Underlying Currency Jurisdiction to a person who is a non-resident of that jurisdiction, including any action by any authority of the Underlying Currency Jurisdiction in the event of natural calamities, wars, conflict of arms or grave and sudden changes in domestic or foreign economic circumstances or other similar circumstances pursuant to any law or regulation of the Underlying Currency Jurisdiction; or

(B) the government of the Underlying Currency Jurisdiction gives public notice of its intention to impose any capital controls which the Calculation Agent determines in good faith are likely to materially affect Nomura or its affiliates' ability to hedge its position under the Transaction or to unwind any such hedge.

In either case as determined by the Calculation Agent.

"**Futures**" means the futures contract specified in the SPB Index/Futures Supplement.

Schedule 1 - 2

"**Index**" means the index specified in the SPB Index/Futures Supplement.

"**Initial Price**" means as defined in the relevant SPB Product Supplement.

"**Lender**" means, with respect to an SPB Transaction, any third party entity whom the Calculation Agent determines is engaged in securities lending transactions with Nomura or any of its Affiliates in connection with the SPB Transaction (including on a portfolio basis) involving securities identical or equivalent to (or involving securities of the same issuer in respect of) the relevant Underlying.

"**Long Position**" means with respect to an Underlying that the Counterparty has one or more SPB Transactions where the Counterparty is the Floating Amount Payer.

"**Long SPB Transaction**" means with respect to an Underlying, an SPB Transaction where the Counterparty is the Floating Amount Payer.

"**Margin Percentage**" means as specified in the SPB Transaction Supplement.

"**Multiple Exchange Index**" means, in relation to an SPB Transaction, an Index to which the Calculation Agent determines the provisions of the SPB Index/Futures Supplement relating to "**Multiple Exchange Indices**" shall apply.

"**Open Market Country**" means any country that is not a Closed Market Country.

"**Product Identifier**" means as specified in the relevant SPB Transaction Supplement.

"**Record Amount Market**" means each market as determined by the Calculation Agent where the customary practice is that a holder of shares entitlement to a dividend is determined by reference to the applicable record date for such dividend.

"**Related Exchange**" means as specified in the relevant SPB Transaction Supplement.

"**Relevant Exchange Rate**" means the exchange rate for converting one unit of the relevant Underlying Currency into 1 unit of the Settlement Currency at a time on the relevant date as determined by the Calculation Agent.

"**Reset Dates**" means as defined in the SPB General Terms Supplement.

"**Scheduled Cash Settlement Payment Date**" means 1 Settlement Cycle following each Valuation Date, or if not a Currency Business Day, the next following Currency Business Day.

"**Settlement Currency**" means as specified in the SPB General Terms Supplement.

"**Shares**" means the shares specified in the SPB Shares/Custom Baskets Supplement.

Schedule 1 - 3

"**Short Position**" means with respect to an Underlying that the Counterparty has one or more SPB Transactions where the Counterparty is the Equity Amount Payer.

"**Short SPB Transaction**" means with respect to an Underlying, an SPB Transaction where the Counterparty is the Equity Amount Payer.

"**SPB Bonds**" means an SPB Transaction that references Bonds and to which the SPB Bonds Supplement applies.

"**SPB Business Day**" means each day on which commercial banks and foreign exchange markets settle payments and are open for business (including dealings in foreign exchange and foreign exchange deposits) in London.

"**SPB Custom Baskets**" means an SPB Transaction that references a basket of Shares and to which the SPB Shares/Custom Baskets Supplement applies.

"**SPB Futures**" means an SPB Transaction that references Futures and to which the SPB Index/Futures Supplement applies.

"**SPB General Terms Supplement**" means the general terms supplement appended at Schedule 3 hereto.

"**SPB Index**" means an SPB Transaction that references an Index and to which the SPB Index/Futures Supplement applies.

"**SPB Product Supplement**" means each of the SPB Bonds Supplement, the SPB Index/Futures Supplement and the SPB Shares/Custom Baskets Supplement appended to this SPBMC.

"**SPB Product Type**" means the "Product Type" specified in the relevant SPB Transaction Supplement, being SPB Bonds, SPB Futures, SPB Index, SPB Shares or SPB Custom Baskets, as applicable.

"**SPB Shares**" means an SPB Transaction that references Shares and to which the SPB Shares/Custom Baskets Supplement applies.

"**SPB Transaction**" means an Equity Swap Transaction entered into under the terms of this SPBMC.

"**SPB Transaction Request**" means as defined in Clause 3.1 of the SPBMC.

"**SPB Transaction Supplement**" means as defined in Clause 3.2 of the SPBMC.

"**SPB Transaction Unwind**" means, with respect to an Underlying referenced in one or more SPB Transactions, the termination (in whole or in part) of one or more SPB Transactions in respect of that Underlying, as effected on the Termination Valuation Date

Schedule 1 - 4

Archegos-SDNY-00295406
SDNY_P001_0000351314

with respect to that SPB Transaction Unwind.  The Underlying, number of Units and Termination Valuation Date with respect to each SPB Transaction Unwind shall be set out in an SPB Transaction Supplement.

"Spread" means as specified in the SPB General Terms Supplement.

"Synthetic Payment Adjustment" means the value specified in the relevant SPB Transaction Supplement, as may be adjusted by Nomura from time to time in accordance with the provisions of the SPBMC in relation to the Terms.

"Synthetic Payment Amount" has the meaning given to it in Clause 4 of the SPBMC.

"Synthetic Payment Notional Amount" means for the purposes of determining a Synthetic Payment Amount (i) in respect of an accepted SPB Transaction Request, the Initial Price prior to the first Valuation Date multiplied by the number of Units for the SPB Transaction with respect to that SPB Transaction Request specified in the relevant SPB Transaction Supplement, (ii) in respect of the termination of an SPB Transaction pursuant to an SPB Unwind or Clause 3.3 of the SPBMC, the Final Price determined for the purposes of such SPB Transaction Unwind or termination multiplied by the number of Units subject to such SPB Transaction Unwind or termination, (iii) in respect of the termination of an SPB Transaction other than where Sub-clause (ii) applies, the Final Price determined for the purposes of such termination multiplied by the Number of Units under that SPB Transaction as of the Termination Date; and (iv) expressed to be payable under the SPB General Terms Supplement as defined in the SPB General Terms Supplement.

"Termination Date" means as defined in the General Terms Supplement.

"Termination Valuation Date" has the meaning given to it in Clause 3.3 of the SPBMC. Other than for the purposes of Clause 3.3 of the SPBMC, a Termination Valuation Date shall not be a Valuation Date.

"Terms" means each of the following terms: the Transaction Spread, Floating Rate, Dividend/Distribution Percentage, Fee Adjustment and the Synthetic Payment Adjustment.

"Trade Date" means as specified in the relevant SPB Transaction Supplement.

"Transaction Spread" means for each SPB Transaction, the relevant Transaction Spread as defined in the SPB General Terms Supplement unless otherwise specified in the relevant SPB Transaction Supplement, as may be adjusted by Nomura from time to time in accordance with the provisions of the SPBMC in relation to the Terms.

"Type of Return" means as specified in the SPB General Terms Supplement.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295407
SDNY_P001_0000351315

"**Underlying**" means (i) in respect of an SPB Transaction to which Futures Price Valuation does not apply, the bonds, debt securities, index or shares specified in the relevant SPB Transaction Supplement, as applicable in each case, and (ii) in respect of SPB Transactions to which Futures Price Valuation applies, the Futures or the relevant Exchange-traded Contract relating to the Shares or Index specified in the relevant SPB Transaction Supplement, as applicable in each case.

"**Underlying Currency**" means the currency in which the relevant Underlying (or, in the case of Custom Basket Shares, the Shares of any Issuer included in the SPB Custom Baskets) is denominated except that if the Underlying is an Index the Underlying Currency means the relevant currency of the Index as described on the relevant Bloomberg Page or such other source as the Calculation Agent shall reasonably determine.

"**Underlying Jurisdiction**" means, with respect to any SPB Transaction that has an SPB Product Type of (a) SPB Shares, SPB Futures or SPB Index, the jurisdiction of incorporation of the issuer of the Underlying, and (b) SPB Custom Baskets, each of the jurisdictions of incorporation of the issuers of the Shares included in the SPB Custom Basket.

"**Units**" means as specified in the SPB General Terms Supplement.

"**Unwind Cash Settlement Payment Date**" mean 1 Settlement Cycle following each Termination Valuation Date, or if not a Currency Business Day, the next following Currency Business Day.

"**U.S. Underlyings**" mean publicly traded equities or exchange traded funds issued by U.S. issuers or traded on U.S. exchanges (including American depositary receipts), baskets of such equities or exchange traded funds, or regularly quoted and published third party-sponsored indices that include any of such equities or exchange traded funds.

"**Valuation Date**" means as specified in the relevant SPB Transaction Supplement and, if applicable, the relevant SPB Product Supplement.

"**Valuation Time**" means as defined in the SPB General Terms Supplement.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295408
SDNY_P001_0000351316

## SCHEDULE 2

### Form of SPB Transaction Supplement

This SPB Transaction Supplement is entered into between Nomura International plc ("**Nomura**") and [●] ("**Counterparty**" and, together with Nomura, the "**Parties**") on the Trade Date set forth below.

The purpose of this communication is to confirm the terms and conditions of the SPB Transaction entered into between Nomura and Counterparty on the Trade Date specified below. This SPB Transaction Supplement supplements, forms part of and is subject to the Synthetic Prime Brokerage Master Confirmation between the Parties dated [●], as may be amended and supplemented from time to time (the "**SPBMC**"), and, together with the SPBMC, the SPB General Terms Supplement, the applicable SPB Product Supplement and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" as referred to in the Agreement.

The terms of the SPB Transaction to which this SPB Transaction Supplement relates are as follows:

| Product Identifier | RIC Code / ISIN | Underlying | SPB Product Type | Futures Price Valuation¹ | Multiplier | Maturity Date | Trade Date | Effective Date | Long / Short / Unwind |
|---|---|---|---|---|---|---|---|---|---|
| | | | [SPB Bonds] [SPB Shares] [SPB Custom Basket] [SPB Index] [SPB Futures] | [Applicable][Not Applicable] | | | | | |

¹ This will be "Applicable" where the SPB Product Type is SPB Futures.  Futures Price Valuation may also be applied via the SPB Transaction Supplement to SPB Shares.  For SPB Custom Baskets, please insert "N/A".

Schedule 2 – 1

| Number of Units | Initial Price / Final Price² | FX Rate | Dividend / Distribution Percentage | Transaction Spread (bps) | Fee Adjustment (bps) | Related Exchange | Combined Synthetic Payment | Synthetic Payment Adjustment | Synthetic Payment Date |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | [Applicable]/[Not Applicable] | [●], or otherwise notified by Nomura to Counterparty from time to time in accordance with the SPBMC. | [Each Cash Settlement Payment Date] [● Currency Business Days after the next Valuation Date defined in the SPB Bonds General Terms Supplement] [The Termination Date] |

| Floating Amount Payer Payment Dates | Valuation Dates | Floating Rate Option |
|---|---|---|
| [Each Cash Settlement Payment Date] [[1st Business Day of each month and each Unwind Cash Settlement Payment Date] [Last SPB Business Day of each month and each Unwind Cash Settlement Payment Date] | [•] /[1st Scheduled Trading Day of each month] / [Each Scheduled Trading Day] / [(a) [1st February, 1st May, 1st August and 1st November in each year from the Effective Date to the Termination Date, or in each case if not a Scheduled Trading Day, the next following Scheduled Trading Day and (b) the Scheduled Trading Day falling one Settlement Cycle prior to the Termination Date] | [AUD-SWAP OIS-RBA]<br>[HIBOR-HKAB]<br>[JPY-LIBOR-ICE]<br>[NZD-OCR-RBNZ]<br>[SGD-SIBOR-ABS]<br>[USD-LIBOR-ICE]<br>[GBP-LIBOR-ICE]<br>[EUR-EURIBOR-EBF] |

**Notifications of Calculation Agent amendments:**

Any notification of amendments by the Calculation Agent, including, without limitation, amendments resulting from any Corporate Action will not constitute a Confirmation but shall be a notice only.

² This will be the "Initial" where the SPB Transaction is a short or long and Final Price where the SPB Transaction is an Unwind.

Schedule 2 - 2

Archegos-SDNY-00295410
SDNY_P001_0000351318

## SCHEDULE 3

### SPB General Terms Supplement

This SPB General Terms Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the applicable SPB Product Supplement, the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement.  This SPB General Terms Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**General Terms:**

| | |
|---|---|
| Termination Date: | The date which is five (5) calendar years after the date of the SPBMC, unless otherwise agreed between the parties, or the final Cash Settlement Payment Date, whichever is later |
| Unit: | A trading unit of the Underlying (or, in the case of an Underlying that is Custom Basket Shares, the number of Shares of each Issuer included in a single SPB Custom Basket) |
| Multiplier: | In respect of SPB Transactions to which Futures Price Valuation applies, a "Multiplier" may be specified in the relevant SPB Transaction Supplement for the purpose only of informing the Counterparty of the multiplier embedded in the relevant Exchange-traded Contract. Notwithstanding any SPB Transaction Supplement, the Multiplier for the purposes of the Equity Definitions shall be 1 for all SPB Transactions. A "Multiplier" specified in any SPB Transaction Supplement is not intended to take operative effective per the Equity Definitions. |

**Equity Amounts payable by Equity Amount Payer:**

| | |
|---|---|
| Equity Amount Payer: | As specified with respect to the relevant Units in the SPB Transaction Supplement. |
| Number of Units: | As specified with respect to the relevant Underlying in the SPB Transaction Supplement (subject to reduction from time to time pursuant to any SPB Transaction Unwind). |
| Equity Notional Amount: | The product of the Initial Price and the Number of |

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295411
SDNY_P001_0000351319

Units (subject to any SPB Transaction Unwind).

| | |
|---|---|
| Equity Notional Reset: | Applicable |
| Type of Return: | Total Return |

**Floating Amounts payable by Floating Amount Payer:**

| | |
|---|---|
| Floating Amount Payer: | With respect to an SPB Transaction, the Party that is not the Equity Amount Payer. |
| Notional Amount: | For each day in a Calculation Period, the Equity Notional Amount with respect to that day |
| Floating Amount Payer Payment Dates: | As specified in the SPB Transaction Supplement. |
| Floating Amount: | (1)    With respect to each Floating Amount Payer Payment Date that is an Unwind Cash Settlement Payment Date, the product of: |

(a)    the Notional Amount of such SPB Transaction Unwind (which shall be equal to the number of Units the subject of such SPB Transaction Unwind and the Initial Price used to determine the Cash Settlement Amount payable pursuant thereto); and

(b)    the sum of (i) the Floating Rate and (ii) the Spread; and

(c)    D/DCF, where 'D' means the actual number of days from and including the first day of the Calculation Period in which such Unwind Cash Settlement Payment Date falls to but excluding the relevant Unwind Cash Settlement Payment Date and DCF means the denominator usually applied to the Currency Day Count Fraction as determined by the Calculation Agent (each such amount, an **"Unwind Floating Amount"**),

except that any Floating Amount attributable to the Transaction Fee shall not be payable on the Unwind Cash Settlement Payment Date but shall be payable on the next Scheduled Cash Settlement Payment Date.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295412
SDNY_P001_0000351320

|  | (2)      With respect to each Payment Date that is not an Unwind Cash Settlement Payment Date, the Floating Amount payable in respect of such date shall be the aggregate of the Daily Floating Amounts for each day in that Calculation Period less the sum of all Unwind Floating Amounts payable in relation to that Calculation Period. |
|---|---|
| Daily Floating Amount: | For each day in a Calculation Period, an amount equal to the product of: |
|  | (a)      the Notional Amount on such day; and |
|  | (b)      the sum of (i) the Relevant Rate and (ii) the Spread; and |
|  | (c)      the Currency Day Count Fraction. |
| Designated Maturity: | As specified in the SPB Transaction Supplement or as otherwise agreed to by the Parties. |
| Spread: | The sum of the Transaction Spread and the Fee Adjustment |
| Reset Dates: | Daily, provided it is an SPB Business Day |
| Business Days: | Each day which is an SPB Business Day and (if the Settlement Currency is not USD, GBP or JPY) a Currency Business Day with respect to the Settlement Currency |
| Business Day Convention: | Following |
| **Settlement Terms:** |  |
| Cash Settlement: | Applicable (modified relative to the definition thereof in the Equity Definitions as provided herein). The Parties may agree in relation to specific SPB Transactions that amounts payable under section 8.6 of the Equity Definitions be converted into a currency other than the Settlement Currency at prevailing spot rates and satisfied by payment in such currency. |
| Settlement Currency: | As agreed between the Parties from time to time. |

Schedule 3 - 3

Archegos-SDNY-00295413
SDNY_P001_0000351321

| | |
|---|---|
| **Calculation Agent:** | As specified in the Agreement |
| **Additional Disruption Events:** | |
| Change in Law: | Applicable.    Section 12.9(a)(ii)  of  the  Equity Definitions is hereby amended to read as follows: |

(a)    where the Underlying Jurisdiction is a Closed Market Country:

"**Change in Law**" means that on or after the Trade Date of any SPB Transaction (A) due to the adoption of or any change in any applicable law or regulation (including, without limitation, any tax law), or (B) due to the promulgation of or any change in the interpretation by any court, tribunal or regulatory authority with competent jurisdiction of any applicable law or regulation (including any action taken by a taxing authority), the Calculation Agent determines in good faith that it will, or there is a substantial likelihood that it will, within the next 30 calendar days, but before the Termination Date of the SPB Transaction, become, or it has become, illegal for a party (or an affiliate of that Party) to that SPB Transaction to hold, acquire or dispose of one or more Hedge Positions relating to such SPB Transaction; and

(b)    in all other circumstances:

"**Change in Law**" means that on or after the Trade Date of any SPB Transaction (A) due to the adoption of or any change in any applicable law or regulation (including, without limitation, any tax law), or (B) due to the promulgation of or any change in the interpretation by any court, tribunal or regulatory authority with competent jurisdiction of any applicable law or regulation (including any action taken by a taxing authority), the Calculation Agent determines in good faith that it has become illegal for a party to that SPB Transaction to hold, acquire or dispose of one or more Hedge Positions relating to such SPB Transaction.

| | |
|---|---|
| Failure to Deliver: | Not Applicable |

Schedule 3 - 4

Confidential Treatment Requested by King & Spalding

| | |
|---|---|
| Hedge Positions: | The definition of **"Hedge Positions"** in Section 13.2(b) of the Equity Definitions is amended by inserting the words "or an Affiliate thereof" after the words "a party" in the third line. |
| Hedging Disruption: | Applicable |

Where the Underlying Jurisdiction is a Closed Market Country, Section 12.9(a)(v) of the Equity Definitions is hereby amended to read as follows:

**"Hedging Disruption"** means that the Hedging Party is unable, after using commercially reasonable efforts, to either (i) acquire, establish, re-establish, substitute, maintain, unwind or dispose of any transactions or assets it deems necessary to hedge the equity price risk (or any other relevant price risk including, but not limited to, the currency risk) or entering into and performing its obligations with respect to such SPB Transaction (any such transactions or assets, a **"Hedging Party Hedge"**), or (ii) freely realize, recover, receive, repatriate, remit or transfer the proceeds of any Hedging Party Hedge."

| | |
|---|---|
| Hedging Party: | Nomura |
| Increased Cost of Hedging: | Applicable |

Where the Underlying Jurisdiction is a Closed Market Country, Section 12.9(a)(vi) of the Equity Definitions is hereby amended to read as follows:

**"Increased Cost of Hedging"** means that the Hedging Party would, after using commercially reasonable efforts, incur a materially increased cost (as compared with circumstances existing on the Trade Date) amount of tax, duty, expense or fee (other than brokerage commissions) (a **"Hedging Cost"**) to (i) acquire, establish, re-establish, substitute, maintain, unwind or dispose of a Hedging Party Hedge, or (ii) freely realize, recover, receive, repatriate, remit or transfer out of or into the Local Jurisdiction the proceeds of or any Hedging Party Hedge; provided that any such materially increased amount that is incurred solely due to the deterioration

Schedule 3 - 5

Archegos-SDNY-00295415
SDNY_P001_0000351323

|  | of the creditworthiness of the Hedging Party shall not be deemed an Increased Cost of Hedging. |
|---|---|
| Hedging Party: | Nomura |
| Loss of Stock Borrow: | Applicable |
| Maximum Stock Loan Rate: | Initial Stock Loan Rate |
| Hedging Party: | Nomura |
| Increased Cost of Stock Borrow: | Applicable |
| Initial Stock Loan Rate: | As determined by Calculation Agent with respect to each SPB Transaction taking into account any Fee Adjustment. |
| Hedging Party: | Nomura |
| Determining Party: | Nomura, provided that, any dispute resolution provisions applicable to determinations by the Calculation Agent shall equally apply to determinations by the Determining Party. |
| Consequences of FX Disruption in a Closed Market Country | If the Underlying Jurisdiction is a Closed Market Country, the following provisions shall also apply: |

If the Calculation Agent determines that an FX Disruption Event has occurred and is continuing on any Valuation Date, Cash Settlement Payment Date, Termination Date or any other valuation, determination or payment date or the date that the SPB Transaction terminates or cancels, that results in any one or more of the following to occur:

(i)    Nomura being prevented, after using commercially reasonable efforts, from performing its obligations with respect to the SPB Transaction;

(ii)   a Hedging Disruption; or

(iii)  the Hedging Party being prevented, after using commercially reasonable efforts, from converting the proceeds from the sale or the

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295416
SDNY_P001_0000351324

unwinding or the disposal of any such assets or instruments into the Settlement Currency,

then the determination of the Equity Amount, the Cancellation Amount, early termination amount or any other amount, as the case may be, and/or Nomura's obligation to pay such amount, as the case may be, to Counterparty shall be postponed until the Business Day which falls the same number of Business Days after the Business Day on which such FX Disruption Event ceases to exist as a Cash Settlement Payment Date was originally scheduled to be after the relevant Valuation Date.

If the start of an FX Disruption Event coincides with a Disrupted Day, the above provisions shall take effect only after such postponements or adjustments have been made as a result of such Disrupted Day and Nomura's obligation to pay the Equity Amount, the Cancellation Amount, the early termination amount or any other amount, as the case may be, shall continue to be postponed in accordance with the above provisions. Further, the occurrence of an FX Disruption Event will not constitute an Event of Default and no interest or other sum shall accrue to the Counterparty in the event that the payment of the Equity Amount, the Cancellation Amount, the early termination amount or any other amount, as the case may be, is postponed.

If the start of an FX Disruption Event coincides with a Hedging Disruption, then the above provisions shall prevail over the Hedging Disruption provisions.

When an FX Disruption Event is continuing, neither party may effect an SPB Transaction Unwind in relation to the relevant SPB Transactions.

Payment of Unpaid Local Taxes or Excess Local Taxes in a Closed Market Country:

If the underlying Jurisdiction is a Closed Market Country, the following provision shall apply;

(a)     If any amount of Local Taxes should have been taken into account but was not taken into account in the determination of any amounts payable by Hedging Party and any Potential Adjustment Events or Extraordinary Events

Schedule 3 - 7

Archegos-SDNY-00295417
SDNY_P001_0000351325

(as the case may be, "**Unpaid Local Taxes**"), Counterparty shall pay to Nomura an amount equal to such Unpaid Local Taxes as the Calculation Agent may determine on the first SPB Business Day following notification from the Calculation Agent; or if any excess amount of Local Taxes that should not have been taken into account but was taken into account in the determination of any amounts payable by Nomura and any Potential Adjustment Events or Extraordinary Events (as the case may be, "**Excess Local Taxes**"), Nomura shall pay to Counterparty an amount equal to such Excess Local Taxes on the first SPB Business Day following notification from the Calculation Agent.

(b)     Counterparty hereby indemnifies and agrees to hold harmless Nomura or its Affiliates for any Unpaid Local Taxes and agrees to, promptly upon demand by Nomura, reimburse Nomura or its Affiliates on a full indemnity basis for all Unpaid Local Taxes.

The provisions in paragraphs (a) and (b) above relating to Unpaid Local Taxes and Excess Local Taxes shall apply and remain in full force and effect even if the Termination Date has occurred.

As used herein:

"**Local Taxes**" means taxes, duties and similar charges (in each case, including interest and penalties thereon) imposed by the taxing authority in any jurisdiction (including, without limitation, any retroactive or future taxes which in the reasonable belief of Nomura would be imposed by such taxing authority), that would be withheld from or paid or otherwise incurred by Nomura or its Affiliates in connection with its Hedge Positions, excluding any corporate income taxes levied on the overall net income of Nomura without regard to any refunds, credits or relief that Nomura or its Affiliates may be entitled to, including any claim for benefits under an applicable double tax agreement.

Schedule 3 - 8

Archegos-SDNY-00295418
SDNY_P001_0000351326

| | |
|---|---|
| Dividend Conversion: | With respect to any Dividend Amount, Cash Distribution Amount or Proceeds Value, such amount shall be as converted (where the Settlement Currency is different from the Underlying Currency) from the Underlying Currency into the Settlement Currency at the Relevant Exchange Rate on the relevant Dividend Receipt Date (subject to the occurrence of an FX Disruption Event) (if applicable). |
| Dividend Receipt Date: | With respect to each Dividend Amount, Cash Distribution Amount or Proceeds Value the date on which the relevant amount would have been received by the Equity Amount Payer had the Equity Amount Payer been a holder of record of the relevant Underlying on the relevant record date or ex date (as applicable as determined by the Calculation Agent) |
| Dividend/Distribution Percentage: | As separately specified in the applicable SPB Transaction Supplement for Long SPB Transactions and Short SPB Transactions. The Dividend/Distribution Percentage shall be subject to adjustment in accordance with this SPB General Terms Supplement and the provisions of the SPBMC relating to the Terms. |
| Dividend/Distribution Adjustment Event: | If the Calculation Agent reasonably determines that there has been any Change in Tax Law which would have the effect of reducing or increasing the amount of either the cash receivable in respect of or tax credit attributable to the dividend or distribution that would be paid by the issuer of the applicable Bonds to a holder that: |

    (i)    has a taxable presence or is otherwise resident for taxation purposes in the UK; or

    (ii)    if the SPB Transaction is entered into by Nomura through any of its Affiliates as its agent, has a taxable presence or is otherwise resident for taxation purposes in any jurisdiction in which such Affiliate is resident for taxation purposes or otherwise has a taxable presence; or

    (iii)    if Counterparty is the Equity Amount Payer under the SPB Transaction, has a taxable

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295419
SDNY_P001_0000351327

presence or is otherwise resident for taxation purposes in any jurisdiction in which any Lender is resident for taxation purposes or otherwise has a taxable presence

(a "**Dividend/Distribution Adjustment Event**"), the Calculation Agent may (after taking into account any adjustment made to the Dividend/Distribution Percentage) adjust the Dividend Amount or Cash Distribution Amount (as applicable) with immediate effect by notice in writing to the Parties, or, in the event that any such change is expressed to take effect prior to the date upon which Calculation Agent gives such notice, the Calculation Agent may make such adjustments to the payment obligations of the Parties in respect of the SPB Transaction, in each case as it deems appropriate in order to account for such reduction or increase.

If the SPB Transaction shall have previously terminated (including by reason of a Change in Law Additional Disruption Event), but the amount of any payment previously made or subsequently to be made thereunder is or would be affected by any Dividend/Distribution Adjustment Event, the Counterparty shall pay to Nomura an amount determined by the Calculation Agent to reflect the amount by which any payment with respect to the Dividend Amount would have been decreased on account of such Dividend/Distribution Adjustment Event, including but not limited to costs of funds, payments to any Lender and penalties due to a government or taxing authority (the "**Dividend/Distribution Adjustment Amount**"), and in addition thereto the amount, if any, by which any liability to tax of Nomura is or will be increased as a result of the Dividend/Distribution Adjustment Amount, so that, taking into account the matter giving rise to the payment of the Dividend/Distribution Adjustment Amount, the payment thereof and the time value of money as it affects Nomura in relation to such matters, Nomura shall be in no better nor worse position by reason of the matter giving rise to the payment of the Dividend/Distribution Adjustment Amount having occurred and such payment having been made than

Schedule 3 - 10

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295420
SDNY_P001_0000351328

Nomura would have been had the matter giving rise to the payment not occurred and no payment thereof had had to be made.

**"Change in Tax Law"** means the enactment, promulgation, execution or ratification of, or any change in or amendment to, any tax law (or the official interpretation of any tax law) that occurs after the Parties enter into the relevant SPB Transaction.

Adjustments:

In determining any amount, including but not limited to the Final Price, Equity Amount, Dividend Amount, Full Redemption Amount, Cash Partial Redemption Amount, Non-Cash Partial Redemption Amount, Distribution Amount, Non-Cash Distribution Amount, Proceeds Value and the effect of any Potential Adjustment Event, the Calculation Agent may make any adjustments it considers necessary to account for any costs, commissions, other fees and any Local Taxes that Nomura may be required to or may otherwise incur, or that the Hedging Party may be required to pay or may otherwise incur in connection with its Hedge Positions.

**Additional Representations, Agreements and Acknowledgments:**

Non-Reliance:                              Applicable

Agreements and                            Applicable
Acknowledgments regarding
Hedging Activities:

Additional Acknowledgments:               Applicable

**Account details:**

Account for payments to Nomura:   To be provided in writing prior to settlement

Account for payments to           To be provided in writing prior to settlement
Counterparty:

**Consent to Regulatory Disclosure:**

Without prejudice to the generality of any applicable law, Counterparty expressly consents to the disclosure by Nomura or its affiliates to the relevant authorities in the

Schedule 3 - 11

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295421
SDNY_P001_0000351329

jurisdiction of the incorporation or organisation of the Issuer (a **"Relevant Jurisdiction"**), each jurisdiction in which the Underlying and/or Hedge Positions attributable to Nomura and/or its affiliates are located and/or traded (each, a **"Local Jurisdiction"**) or any jurisdiction of tax residence of the Issuer (a **"Tax Residence Jurisdiction"**), information relating to the SPB Transaction (including, without limitation, the name of Counterparty and any dates and amounts specified in the SPB Transaction Supplement) as may be required by such relevant authorities from time to time pursuant to applicable laws and regulations of the Relevant Jurisdiction, the Local Jurisdiction and/or the Tax Residence Jurisdiction (as applicable), provided, however, Nomura or its affiliates shall, to the extent permitted by law, use commercially reasonable efforts to provide counterparty advance notice of any such disclosure (provided further that failure to provide such notice will not be deemed a breach of this SPBMC).

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295422
SDNY_P001_0000351330

## SCHEDULE 4

## PRODUCT SUPPLEMENTS

### SPB Bonds Supplement

The following terms shall apply where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Bonds.

This SPB Bonds Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the SPB General Terms Supplement, the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement. This SPB Bonds Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**General Terms:**

| | |
|---|---|
| Issuer: | The Issuer of the Bonds. |
| Bonds: | Subject to "Additional Provisions – Conversions" below, the Underlying specified in the relevant SPB Transaction Supplement. |
| Underlying Shares: | In respect only of Bonds that are exchangeable or convertible bonds, the shares, if any, into or for which the Bonds are or may be convertible or exchangeable at a specified time, or from time to time, whether at the option of the Issuer or any holders thereof or on a mandatory basis. |
| Transaction Face Amount: | Number of Units multiplied by the principal amount outstanding of a Bond on the Effective Date. The Transaction Face Amount shall be subject to reduction by the Calculation Agent on account of any Partial Redemption. |
| Relevant Jurisdiction: | With respect to any amount payable under an SPB Transaction, such of the jurisdictions specified in sub-paragraphs (i), (ii) and (iii) of "Dividend/Distribution Adjustment Event" in this SPB Bonds Supplement as the Calculation Agent may determine to be material for the purposes of such payment. |
| Scheduled Trading Day: | (a) In respect of Bonds that are not exchangeable or convertible bonds, not applicable; and (b) in respect |

Confidential Treatment Requested by King & Spalding

of Bonds that are exchangeable or convertible bonds, as determined in accordance with Section 1.31 of the Equity Definitions.

| | |
|---|---|
| Bond Business Day: | Each day which is both an SPB Business Day and (if applicable) a Scheduled Trading Day. |
| Observation Date: | In respect of a payment under Bonds (a) that are bearer bonds, the date of such payment and (b) that are registered bonds, whichever of the record date for such payment under such Bonds (as specified by the Issuer or in the legal instrument governing the Bonds or as otherwise determined by the Calculation Agent) and the date of such payment that the Calculation Agent determines to be the more appropriate in connection with such Bonds. |
| Exchange: | (a) In respect of Bonds that are not exchangeable or convertible bonds, not applicable; and (b) in respect of Bonds that are exchangeable or convertible bonds, the exchange or quotation system on which the largest volume of Underlying Shares normally trade. |
| Related Exchange: | Not Applicable |

**Equity Amounts payable by Equity Amount Payer:**

| | |
|---|---|
| Equity Amount: | Each Equity Amount shall be determined as if this SPB Transaction were a Share Transaction; provided that if the Equity Amount is payable on a Cash Settlement Payment Date falling on or after the Full Redemption Date or the Scheduled Maturity Date, the Equity Amount payable on the corresponding Cash Settlement Payment Date shall be equal to: |

    (i)    any amounts of principal actually paid by the Issuer in cash to holders of the Bonds in the Relevant Jurisdiction on the Full Redemption Date or Scheduled Maturity Date, as applicable, in respect of Bonds with an outstanding principal amount equal to the Transaction Face Amount as of the Observation Date relating to the Full Redemption Date or the Scheduled Maturity Date of the Bonds (prior to giving effect to such principal payment), as applicable, minus

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295424
SDNY_P001_0000351332

|  | (ii) | the Initial Price multiplied by the Transaction Face Amount as of the Observation Date relating to the Full Redemption Date or as of the Scheduled Maturity Date of the Bonds (prior to giving effect to such principal payment), as applicable. |
|---|---|---|

Cash Settlement Payment Dates:    Notwithstanding the definition of Cash Settlement Payment Dates in Schedule 1 of the SPMBC, if the Observation Date with respect to the Scheduled Maturity Date or the Full Redemption Date occurs on or prior to the date that would (but for this proviso) have been the final Cash Settlement Payment Date (the "**Scheduled Final Cash Settlement Payment Date**"), such Cash Settlement Payment Date shall not occur, and instead the final Cash Settlement Payment Date shall occur five SPB Business Days following the Scheduled Maturity Date or the Full Redemption Date (as the case may be).

Initial Price:    (i) Prior to and on the first Valuation Date, the Initial Price shall be a price per Unit of the relevant Underlying determined by the Calculation Agent as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the Effective Date or relevant Valuation Date, as applicable, using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable); and

(ii) at any time after the first Valuation Date, the Final Price as at the most recent Valuation Date.

The Initial Price shall be inclusive of accrued interest through the Effective Date, unless the Calculation Agent determines that on the Effective Date the Bonds trade exclusive of accrued interest, in which case such Initial Price will be exclusive of accrued interest.

Final Price:    The Final Price for any Valuation Date shall be a value per Unit of the relevant Underlying determined by the Calculation Agent as converted (where the Underlying Currency is different from the Settlement

SPB Bonds Supplement - 3

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295425
SDNY_P001_0000351333

Currency) from the Underlying Currency into the Settlement Currency on the relevant Valuation Date using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable).

The Final Price shall be inclusive of accrued interest through the relevant Valuation Date, unless the Calculation Agent determines that on the Effective Date the Bonds trade exclusive of accrued interest, in which case such Final Price will be exclusive of accrued interest.

Where the Underlying Jurisdiction is Japan, for the purposes of determining the Final Price, the Calculation Agent may take into account any closing special quote per Underlying quoted by the Exchange (*tokubetsu kehaine*).

**Valuation Time:**   The time selected by the Calculation Agent.

**Valuation Dates:**   As specified in the relevant SPB Transaction Supplement; provided that any reference to "Scheduled Trading Day" in the definition of Valuation Dates as specified in the relevant SPB Transaction Supplement shall be construed as a reference to "Bond Business Day".

**Disrupted Day:**   Section 6.4 of the Equity Definitions shall not apply. **"Disrupted Day"** means any Scheduled Trading Day on which (a) any event that disrupts or impairs (as determined by the Calculation Agent) the ability of market participants in general to effect transactions in or obtain market values for the Bonds or (in the case of a Bond which is a convertible or exchangeable bond) any Underlying Shares has occurred or (b) in the case of a Bond which is a convertible or exchangeable bond, the Exchange fails to open for trading during its regular trading session.   The Calculation Agent shall as soon as reasonably practicable under the circumstances notify the Parties or other Party, as the case may be, of the occurrence of a Disrupted Day on any day that, but for the occurrence of a Disrupted Day, would have been a Valuation Date.   Without limiting the obligation of the Calculation Agent to notify the Parties as set forth

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295426
SDNY_P001_0000351334

in the preceding sentence, failure by the Calculation Agent to notify the Parties of the occurrence of a Disrupted Day shall not affect the validity of the occurrence and effect of such Disrupted Day on any SPB Transaction to which this SPB Bonds Supplement applies.

Consequences of a Disrupted Day:

Section 6.6 of the Equity Definitions shall not apply. If any Valuation Date (other than a Valuation Date occurring pursuant to sub-paragraph (a) of the definition thereof in this SPB Bonds Supplement) is a Disrupted Day, then such Valuation Date shall be the first succeeding Bond Business Day that is not a Disrupted Day; provided that if such Valuation Date has not occurred as of the Valuation Time on the eighth Bond Business Day immediately following the date which, but for the occurrence of the event causing the Disrupted Day, would have been such Valuation Date, then (1) that eighth Bond Business Day shall be deemed to be such Valuation Date, and (2) the Calculation Agent shall determine its good faith estimate of the value of the Bonds (inclusive of accrued interest through such eighth Bond Business Day, unless the Calculation Agent determines that on such day the Bonds then trade exclusive of accrued interest), on that eighth Bond Business Day (and such value shall be the Final Price for such Value Date).

Full Redemption Date:

The date, if any, on which the Issuer pays all holders of the Bonds in the Relevant Jurisdiction in respect of the entire then outstanding principal amount of the Bonds held by such holders in cash (a "**Full Redemption**") in respect of an Observation Date that occurs during the period extending from and including the Effective Date to but excluding the Scheduled Final Cash Settlement Payment Date.

Scheduled Maturity Date:

The date on which the Bonds are scheduled to be redeemed in full (without taking into account any provisions in their terms and conditions relating to the early redemption or acceleration of the Bonds).

Full Redemption Amount:

The amount of principal actually paid by the Issuer in cash on the Full Redemption Date to holders of the Bonds in the Relevant Jurisdiction in respect of Bonds with an outstanding principal amount equal to

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295427
SDNY_P001_0000351335

the Transaction Face Amount as of the Observation Date relating to the Full Redemption Date.

**Synthetic Payment for Full Redemptions:**

The Synthetic Payment Notional Amount for the purposes of determining a Synthetic Payment pursuant to the occurrence of a Full Redemption shall be equal to the sum of the Full Redemption Amount and any Proceeds Value determined by the Calculation Agent in connection with such Full Redemption (or that would have been so determined if "Non-Cash Distributions, Redemptions and Conversions Occurring Following the Final Valuation Date" had applied thereto).

**Additional Equity Amounts:**

**Additional Equity Amounts Payer:**

As specified in the Consequences of Cash Partial Redemptions provision below.

**Additional Equity Amounts Period:**

The period which commences on, and includes, the Effective Date and ends on, but excludes, the final Cash Settlement Payment Date.

**Additional Equity Amount:**

In respect of any Partial Redemption that consists of cash (in whole or in part), the Additional Equity Amount shall be an amount equal to:

(i)   the Cash Partial Redemption Amount; minus
(ii)  the Initial Price as of the Valuation Date immediately preceding the Observation Date for such Cash Partial Redemption multiplied by the portion of the Transaction Face Amount to which such Cash Partial Redemption Amount relates (as determined by the Calculation Agent).

**Additional Equity Amounts Payment Dates:**

The Additional Equity Amounts Payer shall pay to the other Party any Additional Equity Amount five SPB Business Days following the related Partial Redemption Date, notwithstanding the occurrence of the final Cash Settlement Payment Date (unless the Partial Redemption Date occurs more than six months following the final Cash Settlement Payment Date, in which case the Additional Equity Amount will not be paid).

**Partial Redemption:**

Any repayments of principal on the Bonds or

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295428
SDNY_P001_0000351336

redemption of the Bonds that corresponds to Bonds with an outstanding principal amount equal to the Transaction Face Amount as of the Observation Date for the Partial Redemption, where (i) the Observation Date occurs during the Additional Equity Amounts Period, (ii) such repayment or redemption is expected to be made by the Issuer to holders of the Bonds in the Relevant Jurisdiction, and (iii) such repayment or redemption (a) is all in cash, but is in respect of less than the entire principal amount of the Bonds then outstanding; (b) is comprised partially of cash and partially of securities or assets other than cash, and is in respect of all or any portion of, the principal amount of the Bonds then outstanding; or (c) is comprised solely of securities or assets other than cash, and is in respect of all or any portion of, the principal amount of the Bonds then outstanding.

**Cash Partial Redemption Amount:**   The portion, if any, of a Partial Redemption that consists of cash.

**Non-Cash Partial Redemption Amount:**   The portion, if any, of a Partial Redemption that consists of securities or assets other than cash for which the Observation Date occurs during the Additional Equity Amounts Period, in respect of Bonds with an outstanding principal amount equal to the Transaction Face Amount as of the Observation Date.

**Partial Redemption Date:**   The date on which the Issuer makes a Partial Redemption.

**Consequences of Cash Partial Redemptions:**   If the Additional Equity Amount is positive, the Equity Amount Payer shall pay the related Additional Equity Amount to the Floating Amount Payer on the relevant Additional Equity Amounts Payment Date.

If the Additional Equity Amount is negative, the Floating Amount Payer shall pay the absolute value of the related Additional Equity Amount to the Equity Amount Payer on the relevant Additional Equity Amounts Payment Date.

**Consequences of Non-Cash Partial Redemption:**   The Calculation Agent shall adjust the terms of the Transaction, reasonably, to account for any Non-Cash Partial Redemption(s), but without giving rise

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295429
SDNY_P001_0000351337

|  | to an obligation for either Party on account of such Non-Cash Partial Redemption which is a delivery rather than a payment obligation, and subject to the "Non-Cash Distributions and Redemptions Occurring Following the Final Valuation Date" provision of this SPB Bonds Supplement. |
|---|---|
| Synthetic Payment for Partial Redemptions: | Counterparty, shall pay to Nomura a Synthetic Payment in respect of each Additional Equity Amount Payment Date.   The Synthetic Payment Notional Amount for the purposes of determining such Synthetic Payment shall be equal to the sum of the Cash Partial Redemption Amount and the cash value of the Non-Cash Partial Redemption Amount, as determined by the Calculation Agent, (or as would have been so determined if "Non-Cash Distributions, Redemptions and Conversions Occurring Following the Final Valuation Date" had applied thereto). |

**Distribution Amounts:**

| Distribution Amounts Payer: | Equity Amount Payer |
|---|---|
| Distribution Amounts Period: | The period that commences on, and includes the Effective Date and ends on, but excludes, the final Cash Settlement Payment Date. |
| Distribution Amount: | Any and all payments or distributions, including, without limitation, interest and coupon payments and consent fees, but excluding Partial Redemption Amounts or Full Redemption Amounts, that are actually made by the Issuer to holders of the Bonds in the Relevant Jurisdiction in respect of an outstanding principal amount of the Bonds equal to the Transaction Face Amount as of the relevant Observation Date and for which the Observation Date occurs during the Distribution Amounts Period. |
| Actual Cash Distribution Amount: | The portion of a Distribution Amount, if any, that consists of cash. |
| Non-Cash Distribution Amount: | That portion of a Distribution Amount, if any, that consists of property other than cash including, without limitation, securities or other non-cash assets. |

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295430
SDNY_P001_0000351338

| | |
|---|---|
| Consequences of Actual Cash Distribution Amounts: | The Distribution Amounts Payer shall pay the Floating Amount Payer an amount (the "**Cash Distribution Amount**") equal to the product of the applicable Dividend/Distribution Percentage and the Actual Cash Distribution Amount five SPB Business Days following the relevant Distribution Receipt Date, notwithstanding the occurrence of the final Cash Settlement Payment Date (unless the Distribution Receipt Date occurs more than six (6) months following the final Cash Settlement Payment Date, in which case the Cash Distribution Amount will not be paid). |
| Consequences of Non-Cash Distribution Amounts: | The Calculation Agent shall adjust the terms of the Transaction, effective as of the relevant Distribution Receipt Date, to account for any Non-Cash Distribution Amount(s), subject to the "Non-Cash Distributions and Redemptions Occurring Following the Final Valuation Date" provision of this SPB Bonds Supplement. |
| Distribution Receipt Dates: | In respect of a Distribution Amount, the date on which the payment or distribution by the Issuer in respect of that Distribution Amount would have been received by holders of the Bonds in the Relevant Jurisdiction. |

**Additional Disruption Events:**

Insolvency Filing:                Applicable

**Additional Provisions:**

(a)    **Conversions.**  This provision shall apply only in respect of Bonds that are convertible or exchangeable bonds.  If the Issuer converts the Bonds of holders in the Relevant Jurisdiction, whether pursuant to a mandatory conversion or optional conversion rights of the issuer or a holder, in whole or in part, into any securities or assets other than cash (including, without limitation, any Underlying Shares) (a "**Conversion**"), as of any Observation Date that occurs during the period from and including the Effective Date to but excluding the final Cash Settlement Payment Date, then, subject to the "Non-Cash Distributions and Redemptions Occurring Following the Final Valuation Date" provision of this SPB Bonds Supplement:

(i)      if such conversion is in respect of less than all of the SPB Bonds

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295431
SDNY_P001_0000351339

then outstanding, then this SPB Transaction shall become an SPB Transaction with respect to the Bonds and such other securities or such other assets, or any combination of the foregoing, as applicable, and the Calculation Agent shall adjust the terms of such SPB Transaction, as it reasonably deems appropriate, to account for such conversion; and

(ii)  if such conversion is in respect of all of the Bonds then outstanding, then this SPB Transaction shall become an SPB Transaction with respect to such other securities or such other assets, or any combination of the foregoing, as applicable, and the Calculation Agent shall adjust the terms of such SPB Transaction, as it reasonably deems appropriate, to account for such conversion.

(b)  **Non-Cash Distributions, Redemptions and Conversions Occurring Following the Final Valuation Date.**  Notwithstanding anything to the contrary in this SPB Bonds Supplement, if the Observation Date for any Non-Cash Distribution Amount, Non-Cash Partial Redemption or Conversion occurs during the period from and including the final Valuation Date to but excluding the final Cash Settlement Payment Date for an SPB Transaction, then in lieu of making adjustments described under the headings "Consequences of Non-Cash Distribution Amounts", "Consequences of Non-Cash Partial Redemptions" and "Conversions", (i) the Calculation Agent shall determine a cash value of the proceeds (the "**Proceeds Value**") that would be received by a holder in the Relevant Jurisdiction of Bonds with an outstanding principal amount equal to the Transaction Face Amount, as of the date that such proceeds are received by holders of the Bonds in the Relevant Jurisdiction (the "**Proceeds Receipt Date**"), and (ii) the Equity Amount Payer shall pay the Proceeds Value to the Floating Amount Payer on the fifth SPB Business Day following the Proceeds Receipt Date, unless the Proceeds Receipt Date occurs more than six months following the final Cash Settlement Payment Date, in which case the Proceeds Value will not be paid.

SPB Bonds Supplement - 10

Confidential Treatment Requested by King & Spalding

## SPB Shares/Custom Baskets Supplement

The following terms shall apply where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares or SPB Custom Baskets.

This SPB Shares/Custom Baskets Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the SPB General Terms Supplement, the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement.  This SPB Shares/Custom Baskets Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**General Terms:**

| | |
|---|---|
| Futures Price Valuation: | Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, as specified in the relevant SPB Transaction Supplement, provided that section 6.8 of the Equity Definitions shall be amended by deleting references to "Index" and "Index Transaction" and replacing them with references to "Share" and "Share Transaction" respectively, and that the words "level of the relevant Index" in section 6.8(e) of the Equity Definitions shall be deleted and replaced with the words "price of the relevant Shares as determined by the Calculation Agent". |
| Shares: | Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares: (a) If Futures Price Valuation applies, the share that underlies the Exchange-traded Contract; (b) if Futures Price Valuation does not apply, the Underlying. |
| Exchange-traded Contract: | Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares: (a) if Futures Price Valuation applies, the Underlying; (b) if Futures Price Valuation does not apply, Not Applicable. |
| Exchange: | (a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, the exchange or quotation system identified by the Exchange Reuters ID Number in the SPB Transaction Supplement; or |
| | (b)    where the SPB Transaction Supplement |

Confidential Treatment Requested by King & Spalding

specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, each exchange or quotation system on which the largest volume of Shares of each Issuer included in the SPB Custom Basket normally trade.

Related Exchange:

(a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, All Exchanges;

(b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, each exchange or quotation system where trading has a material effect (as determined by the Calculation Agent) on the overall market for futures or options contracts relating to the Shares of each Issuer included in the SPB Custom Basket; or

(c)    in either case, where the Underlying Jurisdiction is a Closed Market Country, All Exchanges, provided that, if the Underlying is the S&P CNX Nifty Index, Related Exchange shall be the National Stock Exchange of India Limited.

**Equity Amounts payable by Equity Amount Payer:**

Initial Price:

(a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares:

(i) Prior to and on the first Valuation Date, the Initial Price shall be a price per Unit of the relevant Underlying determined by the Calculation Agent as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the Effective Date or relevant Valuation Date, as applicable, using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable); and

(ii) at any time after the first Valuation Date, the Final Price as at the most recent Valuation Date; or

(b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, the sum of the products, aggregated for all Issuers of Shares in the SPB Custom Basket, of (i) the price per Share of

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295434
SDNY_P001_0000351342

such Issuer on the Trade Date as determined by the Calculation Agent, and (if not denominated in the Settlement Currency) converted into the Settlement Currency at the Relevant Exchange Rate on the Effective Date (subject to the Consequences of FX Disruption) multiplied by (ii) the Number of Shares of such Issuer in the SPB Custom Basket.

Final Price:

(a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, the Final Price for any Valuation Date shall be a value per Unit of the relevant Underlying determined by the Calculation Agent as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the relevant Valuation Date using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable); or

(b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, the sum of the products, aggregated for all Issuers of Shares in the SPB Custom Basket, (i) the price per Share of such Issuer at the Valuation Time on the relevant Valuation Date as determined by the Calculation Agent and (if not denominated in the Settlement Currency) converted into the Settlement Currency at the Relevant Exchange Rate on the Effective Date (subject to the Consequences of FX Disruption); multiplied by (ii) the Number of Shares of such Issuer in the SPB Custom Basket.

Where the Underlying Jurisdiction is Japan, for the purposes of determining the Final Price, the Calculation Agent may take into account any closing special quote per Underlying quoted by the Exchange (*tokubetsu kehaine*).

Valuation Time:

The time selected by the Calculation Agent.

Valuation Date:

As specified in the relevant SPB Transaction Supplement; provided that, if Futures Price Valuation applies, the Valuation Date shall be the "Maturity Date" specified in the relevant SPB Transaction Supplement.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295435
SDNY_P001_0000351343

**Dividends/Distributions:**

Dividend Period:

Whichever of First Period and Second Period the Calculation Agent reasonably determines to be more appropriate with respect to the Share and notifies to Counterparty in advance, taking into account such customary procedures with respect to the Share for determining ownership of the Share in connection with the payment of a dividend on it as are in the opinion of the Calculation Agent relevant to such determination.

Dividend Amount:

With respect to any Shares or Custom Basket Shares, where the relevant Exchange is:-

(a) an Ex Amount Market, the Ex Amount multiplied by the Number of Shares as of the date that the Shares have commenced trading ex-dividend on the Exchange; provided that (i) the reference to "100%" in the first line of Article 10.1(b) (Ex Amount) of the Equity Definitions shall be deleted and replaced with "Dividend Percentage" and (ii) the word "declared" in such definition shall be deleted and replaced with "paid"; or

(b) a Record Amount Market, the Record Amount multiplied by the Number of Shares as of the applicable record date; provided that (i) the reference to "100%" in the first line of Article 10.1(a) (Record Amount) of the Equity Definitions shall be deleted and replaced with "Dividend Percentage" and (ii) the words "declared by the Issuer" in such definition shall be deleted and replaced with "paid by the Issuer in respect of the gross cash dividend declared by the Issuer".

Where the Underlying Jurisdiction is Japan, the Dividend Amount shall include any special dividends (*tokubetsu haitou*) or memorial dividends (*kinen haitou*) in the form of cash (collectively, the "**Special Dividends**") that are paid with respect to the Underlying. For the avoidance of doubt, the treatment of any non-cash dividend shall be determined in accordance with the Potential Adjustment Event provisions set out in Section 11.2 (*Adjustments to Share Transactions and Share Basket Transactions*) of the Equity Definitions.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295436
SDNY_P001_0000351344

Provided, in each case, that in relation to any SPB Share Transaction that is a Short SPB Transaction, any Dividend Amount otherwise payable by Nomura to Counterparty shall be reduced to the extent that any related SPB Transaction Unwind would, if Nomura (acting in its sole discretion in its capacity as Hedging Party) both (x) had elected to enter into any hypothetical hedge or trading position with a Lender in respect of all of the Shares constituting the related Underlying for such SPB Share Transaction prior to such SPB Transaction Unwind request (any such position, a **"Hypothetical Stock Loan Hedge Position"**) and (y) were to elect to purchase Shares constituting the related Underlying for redelivery to such Lender or otherwise in an amount sufficient to cover such SPB Transaction Unwind (any such purchase, an **"Unwind Hedge Acquisition"**), result in an obligation of Nomura, for all or any portion of the period from and including the date on which such SPB Transaction Unwind is requested to and including the date on which the termination in whole or in part of such Hypothetical Stock Loan Hedge Position as a result of (and in a manner commensurate with) such SPB Transaction Unwind would in the ordinary course of business be settled, to make a payment under any such Hypothetical Stock Loan Hedge Position in respect of dividends or other distributions to the relevant Lender in an amount greater than the payment that Nomura would be entitled to receive in respect of dividends or other distributions under any related Unwind Hedge Acquisition.

| | |
|---|---|
| Extraordinary Dividend: | As determined by the Calculation Agent |
| Re-investment of Dividends: | Not Applicable |
| **Adjustments:** | |
| Method of Adjustment: | Modified Calculation Agent Adjustment for Closed Market Countries; otherwise Calculation Agent Adjustment. |
| **Extraordinary Events:** | |

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295437
SDNY_P001_0000351345

Consequence of Merger Events:

| | |
|---|---|
| Share-for-Share: | Modified Calculation Agent Adjustment for Closed Market Countries, otherwise Calculation Agent Adjustment |
| Share-for-Other: | Modified Calculation Agent Adjustment for Closed Market Countries, otherwise Calculation Agent Adjustment |
| Share-for-Combined: | Modified Calculation Agent Adjustment for Closed Market Countries, otherwise Calculation Agent Adjustment |
| Determining Party: | Nomura, provided that, any dispute resolution provisions applicable to determinations by the Calculation Agent shall equally apply to determinations by the Determining Party. |

Tender Offer:  Applicable

Consequences of Tender Offers:

| | |
|---|---|
| Share-for-Share: | Modified Calculation Agent Adjustment for Closed Market Countries, otherwise Calculation Agent Adjustment |
| Share-for-Other: | Modified Calculation Agent Adjustment for Closed Market Countries, otherwise Calculation Agent Adjustment |
| Share-for-Combined: | Modified Calculation Agent Adjustment for Closed Market Countries, otherwise Calculation Agent Adjustment |
| Determining Party: | Nomura, provided that, any dispute resolution provisions applicable to determinations by the Calculation Agent shall equally apply to determinations by the Determining Party. |

Composition of Combined Consideration:  Not Applicable

Nationalisation, Insolvency or Delisting:

(a)   Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, Cancellation and Payment; or

(b)   where the SPB Transaction Supplement

SPB Shares/Custom Baskets Supplement - 6

Archegos-SDNY-00295438
SDNY_P001_0000351346

|  | specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, Partial Cancellation and Payment. |
|---|---|
| Determining Party: | Nomura, provided that, any dispute resolution provisions applicable to determinations by the Calculation Agent shall equally apply to determinations by the Determining Party. |

With respect to any Merger Event, Tender Offer or Potential Adjustment Event, Nomura shall notify and consult with Counterparty prior to the relevant cut-off date for an election under such Merger Event, Tender Offer or Potential Adjustment Event pursuant to a timetable agreed between Nomura and Counterparty from time to time.

**Additional Disruption Events:**

| Insolvency Filing: | Applicable |
|---|---|

SPB Shares/Custom Baskets Supplement - 7

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295439
SDNY_P001_0000351347

## SPB Index/Futures Supplement

The following terms shall apply where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index or SPB Futures.

This SPB Index/Futures Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the SPB General Terms Supplement, the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement.  This SPB Index/Futures Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**General Terms:**

| | |
|---|---|
| Futures Price Valuation: | (a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, applicable; or |
| | (b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, as specified in the relevant SPB Transaction Supplement. |
| Index: | (a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, the Index will be the index that underlies the Exchange-traded Contract. The Calculation Agent shall determine whether the Index is a Multiple Exchange Index; or |
| | (b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, (i) if Futures Price Valuation applies, the index that underlies the Exchange-traded Contract; or (ii) if Futures Price Valuation does not apply, the Underlying. |
| Exchange-traded Contract: | (a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, the Underlying; or |
| | (b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, (i) if Futures Price Valuation applies, the Underlying; or (ii) if Futures Price Valuation does not apply, Not Applicable. |

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295440
SDNY_P001_0000351348

| | |
|---|---|
| Exchange: | (a) If the Index is not a Multiple Exchange Index, the exchange or quotation system identified by the Exchange Reuters ID Number and (b) if the Index is a Multiple Exchange Index, with respect to each Component Security, the stock exchange where that Component Security is principally traded. |
| Related Exchange: | (a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures and the Underlying Jurisdiction in an Open Market Country, if the Exchange Traded Contract is an option contract or futures contract on the Index, the stock or futures exchange where such options contract or futures contract is principally traded; |
| | (b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index and the Underlying Jurisdiction in an Open Market Country, (i) if Futures Price Valuation applies and the Exchange-traded Contract is an option contract or futures contract on the Index, the stock or futures exchange where such options contract or futures contract is principally traded; or (ii) if Futures Price Valuation does not apply, Not Applicable; or |
| | (c)    where the Underlying Jurisdiction is a Closed Market Country, All Exchanges, provided that, if the Underlying is the S&P CNX Nifty Index, Related Exchange shall be the National Stock Exchange of India Limited. |

**Equity Amounts payable by Equity Amount Payer:**

| | |
|---|---|
| Initial Price: | (i) Prior to and on the first Valuation Date, the Initial Price shall be a price per Unit of the relevant Underlying determined by the Calculation Agent as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the Effective Date or relevant Valuation Date, as applicable, using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if |

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295441
SDNY_P001_0000351349

applicable); and

(ii) at any time after the first Valuation Date, the Final Price as at the most recent Valuation Date.

Final Price:

The Final Price for any Valuation Date shall be a value per Unit of the relevant Underlying determined by the Calculation Agent as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the relevant Valuation Date using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable)

Where the Underlying Jurisdiction is Japan, for the purposes of determining the Final Price, the Calculation Agent may take into account any closing special quote per Underlying quoted by the Exchange (*tokubetsu kehaine*).

Valuation Time:

(a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, at the Scheduled Closing Time; or

(b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, the time selected by the Calculation Agent.

Valuation Date:

(a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, the Valuation Date shall be the "Maturity Date" specified in the relevant SPB Transaction Supplement; or

(b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, as specified in the relevant SPB Transaction Supplement; provided, however, that if the level of the Index is not published on a day which would but for this provision be a Valuation Date, the applicable Valuation Date shall not occur on such day and shall instead occur on the next date on which the level of the Index is published.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295442
SDNY_P001_0000351350

**Index Adjustment Events:**

| | |
|---|---|
| Index Cancellation: | Calculation Agent Adjustment |
| Index Modification: | Calculation Agent Adjustment |

Index Disruption:

Calculation Agent Adjustment, provided that, if the Index is a Multiple Exchange Index, a failure on the Valuation Date by the Index Sponsor to calculate and announce the Index will not be treated as an Index Disruption but will instead constitute a failure by the Index Sponsor to publish the level of the Index for the purposes of the definition of "Disrupted Day" set out in this SPB Index/Futures Supplement.

Index Disclaimer:

(a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, Not Applicable; or

(b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, Applicable.

Determining Party:

Nomura, provided that, any dispute resolution provisions applicable to determinations by the Calculation Agent shall equally apply to determinations by the Determining Party.

**Additional Provisions:**

If the Index is a Multiple Exchange Index, then the following terms shall apply to that SPB Transaction (and the Equity Definitions shall be construed accordingly).

Component Security:

Each component security of the Index.

Amendment to Section 6.8(e) of the Equity Definitions:

The words "the level of the relevant Index at the close of the regular trading session on the relevant Exchange" on lines 4 and 5 of Section 6.8(e) of the Equity Definitions shall be deleted and replaced with the words "the official closing level of the Index as calculated and published by the Index Sponsor".

Confidential Treatment Requested by King & Spalding          Archegos-SDNY-00295443
SDNY_P001_0000351351

| | |
|---|---|
| Scheduled Trading Day: | Any day on which: (i) the Index Sponsor is scheduled to publish the level of the Index; and (ii) the Related Exchange is scheduled to be open for trading for its regular trading session. |
| Valuation Time: | (i) For the purposes of determining whether a Market Disruption Event has occurred: (a) in respect of any Component Security, the Scheduled Closing Time on the Exchange in respect of such Component Security, and (b) in respect of any options contracts or future contracts on the Index, the close of trading on the Related Exchange; and (ii) in all other circumstances, the time at which the official closing level of the Index is calculated and published by the Index Sponsor. |
| Market Disruption Event: | Either: |

(i)  (a)  the occurrence or existence, in respect of any Component Security, of:

(1)  a Trading Disruption, which the Calculation Agent determines is material, at any time during the one hour period that ends at the relevant Valuation Time in respect of the Exchange on which such Component Security is principally traded;

(2)  an Exchange Disruption, which the Calculation Agent determines is material, at any time during the one hour period that ends at the relevant Valuation Time in respect of the Exchange on which such Component Security is principally traded; OR

(3)  an Early Closure; AND

(b)  the aggregate of all Component Securities in respect of which a Trading Disruption, an Exchange Disruption or an Early Closure occurs or exists comprises 20 per cent. or more of the level of the Index; OR

(ii)  the occurrence or existence, in respect of futures or options contracts relating to the Index, of: (a) a Trading Disruption; (b) an

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295444
SDNY_P001_0000351352

Exchange Disruption, which in either case the Calculation Agent determines is material, at any time during the one hour period that ends at the Valuation Time in respect of the Related Exchange; or (c) an Early Closure.

For the purposes of determining whether a Market Disruption Event exists in respect of the Index at any time, if a Market Disruption Event occurs in respect of a Component Security at that time, then the relevant percentage contribution of that Component Security to the level of the Index shall be based on a comparison of (x) the portion of the level of the Index attributable to that Component Security to (y) the overall level of the Index, in each case using the official opening weightings as published by the Index Sponsor as part of the market "opening data".

Trading Disruption:

Any suspension of or limitation imposed on trading by the relevant Exchange or Related Exchange or otherwise and whether by reason of movements in price exceeding limits permitted by the relevant Exchange or Related Exchange or otherwise: (i) relating to any Component Security on the Exchange in respect of such Component Security; or (ii) in options or futures contracts relating to the Index on the Related Exchange.

Exchange Disruption:

Any event (other than an Early Closure) that disrupts or materially impairs (as determined by the Calculation Agent) the ability of market participants in general to effect transactions in, or obtain market values for: (i) any Component Security on the Exchange in respect of such Component Security; or (ii) options or futures contracts relating to the Index on the Related Exchange.

Early Closure:

The closure on any Exchange Business Day of the Exchange in respect of any Component Security or the Related Exchange prior to its Scheduled Closing Time unless such earlier closing is announced by such Exchange or Related Exchange (as the case may be) at least one hour prior to the earlier of: (i) the actual closing time for the regular trading session on such Exchange or Related Exchange (as the case may be) on such Exchange Business Day; and (ii) the

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295445
SDNY_P001_0000351353

submission deadline for orders to be entered into the Exchange or Related Exchange system for execution at the relevant Valuation Time on such Exchange Business Day.

Disrupted Day:    Any Scheduled Trading Day on which: (i) the Index Sponsor fails to publish the level of the Index; (ii) the Related Exchange fails to open for trading during its regular trading session; or (iii) a Market Disruption Event has occurred.

SPB Index/Futures Supplement - 7

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295446
SDNY_P001_0000351354

**SCHEDULE 5**

**Jurisdiction Supplement**

This SPB General Terms Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the applicable SPB Product Supplement and the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement. This Jurisdiction Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**1.      India**

The following provisions will apply to SPB Transactions: (i) for which the Underlying Jurisdiction is India; and/or (ii) which are or otherwise involve an offshore derivative instrument (**"ODI"**) (as such term is defined for the purposes of Regulation 15A of the Securities and Exchange Board of India (Foreign Institutional Investors) Regulations, 1995) (as may be amended or supplemented from time to time, the **"FII Regulations"**):

(i)      The Parties agree that the provisions of the "Additional Provisions for Use with Indian Underliers" published by ISDA on 28 November 2008 and available on the ISDA website (www.isda.org) (as amended, supplement or replaced from time to time) (the **"Additional Provisions"**) are incorporated into the SPB Transaction Supplement.

(ii)      If a representation in the Additional Provisions proves to have been incorrect or misleading in any material respect when made or repeated or deemed to have been made or repeated; or if a party fails to comply with or perform any agreement or obligation undertaken by it in the Additional Provisions, it shall be an Additional Termination Event with all SPB Transactions which are or otherwise involve an ODI being the sole Affected Transactions, and with the Party in breach being the sole Affected Party.

**2.      Malaysia**

The following provisions will apply to SPB Transactions for which the Underlying Jurisdiction is Malaysia:

(i)      the Counterparty acknowledges that no approval of the Securities Commission of Malaysia is or will be obtained, nor will any prospectus be filed or registered with the Securities Commission of Malaysia for the offering of the SPB Transaction in Malaysia;

(ii)      the Parties agree that this SPBMC does not constitute and is not intended to constitute Nomura's making (a) available, (b) an offer for subscription or purchase, or (c) an invitation to subscribe for or purchase any security in Malaysia

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295447
SDNY_P001_0000351355

unless such offer or invitation falls within (x) Schedule 5 of the *Capital Markets and Services Act 2007* ("**CMSA**"), (y) Schedule 6 or 7 to the CMSA as an "excluded offer or excluded invitation" or "excluded issue" within the meaning of Sections 229 and 230 of the CMSA, and (z) where the SPB Transaction is a debenture, Schedule 8 to the CMSA applies; and

(iii)    the Parties agree that this SPBMC and any other offering material or document relating to the SPB Transaction may not be published or distributed, directly or indirectly, to any person in Malaysia except to persons where (a) Schedule 5 and (b) Schedule 6 or 7 to the CMSA, and (c) where the SPB Transaction is a debenture, Schedule 8 to the CMSA, applies to such offer, invitation or issue.

**3.    Taiwan**

The following provisions will apply to SPB Transactions: (i) for which the Underlying Jurisdiction is Taiwan; and/or (ii) which are linked to: (a) securities traded on the Taiwan Stock Exchange or GreTai Securities Market ("**Taiwan Listed Securities**"), (b) listed futures or option contracts which make reference to Taiwan Listed Securities or indices the components of which consist of Taiwan Listed Securities ("**Taiwan Listed Derivatives**") or (c) indices the components of which consist of Taiwan Listed Securities and/or Taiwan Listed Derivatives, which would involve Nomura or its affiliates investing in Taiwan Listed Securities or Taiwan Listed Derivatives under its "foreign financial institutional investor" ("**FINI**") status under the "Regulations Governing Investments in Securities by Overseas Chinese and Foreign Nationals" ("**Foreign Investment Regulations**") for hedging or other purposes:

(i)    The Parties agree that the provisions of Part 1 of Annex I to the "Representations for Taiwan Market Access Products" published by ISDA on 11 November 2013 and available on the ISDA website (www.isda.org) (as amended, supplemented or replaced from time to time) (the "**Taiwan Representations**") are incorporated into the SPB Transaction Supplement, provided that:

    (A)    references in the Taiwan Representations to:

        (1)    "Party B" shall be deemed to be references to "the Counterparty";

        (2)    "Party A" shall be deemed to be references to "Nomura";

        (3)    "Transaction" shall be deemed to references to "SPB Transaction"; and

    (B)    the representations and warranties set forth in Part 1 of Annex I to the Taiwan Representations shall be deemed to be given on the date on which the relevant SPB Transaction is entered into and at all times thereafter until the termination of the relevant SPB Transaction.

Schedule 5 - 2

(ii)    The Counterparty represents and warrants that it will not enter into the SPB Transaction or SPB Transaction unwind, as applicable, whilst in possession of any material non-public information on any Taiwan Listed Securities which are the underlying of such SPB Transaction.

## 4.    Thailand

The following provisions will apply to SPB Transactions for which the Underlying Jurisdiction is Thailand:

(i)    the Counterparty acknowledges that neither Nomura nor any of its affiliates that enters into the SPB Transaction maintain any licences, authorizations, or registrations for the undertaking of derivatives business as defined in the *Derivatives Act B.E. 2546 (2003)* in Thailand, nor is this SPBMC approved or registered in Thailand. The Counterparty further acknowledges that the SPB Transaction is only intended to be offered, or entered into, by Nomura entities incorporated, licensed or registered in the countries other than Thailand to, or with, clients located outside Thailand, is not being offered or entered into and may not be offered or entered into by Nomura entities incorporated, licensed or registered in the countries other than Thailand and is not being offered or entered into and may not be offered or entered into in Thailand, or to, or with, any person residing in Thailand; and

(ii)    the Counterparty represents and warrants that it has not entered into the SPB Transaction in Thailand and that it is not a person residing in Thailand. The Counterparty further represents and warrants that the information in this SPBMC is only intended to be read by it and must not be passed, issued, or shown to the public generally nor copied or redistributed to any other person without the prior consent of Nomura and in no way constitutes an offer or operation of businesses by Nomura in Thailand.

## 5.    People's Republic of China

The following provisions will apply to SPB Transactions for which the Underlying Jurisdiction is the People's Republic of China:

(i)    The Parties agree that the provisions of the "Representations in relation to China Market Access Products" published by ISDA on 10 February 2011 and available on the ISDA website (www.isda.org) (as amended, supplemented or replaced from to time to time) (the **"PRC Representations"**) are incorporated into the SPB Transaction Supplement, provided that references in the PRC Representations to:

(A)    "Party B" shall be deemed to be references to "the Counterparty";

(B)    "Party A" shall be deemed to be references to "Nomura"; and

Schedule 5 - 3

Archegos-SDNY-00295449
SDNY_P001_0000351357

    (C)    "Transaction" shall be deemed to be references to "SPB Transaction".

(ii)    The Counterparty agrees that, so long as it has any obligation under the Agreement:-

    (a)    It will comply with all applicable laws and regulations of the PRC in connection with any SPB Transaction hereunder, including those in relation to disclosure of interests and any related disposal restrictions;

    (b)    It acknowledges that Nomura and/or any of its affiliates may be required to disclose information relating to, among other things, the details of the SPB Transaction or the identities of any party having a legal or beneficial interest in the SPB Transaction as may be required by any relevant governmental or regulatory authorities (including, without limit, CSRC and SAFE) or as may be required under any law, regulation, orders or other lawful request, and it agrees to all such related disclosure and hereby waives confidentiality with regard thereto;

    (c)    It agrees to promptly provide Nomura and the relevant governmental or regulatory authorities with such additional information that the relevant governmental or regulatory authorities may require from Nomura and/or its affiliates from time to time, with regard to the identity and other details of the Counterparty or the beneficial owners in respect of the SPB Transaction, including but not limited to (i) the category to which the Counterparty belongs (i.e., hedge fund, corporate, individual, pension fund, trust, etc.); (ii) in the case where the Counterparty is a fund or the SPB Transaction is entered into by the Counterparty as trustee for a trust fund, names of the fund managers and investment advisors; and (iii) the source of funding of the Counterparty. It agrees that where such information is maintained by any third party on behalf of the Counterparty and the trust fund, it shall ensure that appropriate procedures are implemented with such third party to enable the prompt disclosure of such information to Nomura, its nominated affiliate and/or the relevant governmental or regulatory authorities on request;

    (d)    It will not transfer, novate or assign any SPB Transaction or any of its interest or obligation therein to another party without the prior written consent of Nomura. It acknowledges that Nomura will have the absolute discretion in deciding whether or not to give such consent, and may impose any condition which it sees fit (including, but not limited to, requiring the transferee and the Counterparty to enter into a side letter with Nomura in substantially the same terms of this Agreement and any other letter agreement between Nomura and the Counterparty in connection with such SPB Transaction) in relation to such consent.  To the extent such SPB Transaction or any of its interest or obligation therein is transferred, novated or assigned by the Counterparty in accordance with the terms of this Agreement, the Counterparty undertakes to ensure that the transferee gives

Schedule 5 - 4

Archegos-SDNY-00295450
SDNY_P001_0000351358

the representations set out in this paragraph 5 of the Jurisdiction Supplement above to Nomura (as though references to the Counterparty were to such transferee) and that the transferee complies with such representations. Any purported transfer not in compliance with this sub-paragraph (d) will be void; and

(e)    The provisions of sub-paragraphs (c) and (d) above shall survive the termination of the SPB Transaction(s).

(iii)    Upon the occurrence of a Regulatory Change Event, the Calculation Agent will (a) amend the terms of the SPB Transaction by a Price Adjustment reasonably determined by the Calculation Agent to be necessary to reflect the Regulatory Change Event and (b) determine the effective date of such Price Adjustment.

As used herein:

"CSRC" means the China Securities Regulatory Commission of the PRC.

"PRC" means the People's Republic of China.

"Regulatory Change Event" means any event which, in the determination of Nomura acting in good faith and in a commercially reasonable manner, constitutes:

(1)    the adoption of, change in or change in the interpretation or administration of, any law, rule or regulation by any governmental authority, central bank or comparable agency ("Governmental Authority"); and/or

(2)    the compliance by Nomura with any request or directive of any Governmental Authority (whether or not having the force of law),

and which (a) imposes, modifies, applies or eliminates any tax, reserve, special deposit, insurance assessment or any other requirement in respect of assets or deposits of Nomura in respect of any Hedge Positions entered into by Nomura; and/or (2) adversely affects in any other way the cost to Nomura of maintaining its Hedge Positions.

"SAFE" means the State Administration of Foreign Exchange of the PRC.

"trust" includes a trust fund or any similar arrangement where the legal title to the trust assets are held by a trustee or legal representative but the beneficial interests in the trust assets are held by beneficiaries; and "trustee" shall be construed accordingly.

6.    USA

The following terms shall apply solely to each SPB Transaction that references U.S. Underlyings:

Schedule 5 - 5

Archegos-SDNY-00295451
SDNY_P001_0000351359

(i)    **SPB Transaction Request**

Counterparty may request on any Scheduled Trading Day after the date of the SPBMC that Nomura enter into an SPB Transaction Request. Such SPB Transaction Request shall specify, at a minimum, the number of Units, the Underlying(s), the reference title of the SPB Series with reference to which such SPB Transaction or SPB Transaction Unwind is to be entered into, and whether such transaction is to be an SPB Transaction (and if so whether a Long SPB Transaction or a Short SPB Transaction) or an SPB Transaction Unwind; provided, however, no SPB Transaction Unwind may be requested and no SPB Transaction Unwind may occur within (i) the lesser of 10 calendar days or 7 SPB Business Days of the Trade Date for any Long Positions, and (ii) 30 calendar days of the Trade Date for any Short Positions.

(ii)    **Early Termination**

Nomura may, by giving Sufficient Prior Written Notice to the other party, terminate with immediate effect any outstanding SPB Transactions using a Final Price as determined below as if Counterparty had made and Nomura had accepted an SPB Transaction Request in respect of an SPB Transaction Unwind in relation to those SPB Transactions on the day such notice is effective. "Sufficient Prior Written Notice" means three (3) SPB Business Days prior notice from Nomura to Counterparty.

(iii)    **Initial Price**

(A)    Prior to and on the first Valuation Date, the Initial Price shall be a value per Unit of the relevant Underlying determined by the Calculation Agent using VWAP for each applicable Exchange Business Day specified pursuant to the terms of the applicable SPB Transaction, taking into account any additional provisions contained in any applicable SPB Product Annex with respect to the determination of such price, as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the Effective Date or relevant Valuation Date, as applicable, using the Relevant Exchange Rate; and

(B)    at any time after the first Valuation Date, the Final Price as at the most recent Valuation Date as defined in this SPB Series Confirmation.

(iv)    **Final Price**

The Final Price for any Valuation Date shall be a value per Unit of the relevant Underlying determined by the Calculation Agent using VWAP for each applicable Exchange Business Day specified pursuant to the terms of the applicable SPB Transaction, taking into account any additional provisions contained in any

Schedule 5 - 6

Archegos-SDNY-00295452
SDNY_P001_0000351360

applicable SPB Product Annex with respect to the determination of such price, as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the relevant Valuation Date using the Relevant Exchange.

"VWAP" means, for any Exchange Business Day, the volume-weighted average price for the applicable Underlying over any given period as determined by the Calculation Agent and displayed on Bloomberg or, in the event such price is not so reported for such day for any reason or is manifestly erroneous, as reasonably determined by the Calculation Agent.

(v)     **No Rights in the U.S. Underlying**

Nomura may not both (i) acquire or receive any Hedge Position from and (ii) transfer any Hedge Position to Counterparty; provided that with respect to Long Positions, Nomura may, in its sole discretion, carry out a transfer described in either clause (i) or clause (ii) hereto (but not both).

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295453
SDNY_P001_0000351361

## SCHEDULE 1

### Definitions

For the purposes of all terms under this SPBMC, the following definitions shall apply:

"**Bonds**" means the bonds or debt securities specified in the SPB Bonds Supplement.

"**Cash Settlement Payment Date(s)**" means, each Scheduled Cash Settlement Payment Date and with respect to any Units subject to an SPB Transaction Unwind each Unwind Cash Settlement Payment Date.

"**Closed Market Country**" means each of the People's Republic of China, India, Indonesia, Korea, Malaysia, Pakistan, Russia, Taiwan, Thailand and each other country as may be agreed in writing by the parties from time to time.

"**Combined Synthetic Payment**" has the meaning given to it in Clause 4 of the SPBMC.

"**Corporate Action**" has the meaning given to it in Clause 3.4(b) of the SPBMC.

"**Currency Day Count Fraction**" means, with respect to a currency, 1 divided by such denominator as the Calculation Agent may elect in order to convert the applicable benchmark overnight rate corresponding to that currency into a rate per day.

"**Custom Basket Shares**" means the Shares of any Issuer included in an SPB Custom Basket.

"**Designated Maturity**" means as specified in the SPB General Terms Supplement.

"**Distribution Receipt Date**" means as defined in the SPB Bonds Supplement.

"**Effective Date**" means as specified in the relevant SPB Transaction Supplement.

"**Equity Amount Payer**" means as specified in the SPB General Terms Supplement.

"**Equity Definitions**" means as defined in the SPBMC.

"**Equity Notional Amount**" means as defined in the SPB General Terms Supplement.

"**Equity Notional Reset**" means as specified in the SPB General Terms Supplement.

"**Ex Amount Market**" means each market as determined by the Calculation Agent where the customary practice is that a holder of shares entitlement to a dividend is determined by reference to the date that the Shares have commenced trading ex-dividend on the Exchange.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295454
SDNY_P001_0000351362

"**Exchange**" means as defined in the relevant SPB Product Supplement.

"**Exchange-traded Contract**" means as defined in the SPB Index/Futures Supplement.

"**Fee Adjustment**" means, for each SPB Transaction, a percentage which shall be determined from time to time by Nomura acting in a commercially reasonable manner, as specified in the relevant SPB Transaction Supplement and as may be adjusted by Nomura from time to time in accordance with Clause 3.4 of the SPBMC.

"**Final Price**" means as defined in the relevant SPB Product Supplement.

"**Floating Amount Payer**" means as defined in the SPB General Terms Supplement.

"**Floating Rate Option**" means as specified in the SPB Transaction Supplement.

"**FX Disruption Event**" means, solely where the underlying Currency Jurisdiction is a Closed Market Country.

(A) An event occurs and is continuing on any day with respect to an Underlying Currency that has the effect of preventing Nomura or any of its affiliates directly or indirectly from: (i) converting the Underlying Currency into the Settlement Currency through customary legal channels, (ii) converting the Underlying Currency into the Settlement Currency at a rate at least as favourable as the rate for domestic institutions located in the jurisdiction of the Underlying Currency (the "**Underlying Currency Jurisdiction**"), (iii) delivering the Settlement Currency from accounts inside the Underlying Currency Jurisdiction to accounts outside the Underlying Currency Jurisdiction, (iv) delivering the Underlying Currency between accounts inside the Underlying Currency Jurisdiction or to a party that is a non-resident of the Underlying Currency Jurisdiction, (v) obtaining a rate or a commercially reasonable rate (as determined by the Calculation Agent), in each case, at which its underlying hedge denominated in the Underlying Currency can be exchanged for the Settlement Currency, or (vii) delivering the Underlying Currency between accounts within the Underlying Currency Jurisdiction to a person who is a non-resident of that jurisdiction, including any action by any authority of the Underlying Currency Jurisdiction in the event of natural calamities, wars, conflict of arms or grave and sudden changes in domestic or foreign economic circumstances or other similar circumstances pursuant to any law or regulation of the Underlying Currency Jurisdiction; or

(B) the government of the Underlying Currency Jurisdiction gives public notice of its intention to impose any capital controls which the Calculation Agent determines in good faith are likely to materially affect Nomura or its affiliates' ability to hedge its position under the Transaction or to unwind any such hedge.

In either case as determined by the Calculation Agent.

"**Futures**" means the futures contract specified in the SPB Index/Futures Supplement.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295455
SDNY_P001_0000351363

"**Index**" means the index specified in the SPB Index/Futures Supplement.

"**Initial Price**" means as defined in the relevant SPB Product Supplement.

"**Lender**" means, with respect to an SPB Transaction, any third party entity whom the Calculation Agent determines is engaged in securities lending transactions with Nomura or any of its Affiliates in connection with the SPB Transaction (including on a portfolio basis) involving securities identical or equivalent to (or involving securities of the same issuer in respect of) the relevant Underlying.

"**Long Position**" means with respect to an Underlying that the Counterparty has one or more SPB Transactions where the Counterparty is the Floating Amount Payer.

"**Long SPB Transaction**" means with respect to an Underlying, an SPB Transaction where the Counterparty is the Floating Amount Payer.

"**Margin Percentage**" means as specified in the SPB Transaction Supplement.

"**Multiple Exchange Index**" means, in relation to an SPB Transaction, an Index to which the Calculation Agent determines the provisions of the SPB Index/Futures Supplement relating to "**Multiple Exchange Indices**" shall apply.

"**Open Market Country**" means any country that is not a Closed Market Country.

"**Product Identifier**" means as specified in the relevant SPB Transaction Supplement.

"**Record Amount Market**" means each market as determined by the Calculation Agent where the customary practice is that a holder of shares entitlement to a dividend is determined by reference to the applicable record date for such dividend.

"**Related Exchange**" means as specified in the relevant SPB Transaction Supplement.

"**Relevant Exchange Rate**" means the exchange rate for converting one unit of the relevant Underlying Currency into 1 unit of the Settlement Currency at a time on the relevant date as determined by the Calculation Agent.

"**Reset Dates**" means as defined in the SPB General Terms Supplement.

"**Scheduled Cash Settlement Payment Date**" means 1 Settlement Cycle following each Valuation Date, or if not a Currency Business Day, the next following Currency Business Day.

"**Settlement Currency**" means as specified in the SPB General Terms Supplement.

"**Shares**" means the shares specified in the SPB Shares/Custom Baskets Supplement.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295456
SDNY_P001_0000351364

"**Short Position**" means with respect to an Underlying that the Counterparty has one or more SPB Transactions where the Counterparty is the Equity Amount Payer.

"**Short SPB Transaction**" means with respect to an Underlying, an SPB Transaction where the Counterparty is the Equity Amount Payer.

"**SPB Bonds**" means an SPB Transaction that references Bonds and to which the SPB Bonds Supplement applies.

"**SPB Business Day**" means each day on which commercial banks and foreign exchange markets settle payments and are open for business (including dealings in foreign exchange and foreign exchange deposits) in London.

"**SPB Custom Baskets**" means an SPB Transaction that references a basket of Shares and to which the SPB Shares/Custom Baskets Supplement applies.

"**SPB Futures**" means an SPB Transaction that references Futures and to which the SPB Index/Futures Supplement applies.

"**SPB General Terms Supplement**" means the general terms supplement appended at Schedule 3 hereto.

"**SPB Index**" means an SPB Transaction that references an Index and to which the SPB Index/Futures Supplement applies.

"**SPB Product Supplement**" means each of the SPB Bonds Supplement, the SPB Index/Futures Supplement and the SPB Shares/Custom Baskets Supplement appended to this SPBMC.

"**SPB Product Type**" means the "Product Type" specified in the relevant SPB Transaction Supplement, being SPB Bonds, SPB Futures, SPB Index, SPB Shares or SPB Custom Baskets, as applicable.

"**SPB Shares**" means an SPB Transaction that references Shares and to which the SPB Shares/Custom Baskets Supplement applies.

"**SPB Transaction**" means an Equity Swap Transaction entered into under the terms of this SPBMC.

"**SPB Transaction Request**" means as defined in Clause 3.1 of the SPBMC.

"**SPB Transaction Supplement**" means as defined in Clause 3.2 of the SPBMC.

"**SPB Transaction Unwind**" means, with respect to an Underlying referenced in one or more SPB Transactions, the termination (in whole or in part) of one or more SPB Transactions in respect of that Underlying, as effected on the Termination Valuation Date

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295457
SDNY_P001_0000351365

with respect to that SPB Transaction Unwind.  The Underlying, number of Units and Termination Valuation Date with respect to each SPB Transaction Unwind shall be set out in an SPB Transaction Supplement.

"**Spread**" means as specified in the SPB General Terms Supplement.

"**Synthetic Payment Adjustment**" means the value specified in the relevant SPB Transaction Supplement, as may be adjusted by Nomura from time to time in accordance with the provisions of the SPBMC in relation to the Terms.

"**Synthetic Payment Amount**" has the meaning given to it in Clause 4 of the SPBMC.

"**Synthetic Payment Notional Amount**" means for the purposes of determining a Synthetic Payment Amount (i) in respect of an accepted SPB Transaction Request, the Initial Price prior to the first Valuation Date multiplied by the number of Units for the SPB Transaction with respect to that SPB Transaction Request specified in the relevant SPB Transaction Supplement, (ii) in respect of the termination of an SPB Transaction pursuant to an SPB Unwind or Clause 3.3 of the SPBMC, the Final Price determined for the purposes of such SPB Transaction Unwind or termination multiplied by the number of Units subject to such SPB Transaction Unwind or termination, (iii) in respect of the termination of an SPB Transaction other than where Sub-clause (ii) applies, the Final Price determined for the purposes of such termination multiplied by the Number of Units under that SPB Transaction as of the Termination Date; and (iv) expressed to be payable under the SPB General Terms Supplement as defined in the SPB General Terms Supplement.

"**Termination Date**" means as defined in the General Terms Supplement.

"**Termination Valuation Date**" has the meaning given to it in Clause 3.3 of the SPBMC. Other than for the purposes of Clause 3.3 of the SPBMC, a Termination Valuation Date shall not be a Valuation Date.

"**Terms**" means each of the following terms: the Transaction Spread, Floating Rate, Dividend/Distribution Percentage, Fee Adjustment and the Synthetic Payment Adjustment.

"**Trade Date**" means as specified in the relevant SPB Transaction Supplement.

"**Transaction Spread**" means for each SPB Transaction, the relevant Transaction Spread as defined in the SPB General Terms Supplement unless otherwise specified in the relevant SPB Transaction Supplement, as may be adjusted by Nomura from time to time in accordance with the provisions of the SPBMC in relation to the Terms.

"**Type of Return**" means as specified in the SPB General Terms Supplement.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295458
SDNY_P001_0000351366

"**Underlying**" means (i) in respect of an SPB Transaction to which Futures Price Valuation does not apply, the bonds, debt securities, index or shares specified in the relevant SPB Transaction Supplement, as applicable in each case, and (ii) in respect of SPB Transactions to which Futures Price Valuation applies, the Futures or the relevant Exchange-traded Contract relating to the Shares or Index specified in the relevant SPB Transaction Supplement, as applicable in each case.

"**Underlying Currency**" means the currency in which the relevant Underlying (or, in the case of Custom Basket Shares, the Shares of any Issuer included in the SPB Custom Baskets) is denominated except that if the Underlying is an Index the Underlying Currency means the relevant currency of the Index as described on the relevant Bloomberg Page or such other source as the Calculation Agent shall reasonably determine.

"**Underlying Jurisdiction**" means, with respect to any SPB Transaction that has an SPB Product Type of (a) SPB Shares, SPB Futures or SPB Index, the jurisdiction of incorporation of the issuer of the Underlying, and (b) SPB Custom Baskets, each of the jurisdictions of incorporation of the issuers of the Shares included in the SPB Custom Basket.

"**Units**" means as specified in the SPB General Terms Supplement.

"**Unwind Cash Settlement Payment Date**" mean 1 Settlement Cycle following each Termination Valuation Date, or if not a Currency Business Day, the next following Currency Business Day.

"**U.S. Underlyings**" mean publicly traded equities or exchange traded funds issued by U.S. issuers or traded on U.S. exchanges (including American depositary receipts), baskets of such equities or exchange traded funds, or regularly quoted and published third party-sponsored indices that include any of such equities or exchange traded funds.

"**Valuation Date**" means as specified in the relevant SPB Transaction Supplement and, if applicable, the relevant SPB Product Supplement.

"**Valuation Time**" means as defined in the SPB General Terms Supplement.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295459
SDNY_P001_0000351367

## SCHEDULE 2

### Form of SPB Transaction Supplement

This SPB Transaction Supplement is entered into between Nomura International plc ("**Nomura**") and [●] ("**Counterparty**" and, together with Nomura, the "**Parties**") on the Trade Date set forth below.

The purpose of this communication is to confirm the terms and conditions of the SPB Transaction entered into between Nomura and Counterparty on the Trade Date specified below.  This SPB Transaction Supplement supplements, forms part of and is subject to the Synthetic Prime Brokerage Master Confirmation between the Parties dated [●], as may be amended and supplemented from time to time (the "**SPBMC**"), and, together with the SPBMC, the SPB General Terms Supplement, the applicable SPB Product Supplement and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" as referred to in the Agreement.

The terms of the SPB Transaction to which this SPB Transaction Supplement relates are as follows:

| Product Identifier | RIC Code / ISIN | Underlying | SPB Product Type | Futures Price Valuation[1] | Multiplier | Maturity Date | Trade Date | Effective Date | Long / Short / Unwind |
|---|---|---|---|---|---|---|---|---|---|
| | | | [SPB Bonds] [SPB Shares] [SPB Custom Basket] [SPB Index] [SPB Futures] | [Applicable][Not Applicable] | | | | | |

---

[1] This will be "Applicable" where the SPB Product Type is SPB Futures.  Futures Price Valuation may also be applied via the SPB Transaction Supplement to SPB Shares.  For SPB Custom Baskets, please insert "N/A".

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295460
SDNY_P001_0000351368

| Number of Units | Initial Price / Final Price[2] | FX Rate | Dividend / Distribution Percentage | Transaction Spread (bps) | Fee Adjustment (bps) | Related Exchange | Combined Synthetic Payment | Synthetic Payment Adjustment | Synthetic Payment Date |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | [Applicable][Not Applicable] | [●], or otherwise notified by Nomura to Counterparty from time to time in accordance with the SPBMC. | [Each Cash Settlement Payment Date] [3 Currency Business Days after the next Valuation Date defined in the SPB Bonds General Terms Supplement] [The Termination Date] |

| Floating Amount Payer Payment Dates | Valuation Dates | Floating Rate Option |
|---|---|---|
| [Each Cash Settlement Payment Date] [[1st] Business Day of each month and each Unwind Cash Settlement Payment Date] [Last SPB Business Day of each month and each Unwind Cash Settlement Payment Date] | [•] / [1st Scheduled Trading Day of each month] / [Each Scheduled Trading Day] / [(a) 1st February, 1st May, 1st August and 1st November in each year from the Effective Date to the Termination Date, or in each case if not a Scheduled Trading Day, the next following Scheduled Trading Day and (b) the Scheduled Trading Day falling one Settlement Cycle prior to the Termination Date] | [AUD-SWAP OIS-RBA]<br>[HIBOR-HKAB]<br>[JPY-LIBOR-ICE]<br>[NZD-OCR-RBNZ]<br>[SGD-SIBOR-ABS]<br>[USD-LIBOR-ICE]<br>[GBP-LIBOR-ICE]<br>[EUR-EURIBOR-EBF] |

**Notifications of Calculation Agent amendments:**

Any notification of amendments by the Calculation Agent, including, without limitation, amendments resulting from any Corporate Action will not constitute a Confirmation but shall be a notice only.

_____

[2] This will be the "Initial" where the SPB Transaction is a short or long and Final Price where the SPB Transaction is an Unwind.

Confidential Treatment Requested by King & Spalding

## SCHEDULE 3

## SPB General Terms Supplement

This SPB General Terms Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the applicable SPB Product Supplement, the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement.  This SPB General Terms Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**General Terms:**

| | |
|---|---|
| Termination Date: | The date which is five (5) calendar years after the date of the SPBMC, unless otherwise agreed between the parties, or the final Cash Settlement Payment Date, whichever is later |
| Unit: | A trading unit of the Underlying (or, in the case of an Underlying that is Custom Basket Shares, the number of Shares of each Issuer included in a single SPB Custom Basket) |
| Multiplier: | In respect of SPB Transactions to which Futures Price Valuation applies, a "Multiplier" may be specified in the relevant SPB Transaction Supplement for the purpose only of informing the Counterparty of the multiplier embedded in the relevant Exchange-traded Contract. Notwithstanding any SPB Transaction Supplement, the Multiplier for the purposes of the Equity Definitions shall be 1 for all SPB Transactions. A "Multiplier" specified in any SPB Transaction Supplement is not intended to take operative effective per the Equity Definitions. |

**Equity Amounts payable by Equity Amount Payer:**

| | |
|---|---|
| Equity Amount Payer: | As specified with respect to the relevant Units in the SPB Transaction Supplement. |
| Number of Units: | As specified with respect to the relevant Underlying in the SPB Transaction Supplement (subject to reduction from time to time pursuant to any SPB Transaction Unwind). |
| Equity Notional Amount: | The product of the Initial Price and the Number of |

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295462
SDNY_P001_0000351370

Units (subject to any SPB Transaction Unwind).

Equity Notional Reset:                    Applicable

Type of Return:                            Total Return

**Floating Amounts payable by Floating Amount Payer:**

Floating Amount Payer:            With respect to an SPB Transaction, the Party that is not the Equity Amount Payer.

Notional Amount:                  For each day in a Calculation Period, the Equity Notional Amount with respect to that day

Floating Amount Payer Payment    As specified in the SPB Transaction Supplement.
Dates:

Floating Amount:                  (1)      With respect to each Floating Amount Payer Payment Date that is an Unwind Cash Settlement Payment Date, the product of:

(a)      the Notional Amount of such SPB Transaction Unwind (which shall be equal to the number of Units the subject of such SPB Transaction Unwind and the Initial Price used to determine the Cash Settlement Amount payable pursuant thereto); and

(b)      the sum of (i) the Floating Rate and (ii) the Spread; and

(c)      D/DCF, where 'D' means the actual number of days from and including the first day of the Calculation Period in which such Unwind Cash Settlement Payment Date falls to but excluding the relevant Unwind Cash Settlement Payment Date and DCF means the denominator usually applied to the Currency Day Count Fraction as determined by the Calculation Agent (each such amount, an "**Unwind Floating Amount**"),

except that any Floating Amount attributable to the Transaction Fee shall not be payable on the Unwind Cash Settlement Payment Date but shall be payable on the next Scheduled Cash Settlement Payment Date.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295463
SDNY_P001_0000351371

(2)      With respect to each Payment Date that is not an Unwind Cash Settlement Payment Date, the Floating Amount payable in respect of such date shall be the aggregate of the Daily Floating Amounts for each day in that Calculation Period less the sum of all Unwind Floating Amounts payable in relation to that Calculation Period.

| | |
|---|---|
| Daily Floating Amount: | For each day in a Calculation Period, an amount equal to the product of: |

(a)      the Notional Amount on such day; and

(b)      the sum of (i) the Relevant Rate and (ii) the Spread; and

(c)      the Currency Day Count Fraction.

| | |
|---|---|
| Designated Maturity: | As specified in the SPB Transaction Supplement or as otherwise agreed to by the Parties. |
| Spread: | The sum of the Transaction Spread and the Fee Adjustment |
| Reset Dates: | Daily, provided it is an SPB Business Day |
| Business Days: | Each day which is an SPB Business Day and (if the Settlement Currency is not USD, GBP or JPY) a Currency Business Day with respect to the Settlement Currency |
| Business Day Convention: | Following |

**Settlement Terms:**

| | |
|---|---|
| Cash Settlement: | Applicable (modified relative to the definition thereof in the Equity Definitions as provided herein). The Parties may agree in relation to specific SPB Transactions that amounts payable under section 8.6 of the Equity Definitions be converted into a currency other than the Settlement Currency at prevailing spot rates and satisfied by payment in such currency. |
| Settlement Currency: | As agreed between the Parties from time to time. |

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295464
SDNY_P001_0000351372

| | |
|---|---|
| **Calculation Agent:** | As specified in the Agreement |
| **Additional Disruption Events:** | |
| Change in Law: | Applicable.   Section 12.9(a)(ii) of the Equity Definitions is hereby amended to read as follows: |

(a)  where the Underlying Jurisdiction is a Closed Market Country:

**"Change in Law"** means that on or after the Trade Date of any SPB Transaction (A) due to the adoption of or any change in any applicable law or regulation (including, without limitation, any tax law), or (B) due to the promulgation of or any change in the interpretation by any court, tribunal or regulatory authority with competent jurisdiction of any applicable law or regulation (including any action taken by a taxing authority), the Calculation Agent determines in good faith that it will, or there is a substantial likelihood that it will, within the next 30 calendar days, but before the Termination Date of the SPB Transaction, become, or it has become, illegal for a party (or an affiliate of that Party) to that SPB Transaction to hold, acquire or dispose of one or more Hedge Positions relating to such SPB Transaction; and

(b)  in all other circumstances:

**"Change in Law"** means that on or after the Trade Date of any SPB Transaction (A) due to the adoption of or any change in any applicable law or regulation (including, without limitation, any tax law), or (B) due to the promulgation of or any change in the interpretation by any court, tribunal or regulatory authority with competent jurisdiction of any applicable law or regulation (including any action taken by a taxing authority), the Calculation Agent determines in good faith that it has become illegal for a party to that SPB Transaction to hold, acquire or dispose of one or more Hedge Positions relating to such SPB Transaction.

| | |
|---|---|
| Failure to Deliver: | Not Applicable |

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295465
SDNY_P001_0000351373

| | |
|---|---|
| Hedge Positions: | The definition of "**Hedge Positions**" in Section 13.2(b) of the Equity Definitions is amended by inserting the words "or an Affiliate thereof" after the words "a party" in the third line. |
| Hedging Disruption: | Applicable |

Where the Underlying Jurisdiction is a Closed Market Country, Section 12.9(a)(v) of the Equity Definitions is hereby amended to read as follows:

"**Hedging Disruption**" means that the Hedging Party is unable, after using commercially reasonable efforts, to either (i) acquire, establish, re-establish, substitute, maintain, unwind or dispose of any transactions or assets it deems necessary to hedge the equity price risk (or any other relevant price risk including, but not limited to, the currency risk) or entering into and performing its obligations with respect to such SPB Transaction (any such transactions or assets, a "**Hedging Party Hedge**"), or (ii) freely realize, recover, receive, repatriate, remit or transfer the proceeds of any Hedging Party Hedge."

| | |
|---|---|
| Hedging Party: | Nomura |
| Increased Cost of Hedging: | Applicable |

Where the Underlying Jurisdiction is a Closed Market Country, Section 12.9(a)(vi) of the Equity Definitions is hereby amended to read as follows:

"**Increased Cost of Hedging**" means that the Hedging Party would, after using commercially reasonable efforts, incur a materially increased cost (as compared with circumstances existing on the Trade Date) amount of tax, duty, expense or fee (other than brokerage commissions) (a "**Hedging Cost**") to (i) acquire, establish, re-establish, substitute, maintain, unwind or dispose of a Hedging Party Hedge, or (ii) freely realize, recover, receive, repatriate, remit or transfer out of or into the Local Jurisdiction the proceeds of or any Hedging Party Hedge; provided that any such materially increased amount that is incurred solely due to the deterioration

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295466
SDNY_P001_0000351374

of the creditworthiness of the Hedging Party shall not be deemed an Increased Cost of Hedging.

| | |
|---|---|
| Hedging Party: | Nomura |
| Loss of Stock Borrow: | Applicable |
| Maximum Stock Loan Rate: | Initial Stock Loan Rate |
| Hedging Party: | Nomura |
| Increased Cost of Stock Borrow: | Applicable |
| Initial Stock Loan Rate: | As determined by Calculation Agent with respect to each SPB Transaction taking into account any Fee Adjustment. |
| Hedging Party: | Nomura |
| Determining Party: | Nomura, provided that, any dispute resolution provisions applicable to determinations by the Calculation Agent shall equally apply to determinations by the Determining Party. |
| Consequences of FX Disruption in a Closed Market Country | If the Underlying Jurisdiction is a Closed Market Country, the following provisions shall also apply: |

If the Calculation Agent determines that an FX Disruption Event has occurred and is continuing on any Valuation Date, Cash Settlement Payment Date, Termination Date or any other valuation, determination or payment date or the date that the SPB Transaction terminates or cancels, that results in any one or more of the following to occur:

(i)     Nomura being prevented, after using commercially reasonable efforts, from performing its obligations with respect to the SPB Transaction;

(ii)     a Hedging Disruption; or

(iii)     the Hedging Party being prevented, after using commercially reasonable efforts, from converting the proceeds from the sale or the

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295467
SDNY_P001_0000351375

unwinding or the disposal of any such assets or instruments into the Settlement Currency,

then the determination of the Equity Amount, the Cancellation Amount, early termination amount or any other amount, as the case may be, and/or Nomura's obligation to pay such amount, as the case may be, to Counterparty shall be postponed until the Business Day which falls the same number of Business Days after the Business Day on which such FX Disruption Event ceases to exist as a Cash Settlement Payment Date was originally scheduled to be after the relevant Valuation Date.

If the start of an FX Disruption Event coincides with a Disrupted Day, the above provisions shall take effect only after such postponements or adjustments have been made as a result of such Disrupted Day and Nomura's obligation to pay the Equity Amount, the Cancellation Amount, the early termination amount or any other amount, as the case may be, shall continue to be postponed in accordance with the above provisions.  Further, the occurrence of an FX Disruption Event will not constitute an Event of Default and no interest or other sum shall accrue to the Counterparty in the event that the payment of the Equity Amount, the Cancellation Amount, the early termination amount or any other amount, as the case may be, is postponed.

If the start of an FX Disruption Event coincides with a Hedging Disruption, then the above provisions shall prevail over the Hedging Disruption provisions.

When an FX Disruption Event is continuing, neither party may effect an SPB Transaction Unwind in relation to the relevant SPB Transactions.

| | |
|---|---|
| Payment of Unpaid Local Taxes or Excess Local Taxes in a Closed Market Country: | If the underlying Jurisdiction is a Closed Market Country, the following provision shall apply; |

(a)   If any amount of Local Taxes should have been taken into account but was not taken into account in the determination of any amounts payable by Hedging Party and any Potential Adjustment Events or Extraordinary Events

Confidential Treatment Requested by King & Spalding

(as the case may be, "**Unpaid Local Taxes**"), Counterparty shall pay to Nomura an amount equal to such Unpaid Local Taxes as the Calculation Agent may determine on the first SPB Business Day following notification from the Calculation Agent; or if any excess amount of Local Taxes that should not have been taken into account but was taken into account in the determination of any amounts payable by Nomura and any Potential Adjustment Events or Extraordinary Events (as the case may be, "**Excess Local Taxes**"), Nomura shall pay to Counterparty an amount equal to such Excess Local Taxes on the first SPB Business Day following notification from the Calculation Agent.

(b)     Counterparty hereby indemnifies and agrees to hold harmless Nomura or its Affiliates for any Unpaid Local Taxes and agrees to, promptly upon demand by Nomura, reimburse Nomura or its Affiliates on a full indemnity basis for all Unpaid Local Taxes.

The provisions in paragraphs (a) and (b) above relating to Unpaid Local Taxes and Excess Local Taxes shall apply and remain in full force and effect even if the Termination Date has occurred.

As used herein:

"**Local Taxes**" means taxes, duties and similar charges (in each case, including interest and penalties thereon) imposed by the taxing authority in any jurisdiction (including, without limitation, any retroactive or future taxes which in the reasonable belief of Nomura would be imposed by such taxing authority), that would be withheld from or paid or otherwise incurred by Nomura or its Affiliates in connection with its Hedge Positions, excluding any corporate income taxes levied on the overall net income of Nomura without regard to any refunds, credits or relief that Nomura or its Affiliates may be entitled to, including any claim for benefits under an applicable double tax agreement.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295469
SDNY_P001_0000351377

Dividend Conversion:

With respect to any Dividend Amount, Cash Distribution Amount or Proceeds Value, such amount shall be as converted (where the Settlement Currency is different from the Underlying Currency) from the Underlying Currency into the Settlement Currency at the Relevant Exchange Rate on the relevant Dividend Receipt Date (subject to the occurrence of an FX Disruption Event) (if applicable).

Dividend Receipt Date:

With respect to each Dividend Amount, Cash Distribution Amount or Proceeds Value the date on which the relevant amount would have been received by the Equity Amount Payer had the Equity Amount Payer been a holder of record of the relevant Underlying on the relevant record date or ex date (as applicable as determined by the Calculation Agent)

Dividend/Distribution Percentage:

As separately specified in the applicable SPB Transaction Supplement for Long SPB Transactions and Short SPB Transactions. The Dividend/Distribution Percentage shall be subject to adjustment in accordance with this SPB General Terms Supplement and the provisions of the SPBMC relating to the Terms.

Dividend/Distribution Adjustment Event:

If the Calculation Agent reasonably determines that there has been any Change in Tax Law which would have the effect of reducing or increasing the amount of either the cash receivable in respect of or tax credit attributable to the dividend or distribution that would be paid by the issuer of the applicable Bonds to a holder that:

(i)     has a taxable presence or is otherwise resident for taxation purposes in the UK; or

(ii)    if the SPB Transaction is entered into by Nomura through any of its Affiliates as its agent, has a taxable presence or is otherwise resident for taxation purposes in any jurisdiction in which such Affiliate is resident for taxation purposes or otherwise has a taxable presence; or

(iii)   if Counterparty is the Equity Amount Payer under the SPB Transaction, has a taxable

Confidential Treatment Requested by King & Spalding

presence or is otherwise resident for taxation purposes in any jurisdiction in which any Lender is resident for taxation purposes or otherwise has a taxable presence

(a **"Dividend/Distribution Adjustment Event"**), the Calculation Agent may (after taking into account any adjustment made to the Dividend/Distribution Percentage) adjust the Dividend Amount or Cash Distribution Amount (as applicable) with immediate effect by notice in writing to the Parties, or, in the event that any such change is expressed to take effect prior to the date upon which Calculation Agent gives such notice, the Calculation Agent may make such adjustments to the payment obligations of the Parties in respect of the SPB Transaction, in each case as it deems appropriate in order to account for such reduction or increase.

If the SPB Transaction shall have previously terminated (including by reason of a Change in Law Additional Disruption Event), but the amount of any payment previously made or subsequently to be made thereunder is or would be affected by any Dividend/Distribution Adjustment Event, the Counterparty shall pay to Nomura an amount determined by the Calculation Agent to reflect the amount by which any payment with respect to the Dividend Amount would have been decreased on account of such Dividend/Distribution Adjustment Event, including but not limited to costs of funds, payments to any Lender and penalties due to a government or taxing authority (the **"Dividend/Distribution Adjustment Amount"**), and in addition thereto the amount, if any, by which any liability to tax of Nomura is or will be increased as a result of the Dividend/Distribution Adjustment Amount, so that, taking into account the matter giving rise to the payment of the Dividend/Distribution Adjustment Amount, the payment thereof and the time value of money as it affects Nomura in relation to such matters, Nomura shall be in no better nor worse position by reason of the matter giving rise to the payment of the Dividend/Distribution Adjustment Amount having occurred and such payment having been made than

Confidential Treatment Requested by King & Spalding

Nomura would have been had the matter giving rise to the payment not occurred and no payment thereof had had to be made.

**"Change in Tax Law"** means the enactment, promulgation, execution or ratification of, or any change in or amendment to, any tax law (or the official interpretation of any tax law) that occurs after the Parties enter into the relevant SPB Transaction.

Adjustments:

In determining any amount, including but not limited to the Final Price, Equity Amount, Dividend Amount, Full Redemption Amount, Cash Partial Redemption Amount, Non-Cash Partial Redemption Amount, Distribution Amount, Non-Cash Distribution Amount, Proceeds Value and the effect of any Potential Adjustment Event, the Calculation Agent may make any adjustments it considers necessary to account for any costs, commissions, other fees and any Local Taxes that Nomura may be required to or may otherwise incur, or that the Hedging Party may be required to pay or may otherwise incur in connection with its Hedge Positions.

**Additional Representations, Agreements and Acknowledgments:**

Non-Reliance:                                      Applicable

Agreements and                                     Applicable
Acknowledgments regarding
Hedging Activities:

Additional Acknowledgments:        Applicable

**Account details:**

Account for payments to Nomura:   To be provided in writing prior to settlement

Account for payments to                  To be provided in writing prior to settlement
Counterparty:

**Consent to Regulatory Disclosure:**

Without prejudice to the generality of any applicable law, Counterparty expressly consents to the disclosure by Nomura or its affiliates to the relevant authorities in the

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295472
SDNY_P001_0000351380

jurisdiction of the incorporation or organisation of the Issuer (a "**Relevant Jurisdiction**"), each jurisdiction in which the Underlying and/or Hedge Positions attributable to Nomura and/or its affiliates are located and/or traded (each, a "**Local Jurisdiction**") or any jurisdiction of tax residence of the Issuer (a "**Tax Residence Jurisdiction**"), information relating to the SPB Transaction (including, without limitation, the name of Counterparty and any dates and amounts specified in the SPB Transaction Supplement) as may be required by such relevant authorities from time to time pursuant to applicable laws and regulations of the Relevant Jurisdiction, the Local Jurisdiction and/or the Tax Residence Jurisdiction (as applicable), provided, however, Nomura or its affiliates shall, to the extent permitted by law, use commercially reasonable efforts to provide counterparty advance notice of any such disclosure (provided further that failure to provide such notice will not be deemed a breach of this SPBMC).

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295473
SDNY_P001_0000351381

## SCHEDULE 4

## PRODUCT SUPPLEMENTS

### SPB Bonds Supplement

The following terms shall apply where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Bonds.

This SPB Bonds Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the SPB General Terms Supplement, the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement.  This SPB Bonds Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**General Terms:**

| | |
|---|---|
| Issuer: | The Issuer of the Bonds. |
| Bonds: | Subject to "Additional Provisions – Conversions" below, the Underlying specified in the relevant SPB Transaction Supplement. |
| Underlying Shares: | In respect only of Bonds that are exchangeable or convertible bonds, the shares, if any, into or for which the Bonds are or may be convertible or exchangeable at a specified time, or from time to time, whether at the option of the Issuer or any holders thereof or on a mandatory basis. |
| Transaction Face Amount: | Number of Units multiplied by the principal amount outstanding of a Bond on the Effective Date.  The Transaction Face Amount shall be subject to reduction by the Calculation Agent on account of any Partial Redemption. |
| Relevant Jurisdiction: | With respect to any amount payable under an SPB Transaction, such of the jurisdictions specified in sub-paragraphs (i), (ii) and (iii) of "Dividend/ Distribution Adjustment Event" in this SPB Bonds Supplement as the Calculation Agent may determine to be material for the purposes of such payment. |
| Scheduled Trading Day: | (a) In respect of Bonds that are not exchangeable or convertible bonds, not applicable; and (b) in respect |

SPB Bonds Supplement - 1

Confidential Treatment Requested by King & Spalding

of Bonds that are exchangeable or convertible bonds, as determined in accordance with Section 1.31 of the Equity Definitions.

Bond Business Day:

Each day which is both an SPB Business Day and (if applicable) a Scheduled Trading Day.

Observation Date:

In respect of a payment under Bonds (a) that are bearer bonds, the date of such payment and (b) that are registered bonds, whichever of the record date for such payment under such Bonds (as specified by the Issuer or in the legal instrument governing the Bonds or as otherwise determined by the Calculation Agent) and the date of such payment that the Calculation Agent determines to be the more appropriate in connection with such Bonds.

Exchange:

(a) In respect of Bonds that are not exchangeable or convertible bonds, not applicable; and (b) in respect of Bonds that are exchangeable or convertible bonds, the exchange or quotation system on which the largest volume of Underlying Shares normally trade.

Related Exchange:

Not Applicable

**Equity Amounts payable by Equity Amount Payer:**

Equity Amount:

Each Equity Amount shall be determined as if this SPB Transaction were a Share Transaction; provided that if the Equity Amount is payable on a Cash Settlement Payment Date falling on or after the Full Redemption Date or the Scheduled Maturity Date, the Equity Amount payable on the corresponding Cash Settlement Payment Date shall be equal to:

(i)     any amounts of principal actually paid by the Issuer in cash to holders of the Bonds in the Relevant Jurisdiction on the Full Redemption Date or Scheduled Maturity Date, as applicable, in respect of Bonds with an outstanding principal amount equal to the Transaction Face Amount as of the Observation Date relating to the Full Redemption Date or the Scheduled Maturity Date of the Bonds (prior to giving effect to such principal payment), as applicable, minus

Confidential Treatment Requested by King & Spalding

|  | (ii) | the Initial Price multiplied by the Transaction Face Amount as of the Observation Date relating to the Full Redemption Date or as of the Scheduled Maturity Date of the Bonds (prior to giving effect to such principal payment), as applicable. |

Cash Settlement Payment Dates:   Notwithstanding the definition of Cash Settlement Payment Dates in Schedule 1 of the SPMBC, if the Observation Date with respect to the Scheduled Maturity Date or the Full Redemption Date occurs on or prior to the date that would (but for this proviso) have been the final Cash Settlement Payment Date (the "**Scheduled Final Cash Settlement Payment Date**"), such Cash Settlement Payment Date shall not occur, and instead the final Cash Settlement Payment Date shall occur five SPB Business Days following the Scheduled Maturity Date or the Full Redemption Date (as the case may be).

Initial Price:   (i) Prior to and on the first Valuation Date, the Initial Price shall be a price per Unit of the relevant Underlying determined by the Calculation Agent as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the Effective Date or relevant Valuation Date, as applicable, using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable); and

(ii) at any time after the first Valuation Date, the Final Price as at the most recent Valuation Date.

The Initial Price shall be inclusive of accrued interest through the Effective Date, unless the Calculation Agent determines that on the Effective Date the Bonds trade exclusive of accrued interest, in which case such Initial Price will be exclusive of accrued interest.

Final Price:   The Final Price for any Valuation Date shall be a value per Unit of the relevant Underlying determined by the Calculation Agent as converted (where the Underlying Currency is different from the Settlement

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295476
SDNY_P001_0000351384

Currency) from the Underlying Currency into the Settlement Currency on the relevant Valuation Date using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable).

The Final Price shall be inclusive of accrued interest through the relevant Valuation Date, unless the Calculation Agent determines that on the Effective Date the Bonds trade exclusive of accrued interest, in which case such Final Price will be exclusive of accrued interest.

Where the Underlying Jurisdiction is Japan, for the purposes of determining the Final Price, the Calculation Agent may take into account any closing special quote per Underlying quoted by the Exchange (*tokubetsu kehaine*).

Valuation Time:                   The time selected by the Calculation Agent.

Valuation Dates:                  As specified in the relevant SPB Transaction Supplement; provided that any reference to "Scheduled Trading Day" in the definition of Valuation Dates as specified in the relevant SPB Transaction Supplement shall be construed as a reference to "Bond Business Day".

Disrupted Day:                    Section 6.4 of the Equity Definitions shall not apply. **"Disrupted Day"** means any Scheduled Trading Day on which (a) any event that disrupts or impairs (as determined by the Calculation Agent) the ability of market participants in general to effect transactions in or obtain market values for the Bonds or (in the case of a Bond which is a convertible or exchangeable bond) any Underlying Shares has occurred or (b) in the case of a Bond which is a convertible or exchangeable bond, the Exchange fails to open for trading during its regular trading session. The Calculation Agent shall as soon as reasonably practicable under the circumstances notify the Parties or other Party, as the case may be, of the occurrence of a Disrupted Day on any day that, but for the occurrence of a Disrupted Day, would have been a Valuation Date. Without limiting the obligation of the Calculation Agent to notify the Parties as set forth

Confidential Treatment Requested by King & Spalding                    Archegos-SDNY-00295477
                                                                          SDNY_P001_0000351385

in the preceding sentence, failure by the Calculation Agent to notify the Parties of the occurrence of a Disrupted Day shall not affect the validity of the occurrence and effect of such Disrupted Day on any SPB Transaction to which this SPB Bonds Supplement applies.

Consequences of a Disrupted Day:

Section 6.6 of the Equity Definitions shall not apply. If any Valuation Date (other than a Valuation Date occurring pursuant to sub-paragraph (a) of the definition thereof in this SPB Bonds Supplement) is a Disrupted Day, then such Valuation Date shall be the first succeeding Bond Business Day that is not a Disrupted Day; provided that if such Valuation Date has not occurred as of the Valuation Time on the eighth Bond Business Day immediately following the date which, but for the occurrence of the event causing the Disrupted Day, would have been such Valuation Date, then (1) that eighth Bond Business Day shall be deemed to be such Valuation Date, and (2) the Calculation Agent shall determine its good faith estimate of the value of the Bonds (inclusive of accrued interest through such eighth Bond Business Day, unless the Calculation Agent determines that on such day the Bonds then trade exclusive of accrued interest), on that eighth Bond Business Day (and such value shall be the Final Price for such Value Date).

Full Redemption Date:

The date, if any, on which the Issuer pays all holders of the Bonds in the Relevant Jurisdiction in respect of the entire then outstanding principal amount of the Bonds held by such holders in cash (a **"Full Redemption"**) in respect of an Observation Date that occurs during the period extending from and including the Effective Date to but excluding the Scheduled Final Cash Settlement Payment Date.

Scheduled Maturity Date:

The date on which the Bonds are scheduled to be redeemed in full (without taking into account any provisions in their terms and conditions relating to the early redemption or acceleration of the Bonds).

Full Redemption Amount:

The amount of principal actually paid by the Issuer in cash on the Full Redemption Date to holders of the Bonds in the Relevant Jurisdiction in respect of Bonds with an outstanding principal amount equal to

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295478
SDNY_P001_0000351386

the Transaction Face Amount as of the Observation Date relating to the Full Redemption Date.

Synthetic Payment for Full Redemptions:

The Synthetic Payment Notional Amount for the purposes of determining a Synthetic Payment pursuant to the occurrence of a Full Redemption shall be equal to the sum of the Full Redemption Amount and any Proceeds Value determined by the Calculation Agent in connection with such Full Redemption (or that would have been so determined if "Non-Cash Distributions, Redemptions and Conversions Occurring Following the Final Valuation Date" had applied thereto).

**Additional Equity Amounts:**

Additional Equity Amounts Payer:

As specified in the Consequences of Cash Partial Redemptions provision below.

Additional Equity Amounts Period:

The period which commences on, and includes, the Effective Date and ends on, but excludes, the final Cash Settlement Payment Date.

Additional Equity Amount:

In respect of any Partial Redemption that consists of cash (in whole or in part), the Additional Equity Amount shall be an amount equal to:

(i)   the Cash Partial Redemption Amount; minus
(ii)  the Initial Price as of the Valuation Date immediately preceding the Observation Date for such Cash Partial Redemption multiplied by the portion of the Transaction Face Amount to which such Cash Partial Redemption Amount relates (as determined by the Calculation Agent).

Additional Equity Amounts Payment Dates:

The Additional Equity Amounts Payer shall pay to the other Party any Additional Equity Amount five SPB Business Days following the related Partial Redemption Date, notwithstanding the occurrence of the final Cash Settlement Payment Date (unless the Partial Redemption Date occurs more than six months following the final Cash Settlement Payment Date, in which case the Additional Equity Amount will not be paid).

Partial Redemption:

Any repayments of principal on the Bonds or

Confidential Treatment Requested by King & Spalding

redemption of the Bonds that corresponds to Bonds with an outstanding principal amount equal to the Transaction Face Amount as of the Observation Date for the Partial Redemption, where (i) the Observation Date occurs during the Additional Equity Amounts Period, (ii) such repayment or redemption is expected to be made by the Issuer to holders of the Bonds in the Relevant Jurisdiction, and (iii) such repayment or redemption (a) is all in cash, but is in respect of less than the entire principal amount of the Bonds then outstanding; (b) is comprised partially of cash and partially of securities or assets other than cash, and is in respect of all or any portion of, the principal amount of the Bonds then outstanding; or (c) is comprised solely of securities or assets other than cash, and is in respect of all or any portion of, the principal amount of the Bonds then outstanding.

| | |
|---|---|
| Cash Partial Redemption Amount: | The portion, if any, of a Partial Redemption that consists of cash. |
| Non-Cash Partial Redemption Amount: | The portion, if any, of a Partial Redemption that consists of securities or assets other than cash for which the Observation Date occurs during the Additional Equity Amounts Period, in respect of Bonds with an outstanding principal amount equal to the Transaction Face Amount as of the Observation Date. |
| Partial Redemption Date: | The date on which the Issuer makes a Partial Redemption. |
| Consequences of Cash Partial Redemptions: | If the Additional Equity Amount is positive, the Equity Amount Payer shall pay the related Additional Equity Amount to the Floating Amount Payer on the relevant Additional Equity Amounts Payment Date. |
| | If the Additional Equity Amount is negative, the Floating Amount Payer shall pay the absolute value of the related Additional Equity Amount to the Equity Amount Payer on the relevant Additional Equity Amounts Payment Date. |
| Consequences of Non-Cash Partial Redemption: | The Calculation Agent shall adjust the terms of the Transaction, reasonably, to account for any Non-Cash Partial Redemption(s), but without giving rise |

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295480
SDNY_P001_0000351388

to an obligation for either Party on account of such Non-Cash Partial Redemption which is a delivery rather than a payment obligation, and subject to the "Non-Cash Distributions and Redemptions Occurring Following the Final Valuation Date" provision of this SPB Bonds Supplement.

Synthetic Payment for Partial Redemptions:

Counterparty, shall pay to Nomura a Synthetic Payment in respect of each Additional Equity Amount Payment Date.  The Synthetic Payment Notional Amount for the purposes of determining such Synthetic Payment shall be equal to the sum of the Cash Partial Redemption Amount and the cash value of the Non-Cash Partial Redemption Amount, as determined by the Calculation Agent, (or as would have been so determined if "Non-Cash Distributions, Redemptions and Conversions Occurring Following the Final Valuation Date" had applied thereto).

**Distribution Amounts:**

Distribution Amounts Payer:

Equity Amount Payer

Distribution Amounts Period:

The period that commences on, and includes the Effective Date and ends on, but excludes, the final Cash Settlement Payment Date.

Distribution Amount:

Any and all payments or distributions, including, without limitation, interest and coupon payments and consent fees, but excluding Partial Redemption Amounts or Full Redemption Amounts, that are actually made by the Issuer to holders of the Bonds in the Relevant Jurisdiction in respect of an outstanding principal amount of the Bonds equal to the Transaction Face Amount as of the relevant Observation Date and for which the Observation Date occurs during the Distribution Amounts Period.

Actual Cash Distribution Amount:

The portion of a Distribution Amount, if any, that consists of cash.

Non-Cash Distribution Amount:

That portion of a Distribution Amount, if any, that consists of property other than cash including, without limitation, securities or other non-cash assets.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295481
SDNY_P001_0000351389

| | |
|---|---|
| Consequences of Actual Cash Distribution Amounts: | The Distribution Amounts Payer shall pay the Floating Amount Payer an amount (the "**Cash Distribution Amount**") equal to the product of the applicable Dividend/Distribution Percentage and the Actual Cash Distribution Amount five SPB Business Days following the relevant Distribution Receipt Date, notwithstanding the occurrence of the final Cash Settlement Payment Date (unless the Distribution Receipt Date occurs more than six (6) months following the final Cash Settlement Payment Date, in which case the Cash Distribution Amount will not be paid). |
| Consequences of Non-Cash Distribution Amounts: | The Calculation Agent shall adjust the terms of the Transaction, effective as of the relevant Distribution Receipt Date, to account for any Non-Cash Distribution Amount(s), subject to the "Non-Cash Distributions and Redemptions Occurring Following the Final Valuation Date" provision of this SPB Bonds Supplement. |
| Distribution Receipt Dates: | In respect of a Distribution Amount, the date on which the payment or distribution by the Issuer in respect of that Distribution Amount would have been received by holders of the Bonds in the Relevant Jurisdiction. |

**Additional Disruption Events:**

Insolvency Filing:              Applicable

**Additional Provisions:**

(a)  **Conversions.**  This provision shall apply only in respect of Bonds that are convertible or exchangeable bonds.  If the Issuer converts the Bonds of holders in the Relevant Jurisdiction, whether pursuant to a mandatory conversion or optional conversion rights of the issuer or a holder, in whole or in part, into any securities or assets other than cash (including, without limitation, any Underlying Shares) (a "**Conversion**"), as of any Observation Date that occurs during the period from and including the Effective Date to but excluding the final Cash Settlement Payment Date, then, subject to the "Non-Cash Distributions and Redemptions Occurring Following the Final Valuation Date" provision of this SPB Bonds Supplement:

   (i)    if such conversion is in respect of less than all of the SPB Bonds

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295482
SDNY_P001_0000351390

then outstanding, then this SPB Transaction shall become an SPB Transaction with respect to the Bonds and such other securities or such other assets, or any combination of the foregoing, as applicable, and the Calculation Agent shall adjust the terms of such SPB Transaction, as it reasonably deems appropriate, to account for such conversion; and

(ii)     if such conversion is in respect of all of the Bonds then outstanding, then this SPB Transaction shall become an SPB Transaction with respect to such other securities or such other assets, or any combination of the foregoing, as applicable, and the Calculation Agent shall adjust the terms of such SPB Transaction, as it reasonably deems appropriate, to account for such conversion.

(b)     **Non-Cash Distributions, Redemptions and Conversions Occurring Following the Final Valuation Date.**   Notwithstanding anything to the contrary in this SPB Bonds Supplement, if the Observation Date for any Non-Cash Distribution Amount, Non-Cash Partial Redemption or Conversion occurs during the period from and including the final Valuation Date to but excluding the final Cash Settlement Payment Date for an SPB Transaction, then in lieu of making adjustments described under the headings "Consequences of Non-Cash Distribution Amounts", "Consequences of Non-Cash Partial Redemptions" and "Conversions", (i) the Calculation Agent shall determine a cash value of the proceeds (the "**Proceeds Value**") that would be received by a holder in the Relevant Jurisdiction of Bonds with an outstanding principal amount equal to the Transaction Face Amount, as of the date that such proceeds are received by holders of the Bonds in the Relevant Jurisdiction (the "**Proceeds Receipt Date**"), and (ii) the Equity Amount Payer shall pay the Proceeds Value to the Floating Amount Payer on the fifth SPB Business Day following the Proceeds Receipt Date, unless the Proceeds Receipt Date occurs more than six months following the final Cash Settlement Payment Date, in which case the Proceeds Value will not be paid.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295483
SDNY_P001_0000351391

**SPB Shares/Custom Baskets Supplement**

The following terms shall apply where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares or SPB Custom Baskets.

This SPB Shares/Custom Baskets Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the SPB General Terms Supplement, the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement.  This SPB Shares/Custom Baskets Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**General Terms:**

| | |
|---|---|
| Futures Price Valuation: | Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, as specified in the relevant SPB Transaction Supplement, provided that section 6.8 of the Equity Definitions shall be amended by deleting references to "Index" and "Index Transaction" and replacing them with references to "Share" and "Share Transaction" respectively, and that the words "level of the relevant Index" in section 6.8(e) of the Equity Definitions shall be deleted and replaced with the words "price of the relevant Shares as determined by the Calculation Agent". |
| Shares: | Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares: (a) If Futures Price Valuation applies, the share that underlies the Exchange-traded Contract; (b) if Futures Price Valuation does not apply, the Underlying. |
| Exchange-traded Contract: | Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares: (a) if Futures Price Valuation applies, the Underlying; (b) if Futures Price Valuation does not apply, Not Applicable. |
| Exchange: | (a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, the exchange or quotation system identified by the Exchange Reuters ID Number in the SPB Transaction Supplement; or

(b)    where the SPB Transaction Supplement |

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295484
SDNY_P001_0000351392

specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, each exchange or quotation system on which the largest volume of Shares of each Issuer included in the SPB Custom Basket normally trade.

Related Exchange:

(a)     Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, All Exchanges;

(b)     where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, each exchange or quotation system where trading has a material effect (as determined by the Calculation Agent) on the overall market for futures or options contracts relating to the Shares of each Issuer included in the SPB Custom Basket; or

(c)     in either case, where the Underlying Jurisdiction is a Closed Market Country, All Exchanges, provided that, if the Underlying is the S&P CNX Nifty Index, Related Exchange shall be the National Stock Exchange of India Limited.

**Equity Amounts payable by Equity Amount Payer:**

Initial Price:

(a)     Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares:

(i) Prior to and on the first Valuation Date, the Initial Price shall be a price per Unit of the relevant Underlying determined by the Calculation Agent as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the Effective Date or relevant Valuation Date, as applicable, using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable); and

(ii) at any time after the first Valuation Date, the Final Price as at the most recent Valuation Date; or

(b)     where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, the sum of the products, aggregated for all Issuers of Shares in the SPB Custom Basket, of (i) the price per Share of

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295485
SDNY_P001_0000351393

such Issuer on the Trade Date as determined by the Calculation Agent, and (if not denominated in the Settlement Currency) converted into the Settlement Currency at the Relevant Exchange Rate on the Effective Date (subject to the Consequences of FX Disruption) multiplied by (ii) the Number of Shares of such Issuer in the SPB Custom Basket.

Final Price:

(a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, the Final Price for any Valuation Date shall be a value per Unit of the relevant Underlying determined by the Calculation Agent as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the relevant Valuation Date using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable); or

(b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, the sum of the products, aggregated for all Issuers of Shares in the SPB Custom Basket, (i) the price per Share of such Issuer at the Valuation Time on the relevant Valuation Date as determined by the Calculation Agent and (if not denominated in the Settlement Currency) converted into the Settlement Currency at the Relevant Exchange Rate on the Effective Date (subject to the Consequences of FX Disruption); multiplied by (ii) the Number of Shares of such Issuer in the SPB Custom Basket.

Where the Underlying Jurisdiction is Japan, for the purposes of determining the Final Price, the Calculation Agent may take into account any closing special quote per Underlying quoted by the Exchange (*tokubetsu kehaine*).

Valuation Time:

The time selected by the Calculation Agent.

Valuation Date:

As specified in the relevant SPB Transaction Supplement; provided that, if Futures Price Valuation applies, the Valuation Date shall be the "Maturity Date" specified in the relevant SPB Transaction Supplement.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295486
SDNY_P001_0000351394

**Dividends/Distributions:**

Dividend Period:

          Whichever of First Period and Second Period the Calculation Agent reasonably determines to be more appropriate with respect to the Share and notifies to Counterparty in advance, taking into account such customary procedures with respect to the Share for determining ownership of the Share in connection with the payment of a dividend on it as are in the opinion of the Calculation Agent relevant to such determination.

Dividend Amount:

          With respect to any Shares or Custom Basket Shares, where the relevant Exchange is:-

(a) an Ex Amount Market, the Ex Amount multiplied by the Number of Shares as of the date that the Shares have commenced trading ex-dividend on the Exchange; provided that (i) the reference to "100%" in the first line of Article 10.1(b) (Ex Amount) of the Equity Definitions shall be deleted and replaced with "Dividend Percentage" and (ii) the word "declared" in such definition shall be deleted and replaced with "paid"; or

(b) a Record Amount Market, the Record Amount multiplied by the Number of Shares as of the applicable record date; provided that (i) the reference to "100%" in the first line of Article 10.1(a) (Record Amount) of the Equity Definitions shall be deleted and replaced with "Dividend Percentage" and (ii) the words "declared by the Issuer" in such definition shall be deleted and replaced with "paid by the Issuer in respect of the gross cash dividend declared by the Issuer".

Where the Underlying Jurisdiction is Japan, the Dividend Amount shall include any special dividends (*tokubetsu haitou*) or memorial dividends (*kinen haitou*) in the form of cash (collectively, the "**Special Dividends**") that are paid with respect to the Underlying. For the avoidance of doubt, the treatment of any non-cash dividend shall be determined in accordance with the Potential Adjustment Event provisions set out in Section 11.2 (*Adjustments to Share Transactions and Share Basket Transactions*) of the Equity Definitions.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295487
SDNY_P001_0000351395

Provided, in each case, that in relation to any SPB Share Transaction that is a Short SPB Transaction, any Dividend Amount otherwise payable by Nomura to Counterparty shall be reduced to the extent that any related SPB Transaction Unwind would, if Nomura (acting in its sole discretion in its capacity as Hedging Party) both (x) had elected to enter into any hypothetical hedge or trading position with a Lender in respect of all of the Shares constituting the related Underlying for such SPB Share Transaction prior to such SPB Transaction Unwind request (any such position, a "**Hypothetical Stock Loan Hedge Position**") and (y) were to elect to purchase Shares constituting the related Underlying for redelivery to such Lender or otherwise in an amount sufficient to cover such SPB Transaction Unwind (any such purchase, an "**Unwind Hedge Acquisition**"), result in an obligation of Nomura, for all or any portion of the period from and including the date on which such SPB Transaction Unwind is requested to and including the date on which the termination in whole or in part of such Hypothetical Stock Loan Hedge Position as a result of (and in a manner commensurate with) such SPB Transaction Unwind would in the ordinary course of business be settled, to make a payment under any such Hypothetical Stock Loan Hedge Position in respect of dividends or other distributions to the relevant Lender in an amount greater than the payment that Nomura would be entitled to receive in respect of dividends or other distributions under any related Unwind Hedge Acquisition.

| | |
|---|---|
| Extraordinary Dividend: | As determined by the Calculation Agent |
| Re-investment of Dividends: | Not Applicable |

**Adjustments:**

| | |
|---|---|
| Method of Adjustment: | Modified Calculation Agent Adjustment for Closed Market Countries; otherwise Calculation Agent Adjustment. |

**Extraordinary Events:**

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295488
SDNY_P001_0000351396

Consequence of Merger Events:

|  |  |
|---|---|
| Share-for-Share: | Modified Calculation Agent Adjustment for Closed Market Countries, otherwise Calculation Agent Adjustment |
| Share-for-Other: | Modified Calculation Agent Adjustment for Closed Market Countries, otherwise Calculation Agent Adjustment |
| Share-for-Combined: | Modified Calculation Agent Adjustment for Closed Market Countries, otherwise Calculation Agent Adjustment |
| Determining Party: | Nomura, provided that, any dispute resolution provisions applicable to determinations by the Calculation Agent shall equally apply to determinations by the Determining Party. |

Tender Offer:                         Applicable

Consequences of Tender Offers:

|  |  |
|---|---|
| Share-for-Share: | Modified Calculation Agent Adjustment for Closed Market Countries, otherwise Calculation Agent Adjustment |
| Share-for-Other: | Modified Calculation Agent Adjustment for Closed Market Countries, otherwise Calculation Agent Adjustment |
| Share-for-Combined: | Modified Calculation Agent Adjustment for Closed Market Countries, otherwise Calculation Agent Adjustment |
| Determining Party: | Nomura, provided that, any dispute resolution provisions applicable to determinations by the Calculation Agent shall equally apply to determinations by the Determining Party. |

Composition of Combined Consideration:          Not Applicable

Nationalisation, Insolvency or Delisting:

(a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Shares, Cancellation and Payment; or

(b)    where the SPB Transaction Supplement

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295489
SDNY_P001_0000351397

specifies that the SPB Product Type for an SPB Transaction is SPB Custom Baskets, Partial Cancellation and Payment.

Determining Party:

Nomura, provided that, any dispute resolution provisions applicable to determinations by the Calculation Agent shall equally apply to determinations by the Determining Party.

With respect to any Merger Event, Tender Offer or Potential Adjustment Event, Nomura shall notify and consult with Counterparty prior to the relevant cut-off date for an election under such Merger Event, Tender Offer or Potential Adjustment Event pursuant to a timetable agreed between Nomura and Counterparty from time to time.

**Additional Disruption Events:**

Insolvency Filing:                    Applicable

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295490
SDNY_P001_0000351398

## SPB Index/Futures Supplement

The following terms shall apply where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index or SPB Futures.

This SPB Index/Futures Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the SPB General Terms Supplement, the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) and the Jurisdiction Supplement (if applicable) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement.  This SPB Index/Futures Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**General Terms:**

Futures Price Valuation:

(a)     Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, applicable; or

(b)     where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, as specified in the relevant SPB Transaction Supplement.

Index:

(a)     Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, the Index will be the index that underlies the Exchange-traded Contract. The Calculation Agent shall determine whether the Index is a Multiple Exchange Index; or

(b)     where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, (i) if Futures Price Valuation applies, the index that underlies the Exchange-traded Contract; or (ii) if Futures Price Valuation does not apply, the Underlying.

Exchange-traded Contract:

(a)     Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, the Underlying; or

(b)     where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, (i) if Futures Price Valuation applies, the Underlying; or (ii) if Futures Price Valuation does not apply, Not Applicable.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295491
SDNY_P001_0000351399

Exchange:
(a) If the Index is not a Multiple Exchange Index, the exchange or quotation system identified by the Exchange Reuters ID Number and (b) if the Index is a Multiple Exchange Index, with respect to each Component Security, the stock exchange where that Component Security is principally traded.

Related Exchange:
(a) Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures and the Underlying Jurisdiction in an Open Market Country, if the Exchange Traded Contract is an option contract or futures contract on the Index, the stock or futures exchange where such options contract or futures contract is principally traded;

(b) where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index and the Underlying Jurisdiction in an Open Market Country, (i) if Futures Price Valuation applies and the Exchange-traded Contract is an option contract or futures contract on the Index, the stock or futures exchange where such options contract or futures contract is principally traded; or (ii) if Futures Price Valuation does not apply, Not Applicable; or

(c) where the Underlying Jurisdiction is a Closed Market Country, All Exchanges, provided that, if the Underlying is the S&P CNX Nifty Index, Related Exchange shall be the National Stock Exchange of India Limited.

**Equity Amounts payable by Equity Amount Payer:**

Initial Price:
(i) Prior to and on the first Valuation Date, the Initial Price shall be a price per Unit of the relevant Underlying determined by the Calculation Agent as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the Effective Date or relevant Valuation Date, as applicable, using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295492
SDNY_P001_0000351400

applicable); and

(ii) at any time after the first Valuation Date, the Final Price as at the most recent Valuation Date.

Final Price:

The Final Price for any Valuation Date shall be a value per Unit of the relevant Underlying determined by the Calculation Agent as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the relevant Valuation Date using the Relevant Exchange Rate subject to the occurrence of an FX Disruption Event (if applicable)

Where the Underlying Jurisdiction is Japan, for the purposes of determining the Final Price, the Calculation Agent may take into account any closing special quote per Underlying quoted by the Exchange (*tokubetsu kehaine*).

Valuation Time:

(a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, at the Scheduled Closing Time; or

(b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, the time selected by the Calculation Agent.

Valuation Date:

(a)    Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, the Valuation Date shall be the "Maturity Date" specified in the relevant SPB Transaction Supplement; or

(b)    where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, as specified in the relevant SPB Transaction Supplement; provided, however, that if the level of the Index is not published on a day which would but for this provision be a Valuation Date, the applicable Valuation Date shall not occur on such day and shall instead occur on the next date on which the level of the Index is published.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295493
SDNY_P001_0000351401

**Index Adjustment Events:**

| | |
|---|---|
| Index Cancellation: | Calculation Agent Adjustment |

Index Modification:                    Calculation Agent Adjustment

Index Disruption:                      Calculation Agent Adjustment, provided that, if the Index is a Multiple Exchange Index, a failure on the Valuation Date by the Index Sponsor to calculate and announce the Index will not be treated as an Index Disruption but will instead constitute a failure by the Index Sponsor to publish the level of the Index for the purposes of the definition of "Disrupted Day" set out in this SPB Index/Futures Supplement.

Index Disclaimer:                      (a)   Where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Futures, Not Applicable; or

(b)   where the SPB Transaction Supplement specifies that the SPB Product Type for an SPB Transaction is SPB Index, Applicable.

Determining Party:                     Nomura, provided that, any dispute resolution provisions applicable to determinations by the Calculation Agent shall equally apply to determinations by the Determining Party.

**Additional Provisions:**

If the Index is a Multiple Exchange Index, then the following terms shall apply to that SPB Transaction (and the Equity Definitions shall be construed accordingly).

Component Security:                    Each component security of the Index.

Amendment to Section 6.8(e) of         The words "the level of the relevant Index at the
the Equity Definitions:                close of the regular trading session on the relevant Exchange" on lines 4 and 5 of Section 6.8(e) of the Equity Definitions shall be deleted and replaced with the words "the official closing level of the Index as calculated and published by the Index Sponsor".

Confidential Treatment Requested by King & Spalding                    Archegos-SDNY-00295494
SDNY_P001_0000351402

| | |
|---|---|
| Scheduled Trading Day: | Any day on which: (i) the Index Sponsor is scheduled to publish the level of the Index; and (ii) the Related Exchange is scheduled to be open for trading for its regular trading session. |
| Valuation Time: | (i) For the purposes of determining whether a Market Disruption Event has occurred: (a) in respect of any Component Security, the Scheduled Closing Time on the Exchange in respect of such Component Security, and (b) in respect of any options contracts or future contracts on the Index, the close of trading on the Related Exchange; and (ii) in all other circumstances, the time at which the official closing level of the Index is calculated and published by the Index Sponsor. |
| Market Disruption Event: | Either: |

(i) (a) the occurrence or existence, in respect of any Component Security, of:

(1) a Trading Disruption, which the Calculation Agent determines is material, at any time during the one hour period that ends at the relevant Valuation Time in respect of the Exchange on which such Component Security is principally traded;

(2) an Exchange Disruption, which the Calculation Agent determines is material, at any time during the one hour period that ends at the relevant Valuation Time in respect of the Exchange on which such Component Security is principally traded; OR

(3) an Early Closure; AND

(b) the aggregate of all Component Securities in respect of which a Trading Disruption, an Exchange Disruption or an Early Closure occurs or exists comprises 20 per cent. or more of the level of the Index; OR

(ii) the occurrence or existence, in respect of futures or options contracts relating to the Index, of: (a) a Trading Disruption; (b) an

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295495
SDNY_P001_0000351403

Exchange Disruption, which in either case the Calculation Agent determines is material, at any time during the one hour period that ends at the Valuation Time in respect of the Related Exchange; or (c) an Early Closure.

For the purposes of determining whether a Market Disruption Event exists in respect of the Index at any time, if a Market Disruption Event occurs in respect of a Component Security at that time, then the relevant percentage contribution of that Component Security to the level of the Index shall be based on a comparison of (x) the portion of the level of the Index attributable to that Component Security to (y) the overall level of the Index, in each case using the official opening weightings as published by the Index Sponsor as part of the market "opening data".

Trading Disruption: Any suspension of or limitation imposed on trading by the relevant Exchange or Related Exchange or otherwise and whether by reason of movements in price exceeding limits permitted by the relevant Exchange or Related Exchange or otherwise: (i) relating to any Component Security on the Exchange in respect of such Component Security; or (ii) in options or futures contracts relating to the Index on the Related Exchange.

Exchange Disruption: Any event (other than an Early Closure) that disrupts or materially impairs (as determined by the Calculation Agent) the ability of market participants in general to effect transactions in, or obtain market values for: (i) any Component Security on the Exchange in respect of such Component Security; or (ii) options or futures contracts relating to the Index on the Related Exchange.

Early Closure: The closure on any Exchange Business Day of the Exchange in respect of any Component Security or the Related Exchange prior to its Scheduled Closing Time unless such earlier closing is announced by such Exchange or Related Exchange (as the case may be) at least one hour prior to the earlier of: (i) the actual closing time for the regular trading session on such Exchange or Related Exchange (as the case may be) on such Exchange Business Day; and (ii) the

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295496
SDNY_P001_0000351404

submission deadline for orders to be entered into the Exchange or Related Exchange system for execution at the relevant Valuation Time on such Exchange Business Day.

Disrupted Day:   Any Scheduled Trading Day on which: (i) the Index Sponsor fails to publish the level of the Index; (ii) the Related Exchange fails to open for trading during its regular trading session; or (iii) a Market Disruption Event has occurred.

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295497
SDNY_P001_0000351405

# SCHEDULE 5

## Jurisdiction Supplement

This SPB General Terms Supplement supplements, forms part of and is subject to the SPBMC and, together with the SPBMC, the applicable SPB Product Supplement and the relevant SPB Transaction Supplement (as each such term is defined in the SPBMC) constitutes a "Confirmation" with respect to the relevant SPB Transaction as referred to in the Agreement.  This Jurisdiction Supplement shall be construed in accordance with Clause 1 of the SPBMC.

**1.     India**

The following provisions will apply to SPB Transactions: (i) for which the Underlying Jurisdiction is India; and/or (ii) which are or otherwise involve an offshore derivative instrument ("**ODI**") (as such term is defined for the purposes of Regulation 15A of the Securities and Exchange Board of India (Foreign Institutional Investors) Regulations, 1995) (as may be amended or supplemented from time to time, the "**FII Regulations**"):

(i)      The Parties agree that the provisions of the "Additional Provisions for Use with Indian Underliers" published by ISDA on 28 November 2008 and available on the ISDA website (www.isda.org) (as amended, supplement or replaced from time to time) (the "**Additional Provisions**") are incorporated into the SPB Transaction Supplement.

(ii)     If a representation in the Additional Provisions proves to have been incorrect or misleading in any material respect when made or repeated or deemed to have been made or repeated; or if a party fails to comply with or perform any agreement or obligation undertaken by it in the Additional Provisions, it shall be an Additional Termination Event with all SPB Transactions which are or otherwise involve an ODI being the sole Affected Transactions, and with the Party in breach being the sole Affected Party.

**2.     Malaysia**

The following provisions will apply to SPB Transactions for which the Underlying Jurisdiction is Malaysia:

(i)      the Counterparty acknowledges that no approval of the Securities Commission of Malaysia is or will be obtained, nor will any prospectus be filed or registered with the Securities Commission of Malaysia for the offering of the SPB Transaction in Malaysia;

(ii)     the Parties agree that this SPBMC does not constitute and is not intended to constitute Nomura's making (a) available, (b) an offer for subscription or purchase, or (c) an invitation to subscribe for or purchase any security in Malaysia

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295498
SDNY_P001_0000351406

unless such offer or invitation falls within (x) Schedule 5 of the *Capital Markets and Services Act 2007* ("**CMSA**"), (y) Schedule 6 or 7 to the CMSA as an "excluded offer or excluded invitation" or "excluded issue" within the meaning of Sections 229 and 230 of the CMSA, and (z) where the SPB Transaction is a debenture, Schedule 8 to the CMSA applies; and

(iii)    the Parties agree that this SPBMC and any other offering material or document relating to the SPB Transaction may not be published or distributed, directly or indirectly, to any person in Malaysia except to persons where (a) Schedule 5 and (b) Schedule 6 or 7 to the CMSA, and (c) where the SPB Transaction is a debenture, Schedule 8 to the CMSA, applies to such offer, invitation or issue.

## 3.    Taiwan

The following provisions will apply to SPB Transactions: (i) for which the Underlying Jurisdiction is Taiwan; and/or (ii) which are linked to: (a) securities traded on the Taiwan Stock Exchange or GreTai Securities Market ("**Taiwan Listed Securities**"), (b) listed futures or option contracts which make reference to Taiwan Listed Securities or indices the components of which consist of Taiwan Listed Securities ("**Taiwan Listed Derivatives**") or (c) indices the components of which consist of Taiwan Listed Securities and/or Taiwan Listed Derivatives, which would involve Nomura or its affiliates investing in Taiwan Listed Securities or Taiwan Listed Derivatives under its "foreign financial institutional investor" ("**FINI**") status under the "Regulations Governing Investments in Securities by Overseas Chinese and Foreign Nationals" ("**Foreign Investment Regulations**") for hedging or other purposes:

(i)    The Parties agree that the provisions of Part 1 of Annex I to the "Representations for Taiwan Market Access Products" published by ISDA on 11 November 2013 and available on the ISDA website (www.isda.org) (as amended, supplemented or replaced from time to time) (the "**Taiwan Representations**") are incorporated into the SPB Transaction Supplement, provided that:

(A)    references in the Taiwan Representations to:

(1)    "Party B" shall be deemed to be references to "the Counterparty";

(2)    "Party A" shall be deemed to be references to "Nomura";

(3)    "Transaction" shall be deemed to references to "SPB Transaction"; and

(B)    the representations and warranties set forth in Part 1 of Annex I to the Taiwan Representations shall be deemed to be given on the date on which the relevant SPB Transaction is entered into and at all times thereafter until the termination of the relevant SPB Transaction.

Confidential Treatment Requested by King & Spalding    Archegos-SDNY-00295499
SDNY_P001_0000351407

(ii)   The Counterparty represents and warrants that it will not enter into the SPB Transaction or SPB Transaction unwind, as applicable, whilst in possession of any material non-public information on any Taiwan Listed Securities which are the underlying of such SPB Transaction.

## 4.   Thailand

The following provisions will apply to SPB Transactions for which the Underlying Jurisdiction is Thailand:

(i)   the Counterparty acknowledges that neither Nomura nor any of its affiliates that enters into the SPB Transaction maintain any licences, authorizations, or registrations for the undertaking of derivatives business as defined in the *Derivatives Act B.E. 2546 (2003)* in Thailand, nor is this SPBMC approved or registered in Thailand. The Counterparty further acknowledges that the SPB Transaction is only intended to be offered, or entered into, by Nomura entities incorporated, licensed or registered in the countries other than Thailand to, or with, clients located outside Thailand, is not being offered or entered into and may not be offered or entered into by Nomura entities incorporated, licensed or registered in the countries other than Thailand and is not being offered or entered into and may not be offered or entered into in Thailand, or to, or with, any person residing in Thailand; and

(ii)   the Counterparty represents and warrants that it has not entered into the SPB Transaction in Thailand and that it is not a person residing in Thailand. The Counterparty further represents and warrants that the information in this SPBMC is only intended to be read by it and must not be passed, issued, or shown to the public generally nor copied or redistributed to any other person without the prior consent of Nomura and in no way constitutes an offer or operation of businesses by Nomura in Thailand.

## 5.   People's Republic of China

The following provisions will apply to SPB Transactions for which the Underlying Jurisdiction is the People's Republic of China:

(i)   The Parties agree that the provisions of the "Representations in relation to China Market Access Products" published by ISDA on 10 February 2011 and available on the ISDA website (www.isda.org) (as amended, supplemented or replaced from to time to time) (the "**PRC Representations**") are incorporated into the SPB Transaction Supplement, provided that references in the PRC Representations to:

(A)   "Party B" shall be deemed to be references to "the Counterparty";

(B)   "Party A" shall be deemed to be references to "Nomura"; and

Confidential Treatment Requested by King & Spalding

(C)     "Transaction" shall be deemed to be references to "SPB Transaction".

(ii)    The Counterparty agrees that, so long as it has any obligation under the Agreement:-

(a)     It will comply with all applicable laws and regulations of the PRC in connection with any SPB Transaction hereunder, including those in relation to disclosure of interests and any related disposal restrictions;

(b)     It acknowledges that Nomura and/or any of its affiliates may be required to disclose information relating to, among other things, the details of the SPB Transaction or the identities of any party having a legal or beneficial interest in the SPB Transaction as may be required by any relevant governmental or regulatory authorities (including, without limit, CSRC and SAFE) or as may be required under any law, regulation, orders or other lawful request, and it agrees to all such related disclosure and hereby waives confidentiality with regard thereto;

(c)     It agrees to promptly provide Nomura and the relevant governmental or regulatory authorities with such additional information that the relevant governmental or regulatory authorities may require from Nomura and/or its affiliates from time to time, with regard to the identity and other details of the Counterparty or the beneficial owners in respect of the SPB Transaction, including but not limited to (i) the category to which the Counterparty belongs (i.e., hedge fund, corporate, individual, pension fund, trust, etc.); (ii) in the case where the Counterparty is a fund or the SPB Transaction is entered into by the Counterparty as trustee for a trust fund, names of the fund managers and investment advisors; and (iii) the source of funding of the Counterparty. It agrees that where such information is maintained by any third party on behalf of the Counterparty and the trust fund, it shall ensure that appropriate procedures are implemented with such third party to enable the prompt disclosure of such information to Nomura, its nominated affiliate and/or the relevant governmental or regulatory authorities on request;

(d)     It will not transfer, novate or assign any SPB Transaction or any of its interest or obligation therein to another party without the prior written consent of Nomura. It acknowledges that Nomura will have the absolute discretion in deciding whether or not to give such consent, and may impose any condition which it sees fit (including, but not limited to, requiring the transferee and the Counterparty to enter into a side letter with Nomura in substantially the same terms of this Agreement and any other letter agreement between Nomura and the Counterparty in connection with such SPB Transaction) in relation to such consent.  To the extent such SPB Transaction or any of its interest or obligation therein is transferred, novated or assigned by the Counterparty in accordance with the terms of this Agreement, the Counterparty undertakes to ensure that the transferee gives

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295501
SDNY_P001_0000351409

the representations set out in this paragraph 5 of the Jurisdiction Supplement above to Nomura (as though references to the Counterparty were to such transferee) and that the transferee complies with such representations. Any purported transfer not in compliance with this sub-paragraph (d) will be void; and

(e)   The provisions of sub-paragraphs (c) and (d) above shall survive the termination of the SPB Transaction(s).

(iii)   Upon the occurrence of a Regulatory Change Event, the Calculation Agent will (a) amend the terms of the SPB Transaction by a Price Adjustment reasonably determined by the Calculation Agent to be necessary to reflect the Regulatory Change Event and (b) determine the effective date of such Price Adjustment.

As used herein:

"**CSRC**" means the China Securities Regulatory Commission of the PRC.

"**PRC**" means the People's Republic of China.

"**Regulatory Change Event**" means any event which, in the determination of Nomura acting in good faith and in a commercially reasonable manner, constitutes:

(1)   the adoption of, change in or change in the interpretation or administration of, any law, rule or regulation by any governmental authority, central bank or comparable agency ("**Governmental Authority**"); and/or

(2)   the compliance by Nomura with any request or directive of any Governmental Authority (whether or not having the force of law),

and which (a) imposes, modifies, applies or eliminates any tax, reserve, special deposit, insurance assessment or any other requirement in respect of assets or deposits of Nomura in respect of any Hedge Positions entered into by Nomura; and/or (2) adversely affects in any other way the cost to Nomura of maintaining its Hedge Positions.

"**SAFE**" means the State Administration of Foreign Exchange of the PRC.

"**trust**" includes a trust fund or any similar arrangement where the legal title to the trust assets are held by a trustee or legal representative but the beneficial interests in the trust assets are held by beneficiaries; and "trustee" shall be construed accordingly.

**6.   USA**

The following terms shall apply solely to each SPB Transaction that references U.S. Underlyings:

Confidential Treatment Requested by King & Spalding

(i)     **SPB Transaction Request**

Counterparty may request on any Scheduled Trading Day after the date of the SPBMC that Nomura enter into an SPB Transaction Request.  Such SPB Transaction Request shall specify, at a minimum, the number of Units, the Underlying(s), the reference title of the SPB Series with reference to which such SPB Transaction or SPB Transaction Unwind is to be entered into, and whether such transaction is to be an SPB Transaction (and if so whether a Long SPB Transaction or a Short SPB Transaction) or an SPB Transaction Unwind; provided, however, no SPB Transaction Unwind may be requested and no SPB Transaction Unwind may occur within (i) the lesser of 10 calendar days or 7 SPB Business Days of the Trade Date for any Long Positions, and (ii) 30 calendar days of the Trade Date for any Short Positions.

(ii)    **Early Termination**

Nomura may, by giving Sufficient Prior Written Notice to the other party, terminate with immediate effect any outstanding SPB Transactions using a Final Price as determined below as if Counterparty had made and Nomura had accepted an SPB Transaction Request in respect of an SPB Transaction Unwind in relation to those SPB Transactions on the day such notice is effective.  "Sufficient Prior Written Notice" means three (3) SPB Business Days prior notice from Nomura to Counterparty.

(iii)   **Initial Price**

(A)    Prior to and on the first Valuation Date, the Initial Price shall be a value per Unit of the relevant Underlying determined by the Calculation Agent using VWAP for each applicable Exchange Business Day specified pursuant to the terms of the applicable SPB Transaction, taking into account any additional provisions contained in any applicable SPB Product Annex with respect to the determination of such price, as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the Effective Date or relevant Valuation Date, as applicable, using the Relevant Exchange Rate; and

(B)    at any time after the first Valuation Date, the Final Price as at the most recent Valuation Date as defined in this SPB Series Confirmation.

(iv)    **Final Price**

The Final Price for any Valuation Date shall be a value per Unit of the relevant Underlying determined by the Calculation Agent using VWAP for each applicable Exchange Business Day specified pursuant to the terms of the applicable SPB Transaction, taking into account any additional provisions contained in any

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295503
SDNY_P001_0000351411

applicable SPB Product Annex with respect to the determination of such price, as converted (where the Underlying Currency is different from the Settlement Currency) from the Underlying Currency into the Settlement Currency on the relevant Valuation Date using the Relevant Exchange.

"**VWAP**" means, for any Exchange Business Day, the volume-weighted average price for the applicable Underlying over any given period as determined by the Calculation Agent and displayed on Bloomberg or, in the event such price is not so reported for such day for any reason or is manifestly erroneous, as reasonably determined by the Calculation Agent.

(v)      **No Rights in the U.S. Underlying**

Nomura may not both (i) acquire or receive any Hedge Position from and (ii) transfer any Hedge Position to Counterparty; provided that with respect to Long Positions, Nomura may, in its sole discretion, carry out a transfer described in either clause (i) or clause (ii) hereto (but not both).

Confidential Treatment Requested by King & Spalding

Archegos-SDNY-00295504
SDNY_P001_0000351412