# Exhibit X

**AMENDMENT** dated as of May 18, 2004
to the ISDA Master Agreement
dated as of November 8, 2001 between
**MORGAN STANLEY & CO. INTERNATIONAL LIMITED** ("Party A") and
**TIGER ASIA FUND LP** ("Party B" or "Counterparty")

        This Amendment Agreement supplements, forms part of, and is subject in all respects to, that certain ISDA Master Agreement including the Schedule and Credit Support Annex thereto (if any), dated as of November 8, 2001 by and between Party A and Party B (collectively, the "Agreement").  Capitalized terms used herein, unless otherwise defined, have the meanings specified in the Agreement.

        1. Party A and Party B hereby agree that the Agreement is amended as of the date hereof by adding the Automated Transactions Supplement attached hereto.

        2. Each of the signatories below represents and warrants that he or she is duly authorized to sign this Amendment Agreement on behalf of the party set forth above his or her signature.  Each of the parties represents and warrants that (a) its execution and delivery of this Amendment Agreement have been duly authorized by all requisite action by such party and do not and will not (i) violate its relevant organizational documents or (ii) result in a breach of, constitute a default under, or give any party the right to modify, amend, cancel, terminate or otherwise affect any contract, agreement, indenture, lease, license or other instrument to which it is a party or by which it or any of its assets is bound, and (b) this Amendment Agreement has been duly executed by it and is enforceable against it.

        3. The Amendment Agreement may be signed in two or more counterparts.  Each counterpart will constitute an original but all the counterparts together will constitute one and the same instrument.

        4. This Amendment Agreement will be governed by the governing law of the Agreement.

**IN WITNESS WHEREOF**, the parties have executed this Amendment Agreement by their duly authorized officers as of the date hereof.

**TIGER ASIA FUND LP**

By:
Name: Sung Kook Hwang
Title: Managing member of the General Partner

**MORGAN STANLEY & CO. INTERNATIONAL LIMITED**

By:
Name:
Title:

Confidential Treatment Requested by King & Spalding

## Automated Transactions Supplement

### 1. General

This Supplement:

(a)     supplements and forms part of the ISDA Master Agreement dated as of November 8, 2001, as amended and supplemented from time to time (the **"Agreement"**), between Morgan Stanley & Co. International Limited (**"Party A"**) and Tiger Asia Fund LP (**"Party B"**); and

(b)     sets out the terms and conditions on which the parties may (i) enter into one or more series of ATS Transactions (as defined herein) and (ii) effect adjustments thereto.

As used herein:

> **"ATS Series"** means a series of ATS Transactions (as defined herein) entered into with respect to the same ATS Series Reference (as defined herein), the parties intending that each ATS Series shall comprise ATS Transactions all having (among other terms) the same Termination Date and Specified Currency;

> **"ATS Transaction"** means an over-the-counter equity swap transaction resulting from a single ATS Transaction Request relating to shares of a single class issued by the same issuer and entered into between Party A and Party B as contemplated in this Supplement;

> **"ATS Transaction Unwind"** means an adjustment of an ATS Transaction by the reduction of the relevant Number of Shares as contemplated in this Supplement; and

> **"London Business Day"** means a day on which commercial banks in London are open for business (including dealings in foreign exchange and foreign currency deposits).

The definitions and provisions contained in the 2000 ISDA Definitions (other than Articles 10 through 17) and the 1996 ISDA Equity Derivatives Definitions as amended by the 1998 ISDA Euro Definitions (the **"Equity Definitions"**), in each case as published by the International Swaps and Derivatives Association, Inc., are incorporated into this Supplement subject as specified herein.

### 2. Application of Agreement

(a)     All provisions contained in the Agreement govern this Supplement and all ATS Transactions subject as provided herein. ATS Transactions will not be governed by the Equity Options Transactions Annex (if any).

1

Confidential Treatment Requested by King & Spalding

(b)     For the purposes of the Agreement, the parties shall be treated as having entered into a Transaction on each date on which they enter into an ATS Transaction, notwithstanding that each ATS Transaction may form part of an ATS Series.

**3.   ATS Series References**

(a)     *Allocation:* Party A shall from time to time allocate and notify to Party B a reference (an "ATS Series Reference") to be used to identify a particular series of ATS Transactions. An ATS Series Reference shall be allocated for each ATS Transaction Request which specifies the proposed transaction(s) as the first ATS Transaction(s) of an ATS Series.

(b)     *Withdrawal:* If at any time there is no outstanding ATS Transaction entered into with reference to a particular ATS Series Reference, such reference shall be withdrawn and Party B shall not submit any further requests to Party A to enter into an ATS Transaction with reference to such ATS Series Reference.

**4.   Request procedure**

(a)     *Requests by Party B:*  Party B may from time to time after the execution of this Supplement, and until notice is given pursuant to paragraph 8(c) of this Supplement by either party:

     (i)      request (verbally, electronically or otherwise) Party A to enter into an ATS Transaction (each such request an "**ATS Transaction Request**"); or

     (ii)     request (verbally, electronically or otherwise) an ATS Transaction Unwind with respect to any outstanding ATS Transaction (each such request an "**ATS Unwind Request**").

(b)     *Content:*  Each such request shall:

     (i)      in the case of an ATS Transaction Request, specify the matters referred to in Part 1 of Schedule 1 to this Supplement; and

     (ii)     in the case of an ATS Unwind Request, specify the matters referred to in Part 2 of Schedule 1 to this Supplement.

(c)     *Effect of ATS Transaction Request:* Each ATS Transaction Request shall constitute, subject as provided herein, a request to Party A to enter into a new ATS Transaction in respect of the Shares therein specified on the terms hereafter provided.

(d)     *Effect of ATS Unwind Request:* Each ATS Unwind Request shall constitute, subject as provided herein, a request to Party A for the relevant ATS Transaction(s) to be adjusted on the terms hereafter provided.

2

Archegos-CFTC-SEC 014180
SDNY_P001_0000042620

(e)      *Revocation of request:* An ATS Transaction Request or ATS Unwind Request shall remain valid and capable of acceptance by Party A unless and until Party A receives notice of revocation from Party B.

**5.   Acceptance**

(a)      *No obligation to accept:* Party A shall not be obliged to accept any ATS Transaction Request.

(b)      *Notification of acceptance:* Without prejudice to paragraph 5(a) of this Supplement, Party A shall promptly following receipt of an ATS Transaction Request notify Party B whether or not Party A accepts such request. Acceptance by Party A shall in every instance be subject to Party A's entitlement subsequently to reduce the relevant number of Shares as provided below.

(c)      *Acknowledgement of ATS Unwind Request:* Party A shall promptly following receipt of an ATS Unwind Request acknowledge its acceptance to Party B. Such acceptance by Party A shall in every instance be subject to Party A's entitlement subsequently to reduce the relevant number of Shares as provided below.

(d)      *Entitlement to reduce:* Party A shall be entitled in its sole discretion, at any time before the end of the first London Business Day that is an Exchange Business Day following the date on which Party A notifies Party B of its acceptance of the relevant request, to reduce the number of Shares specified in any ATS Transaction Request or ATS Unwind Request (including without limitation so as to reduce such number to zero). Party A's records as to the extent, if any, that it has so reduced the number of Shares shall be conclusive and binding on Party B.

(e)      *Acceptance of ATS Transaction Request:* Acceptance by Party A of an ATS Transaction Request shall constitute an ATS Transaction in respect of the Shares specified therein and in respect of which:

   (i)      the ATS Series Reference is as specified in such request (or as allocated by Party A, in the case of the initial ATS Transaction Request with respect to an ATS Series);

   (ii)     the Trade Date is the date of Party A's acceptance of such request in accordance with paragraph 5(b) of this Supplement;

   (iii)    Party A is (A) the Floating Amount Payer (and Party B the Equity Amount Payer), if the ATS Transaction Request specifies that the ATS Transaction proposed will be short or (B) the Equity Amount Payer (and Party B the Floating Amount Payer), if the ATS Transaction Request specifies that the ATS Transaction proposed will be long;

   (iv)     the Effective Date and Initial Price are each as determined with respect to such ATS Transaction by Party A acting in a commercially reasonable manner (subject to any applicable maximum or minimum price specified by Party B in the relevant ATS

3

Confidential Treatment Requested by King & Spalding
Archegos-CFTC-SEC 014181
SDNY_P001_0000042621

Transaction Request);

(v)       the Valuation Date(s), Termination Date, Settlement Currency, Dividend Ratio, Floating Rate Option, Designated Maturity, Floating Rate Day Count Fraction and Fee Adjustment are each as determined with respect to the initial ATS Transaction(s) of the relevant ATS Series by Party A acting in a commercially reasonable manner;

(vi)      the Number of Shares is initially the number specified in the relevant ATS Transaction Request as the same may be reduced by Party A pursuant to paragraph 5(c) of this Supplement; and

(vii)     the other terms are as provided for in Schedule 2 (in the case of the initial ATS Transaction(s) of any ATS Series) or Schedule 3 (in any other case) to this Supplement.

(f)     *Confirmation of initial ATS Transactions of an ATS Series:* Where Party A accepts an ATS Transaction Request which is the first request in relation to an ATS Series, Party A shall prepare and deliver to Party B, and Party B shall promptly execute and deliver by way of exchange to Party A, a Confirmation with respect thereto in or substantially in the form set out in Schedule 2 to this Supplement with such modifications as Party A shall determine to be appropriate in the circumstances.

(g)     *Deemed confirmation of other ATS Transactions:* Where Party A accepts an ATS Transaction Request (other than the first such request in relation to an ATS Series), the parties shall be deemed to have executed and exchanged a Confirmation with respect to the ATS Transaction thereby constituted on the terms set out in Schedule 3 to this Supplement.

(h)     *Acceptance of ATS Unwind Request:* Acceptance by Party A of an ATS Unwind Request shall constitute an agreement between the parties to adjust the relevant ATS Transaction(s) by reducing the Number of Shares by the number specified by Party B in such request (as the same may be reduced pursuant to paragraph 5(d) of this Supplement) (the "**Unwind Number of Shares**") and on the basis of the further adjustments and payments provided for in paragraph 6 of this Supplement.

## 6.   ATS Transaction Unwind

(a)     *Unwind Adjustment:* Where an ATS Unwind Request is accepted by Party A, the terms of the relevant ATS Transaction(s) shall be adjusted by (i) reducing the Number of Shares by the relevant Unwind Number of Shares and (ii) reducing each of the Equity Notional Amount and Notional Amount, by multiplying each such amount by (x) one *minus* (y) the quotient of the Unwind Number of Shares and the Number of Shares immediately prior to such adjustment.

(b)     *Order of ATS Transactions to be unwound:* If an ATS Unwind Request relates to a particular Share in respect of which more than one ATS Transaction within the relevant ATS Series is outstanding, then the adjustments required by paragraph 6(a) of this Supplement shall be applied to such ATS

4

Confidential Treatment Requested by King & Spalding

Transactions in the chronological order in which such transactions were entered into.

(c)   **_Unwind Valuation Date:_**  Each date on which an ATS Unwind Request is accepted by Party A (an "**Unwind Valuation Date**") shall be deemed to be a Valuation Date with respect to each ATS Transaction adjusted pursuant to paragraph 6(a) of this Supplement, and the Equity Payment Dates, Payment Dates and Dividend Payment Dates with respect thereto shall be determined in accordance with the applicable terms set out in the Confirmation (or, as the case may be, deemed Confirmation) relating thereto.

(d)   **_Unwind Payments:_**  The Equity Amounts, Floating Amounts and Dividend Amounts due by each of Party A and Party B following (and as the result of the occurrence of) an Unwind Valuation Date for each ATS Transaction that is adjusted pursuant to paragraph 6(a) of this Supplement shall be determined in accordance with the applicable terms set out in the Confirmation (or, as the case may be, deemed Confirmation) relating thereto subject as hereafter provided.

For the purposes of determining the Equity Amount and Floating Amount payable under an ATS Transaction following (and as the result of the occurrence of) an Unwind Valuation Date, the Equity Notional Amount and Notional Amount shall be treated as equal to the product of (i) the Equity Notional Amount and Notional Amount, respectively, determined as of the previous Valuation Date (or if there is no previous Valuation Date, as of the relevant Trade Date) and (ii) the quotient of the Unwind Number of Shares applicable to such ATS Transaction divided by the Number of Shares of the relevant ATS Transaction.

For the purposes of determining the Dividend Amount for an ATS Transaction following (and as the result of the occurrence of) an Unwind Valuation Date, the Number of Shares shall be deemed to be the Unwind Number of Shares applicable to such ATS Transaction.

## 7.   Reporting

(a)   **_Daily report:_**  Subject as provided herein, on each London Business Day during the period from and including the London Business Day next following the first acceptance by Party A of an ATS Transaction Request and until the last Termination Date of any outstanding ATS Transaction, Party A shall notify particulars of the terms of outstanding ATS Transactions entered into on or before the preceding London Business Day (including particulars of the terms of any scheduled ATS Transaction Unwind) to Party B in such form as Party A shall from time to time adopt generally for the purposes of reporting transactions entered into on terms similar to those contained in this Supplement. Such a report will be deemed effective on the day it is sent by Party A.

(b)   **_Month End Report:_**  Subject as provided herein, on or around the last London Business Day of every month (beginning in the month of the first acceptance by Party A of an ATS Transaction) Party A shall notify particulars of the terms of the outstanding ATS Transactions of an ATS Series entered into during the course of that month and the preceding months (including particulars of the terms of any scheduled ATS Transaction Unwind for the previous month) to Party B in such form as Party A

5

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 014183
SDNY_P001_0000042623

shall from time to time adopt generally for the purposes of reporting transactions entered into on terms similar to those contained in this Supplement. Following receipt of such report, Party B will promptly acknowledge its receipt of the report and confirm that it has reviewed the information contained therein by signing and delivering a copy of such report to Party A.

(c)   *Consolidated reporting:* For convenience, and without prejudice to the terms of this Supplement and the terms of each separate ATS Transaction, Party A may in any report provided in relation to any one or more ATS Transactions in relation to an ATS Series report outstanding ATS Transactions in respect of the same Shares on a consolidated basis, so that several such ATS Transactions appear as a single reported item with a single Equity Notional Amount and Notional Amount (being the aggregate of the respective amounts for each such outstanding ATS Transaction in relation to the relevant ATS Series).

(d)   *Reports:* If Party B disputes the particulars contained in any report provided by Party A as contemplated by this Supplement, it shall notify Party A of the dispute and its reasons within three London Business Days of the delivery thereof, failing which such report shall be conclusive and binding on Party B as to the particulars contained therein (other than any valuations described below) in the absence of manifest error, and Party B shall be deemed to have waived any right it may have had to dispute the accuracy of those particulars.

(e)   *Valuations:* Reports provided by Party A may contain valuations of one or more ATS Transactions. Party A makes no representation or warranty in relation to any such valuations, whether as to their correctness, completeness or sufficiency or reliability for any purpose, any entitlement of Party B to receive, use, disclose or rely on such valuations or otherwise. Party A shall not be liable for any use or disclosure by Party B of, or reliance by Party B on, any valuations contained or referred to in any such report.

(f)   *Waiver:* Subject as provided above and in paragraph 5(f) above and pursuant to COB 8.1.6(3) of the Rules of the United Kingdom's Financial Services Authority (the "FSA Rules"), Party B hereby waives any requirement for Party A under COB 8.1.3(1) or otherwise to provide any confirmation or other note of the terms of any ATS Transaction or any ATS Transaction Unwind.

## 8.   Early Termination Provisions

(a)   *Provisions additional:* The provisions of this paragraph 8, save as expressly provided herein, are additional and without prejudice to the provisions of Sections 5 and 6 of the Agreement.

(b)   *Early termination by either party (any ATS Transaction):* Either party may elect to terminate any outstanding ATS Transaction prior to its respective final Valuation Date by serving a notice (a "Termination Notice") of such intention at least two Exchange Business Day(s) in advance of the desired early termination date (the "Early Elective Termination Date") so designated in such notice, and in that event, with respect to each ATS Transaction:

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 014184
SDNY_P001_0000042624

(i)     the Early Elective Termination Date (subject to adjustment in accordance with Section 4.2 of the Equity Definitions as applicable to a Valuation Date in respect of an Equity Swap Transaction which is a Share Transaction, where such date is not an Exchange Business Day or there is a Market Disruption Event on such date) shall thereupon be substituted as the final Valuation Date;

(ii)    the final Equity Payment Date, the final Dividend Payment Date and the final Payment Date shall be determined in accordance with the applicable terms set out in the Confirmation (or, as the case may be, deemed Confirmation) relating thereto and by reference to the final Valuation Date determined as provided in paragraph 8(c)(i) of this Supplement; and

(iii)   the obligations of the parties to make any further payments under such ATS Transactions after such final Payment Date (except payments that are due but unpaid as of such date) will cease.

(c)     *Early termination of zero balance ATS Transactions:* If the Number of Shares under any ATS Transaction is reduced to zero pursuant to an ATS Transaction Unwind, with respect to that ATS Transaction:

(i)     the relevant Unwind Valuation Date shall be substituted as the final Valuation Date, and the final Equity Payment Date, the final Dividend Payment Date and the final Payment Date shall be determined in accordance with the applicable terms set out in the Confirmation (or, as the case may be, deemed Confirmation) relating thereto; and

(ii)    the obligations of the parties to make any further payments under such ATS Transaction after such final Payment Date (except payments that are due but unpaid as of such date) will cease.

(d)     *Early Termination by Party A (failure to exchange confirmations) acknowledgement:*

(i)     Party B acknowledges that it intends to execute and deliver to Party A by way of exchange the Confirmation referred to in paragraph 5(f) of this Supplement in respect of an ATS Series within five London Business Days of the delivery by Party A of that Confirmation. Party B acknowledges that failure to deliver such Confirmation may result in Party A terminating any or all ATS Series in accordance with paragraph 8(b) of this Supplement.

(ii)    Party B acknowledges that it intends to review the information contained in the Month End Report as contemplated in paragraph 7(b) of this Supplement in respect of an ATS Series and to acknowledge its receipt within five London Business Days of the delivery by Party A of that Month End Report.  Party B acknowledges that failure to acknowledge such Month End Report may result in Party A terminating any or all ATS Series in accordance with paragraph 8(b) of this Supplement.

**9.   ATS Series**

Confidential Treatment Requested by King & Spalding                                   Archegos-CFTC-SEC 014185
                                                                                                SDNY_P001_0000042625

Where an ATS Series comprises more than one ATS Transaction:

(a)   *Exchange Business Days:* a day shall only be an Exchange Business Day for the purposes of that ATS Series if it is (or, but for the occurrence of a Market Disruption Event for the purposes of any ATS Transaction of that ATS Series, would have been) an Exchange Business Day for the purposes of each ATS Transaction of that ATS Series;

(b)   *Equity Payment Dates:* if as a result of a Market Disruption Event, separate ATS Transactions that would have had a common Valuation Date instead have different Valuation Dates, then Party A may determine a common Equity Payment Date for all of the separate ATS Transactions that would have otherwise had a common Valuation Date and common Equity Payment Date.;

(c)   *Adjustments:* following the declaration by the Issuer of the terms of any Potential Adjustment Event, or if a Merger Event occurs, in relation to relevant Shares with respect to any ATS Transaction of that ATS Series, the Calculation Agent may make, in addition to any adjustment contemplated by Section 9.1(c) or, as the case may be, Section 9.3 of the Equity Definitions with respect to that ATS Transaction, adjustment(s) to any relevant terms of any ATS Transaction of that ATS Series and may determine the effective date(s) of the adjustment(s) with a view to ensuring that the effect of all such adjustments corresponds to the effect of the adjustment(s) that would have been made had all the ATS Transactions of that ATS Series constituted a single Share Basket Swap Transaction on terms corresponding to the terms of those ATS Transactions;

(d)   *Negotiated Close-out:* if a Nationalisation or Insolvency occurs with respect to any Issuer of relevant Shares in relation to any ATS Transaction of that ATS Series, Section 9.6(c)(i) of the Equity Definitions shall apply as if all the ATS Transactions of that ATS Series constituted a single Transaction.

## 10.  Miscellaneous

(a)   *Failure to notify:* No failure by Party A to give, or delay by Party A in giving, any notice or report shall invalidate or otherwise adversely affect any of the respective obligations of the parties in respect of any ATS Transaction or the effectiveness (in accordance with paragraph 5 of this Supplement) of any ATS Transaction Request or ATS Unwind Request.

(b)   *Waiver:* Party B hereby waives any duty of Party A or any of its affiliates to provide "best execution" under the Rules of the Financial Services Authority or otherwise in respect of any ATS Transaction or other transaction or action by Party A contemplated in this Supplement or the terms of any ATS Transaction.

(c)   *Force majeure:* To the fullest extent permitted by applicable law, Party A shall not be responsible or liable for any failure or delay to provide (or error in) any report or notice contemplated by this Supplement arising out of, or caused, directly or indirectly by, circumstances beyond its reasonable control including without limitation any interruptions, loss or malfunction or other non-availability

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 014186
SDNY_P001_0000042626

of utilities, computer (hardware or software) or communications services, systems or facilities, labour disputes or governmental, judicial or regulatory action Provided that Party A shall promptly after it becomes aware of such failure or delay (or error) take reasonable steps to provide (or correct) such report or notice as soon as reasonably practicable.

(d)     Party A is not qualified to provide legal, accounting or tax advice and does not purport to provide such advice in the Agreement, this Supplement or any Confirmation. Party B confirms that it is not relying upon and will not rely upon the Agreement, this Supplement or any Confirmation as providing legal, accounting or tax advice as they are intended solely for the purpose of recording or confirming terms agreed between Party A and Party B with respect to the subject matter thereof. Party A recommends that clients always confer with their own legal, accounting and tax counsel when entering into any agreement or signing any Confirmation.

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 014187
SDNY_P001_0000042627

**Schedule 1**

**Part 1**

**Matters to be specified by Party B in each ATS Transaction Request**

1.  *ATS Series Reference* Either

    (a)   that the proposed transaction(s) is (are) to be the first ATS Transaction(s) of an ATS Series in which case the request will also specify the Settlement Currency and Termination Date proposed by Party B for all ATS Transactions of the relevant ATS Series; or

    (b)   the relevant ATS Series Reference.

2.  *Number/description of Shares* The number and description of Shares in respect of which Party B proposes an ATS Transaction (which number shall be subject to reduction by Party A as provided for in paragraph 5(d) of this Supplement).

3.  *Long/short* For each proposed ATS Transaction, whether such transaction is long (in which case Party B will be the Floating Amount Payer and Party A the Equity Amount Payer) or short (in which case Party A will be the Floating Amount Payer and Party B the Equity Amount Payer).

4.  *Price limitation (optional)* At the option of Party B, a maximum or minimum Initial Price per Share in relation to the proposed ATS Transaction.

**Part 2**

**Matters to be specified by Party B in each ATS Unwind Request**

1.  *ATS Series Reference* The relevant ATS Series Reference.

2.  *Number/description of Shares* The number and description of Shares by which Party B proposes the Number of Shares in respect of any relevant ATS Transaction(s) of the relevant ATS Series should be reduced (which number shall be subject to reduction by Party A as provided in paragraph 5(d) of this Supplement).

3.  *Price limitation (optional)* At the option of Party B, a maximum or minimum Final Price per Share in relation to the proposed ATS Transaction.

10

Archegos-CFTC-SEC 014188
SDNY_P001_0000042628

**Schedule 2**

**Form of Initial Confirmation for each ATS Series**

This Confirmation confirms the terms and conditions of the transaction(s) entered into between Morgan Stanley & Co. International Limited ("Party A") and Tiger Asia Fund LP ("Party B" and, together with Party A, the "Parties") on the Trade Date specified below (the "Transaction(s)") and constitutes a "Confirmation " as referred to in the ISDA Master Agreement specified below.

The definitions and provisions contained in the 2000 ISDA Definitions (other than Articles 10 through 17) (the "Swap Definitions") and in the 1996 ISDA Equity Derivatives Definitions as amended by the 1998 ISDA Euro Definitions (the "Equity Definitions", and together with the Swap Definitions, the "Definitions"), in each case as published by the International Swaps and Derivatives Association, Inc. ("ISDA"), are incorporated into this Confirmation subject as specified herein. In the event of any inconsistency between the Swap Definitions and the Equity Definitions, the Equity Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern. Any reference to a currency shall have the meaning contained in the 1998 ISDA FX and Currency Option Definitions, as published by ISDA.

This Confirmation supplements, forms part of, and is subject to, the ISDA Master Agreement dated as of November 8, 2001 as amended and supplemented from time to time (the "Agreement") between the Parties including any Supplement thereto referencing ATS Transactions (the "Supplement"). All provisions in the Agreement (excluding the Equity Option Annex (if any) thereto) govern this Confirmation subject to any express modification below. Terms defined in the Supplement have the same meanings therein and shall prevail in the event of any inconsistency with the Definitions.

For the purposes of the Supplement, this Confirmation constitutes the initial Confirmation with respect to an ATS Series, having the ATS Series Reference specified below.  If more than one class of Shares is specified in the Schedule to this Confirmation, this Confirmation evidences Transactions with respect to each class of Shares so specified (all terms specified below applying to each such Transaction save as otherwise indicated).

**General Terms:**

| | |
|---|---|
| ATS Series Reference: | [ ] |
| Trade Date: | [ ] |
| Equity Amount Payer: | As specified with respect to the relevant Shares in the Schedule to this Confirmation. |
| Effective Date: | [ ] |
| Termination Date: | [ ] or the final Equity Payment Date, whichever is |

11

later, subject as provided in paragraph 8 of the
Supplement.

Settlement Currency:                          [ ]

Shares:                                       As specified in the Schedule to this Confirmation.

Exchange:                                     The primary exchange on which the Shares are traded.

Related Exchange:                             The primary exchange on which listed options or
                                              futures on the Shares are traded.

**Equity Amounts payable by Equity Amount Payer:**

Number of Shares:                             As specified with respect to the relevant Shares in the
                                              Schedule to this Confirmation (subject to adjustment
                                              with respect to each Unwind Valuation Date as
                                              provided in paragraph 6 of the Supplement).

Equity Notional Amount:                       The product of the Number of Shares and the Initial
                                              Price (subject to adjustment with respect to each
                                              Unwind Valuation Date as provided in paragraph 6 of
                                              the Supplement).

Equity Notional Reset:                        Applicable

Equity Payment Dates:                         A number of Currency Business Day following each
                                              Valuation Date (such number to be determined by
                                              Party A based on the normal settlement cycle for
                                              Shares traded on the Exchange), subject as provided
                                              in paragraph 8 of the Supplement.

Type of Return:                               Total Return

Initial Price:                                Initially as specified with respect to the relevant
                                              Shares in the Schedule to this Confirmation and, at
                                              any time after the first Valuation Date, the Final Price
                                              as at the most recent Valuation Date (other than an
                                              Unwind Valuation Date).

                                              For the purposes of this Confirmation, the following
                                              defined terms shall apply:

12

"Gross Initial Price" means the Initial Price per Share exclusive of any Fee Adjustment;

"Net Initial Price" means the Initial Price per Share inclusive of any Fee Adjustment.

Final Price:

The Final Price for any scheduled Valuation Date, other than the final Valuation Date, shall be a price per Share determined by Party A acting in a commercially reasonable manner. The Final Price for any Unwind Valuation Date, and for the final Valuation Date, shall be a price per Share determined by Party A acting in a commercially reasonable manner (in the case of any Unwind Valuation Date, subject to any price limitation provided by Party B in accordance with Schedule 1 to the Supplement) minus (or, if the Equity Amount Payer is Party B, plus) the Fee Adjustment (where expressed otherwise than as an amount per Share, as determined by Party A by reference to such price per Share).

For the purposes of this Confirmation, the following defined terms shall apply:

"Gross Final Price" means the Final Price per Share exclusive of any Fee Adjustment;

"Net Final Price" means the Final Price per Share inclusive of any Fee Adjustment.

Valuation Time:

The time selected by Party A in a commercially reasonable manner.

Valuation Dates:

[      ] from the period from and excluding the Trade Date to and including the month in which the Termination Date occurs, and each Unwind Valuation Date, subject as provided in paragraph 8 of the Supplement.

Dividend Payment Dates:

For Dividend Amounts with Dividend Receipt Dates prior to the Final Valuation Date, the Equity Payment Date relating to the Valuation Date next following such Dividend Receipt Date. For Dividend Amounts

13

Archegos-CFTC-SEC 014191
SDNY_P001_0000042631

with Dividend Receipt Dates on or following the final Valuation Date, the third Currency Business Day following such Dividend Receipt Date.

Dividend Amount:

An amount equal to the product of (i) the relevant Dividend Ratio and (ii) the aggregate gross cash dividend(s) payable in respect of the Number of Shares or, in the case of any Dividend Amount payable pursuant to the application of paragraph 6(c) of the Supplement, the Unwind Number of Shares, where the ex-dividend date in respect of such dividend occurs during the relevant Dividend Period.

Dividend Receipt Dates:

The date on which the relevant Dividend Amount would have been received by the relevant Equity Amount Payer.

Dividend Ratio:

As specified in the Schedule to this Confirmation.

Re-investment of Dividends:

Not applicable

**Floating Amounts payable by Floating Amount Payer:**

Floating Amount Payer:

With respect to an ATS Transaction, the Party that is not the Equity Amount Payer.

Notional Amount:

The Equity Notional Amount

Payment Dates:

Equity Payment Dates

Floating Rate Option:

[ ]

Designated Maturity:

[ ]

Spread:

As determined from time to time by Party A acting in a commercially reasonable manner.

Floating Rate Day Count Fraction:

[ ]

Reset Dates:

The first day of each Calculation Period.

**Adjustments:**

Method of Adjustment:

Calculation Agent Adjustment

14

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 014192
SDNY_P001_0000042632

**Extraordinary Events:**

Consequences of Merger Events:

Share-for-Share:                                    Alternative Obligation

Share-for-Other:                                    Alternative Obligation

Share-for-Combined:                                 Alternative Obligation

**Nationalisation or Insolvency:**                  Negotiated Close-out

**Calculation Agent:**                              Party A

**Account details:**

Account for payments to Party A:                    [ ]

Account for payments to Party B:                    [ ]

**Other Terms:**

Party B agrees to provide Eligible Credit Support in accordance with the following requirements and the ISDA Credit Support Annex dated as of November 8, 2001 between the Parties (which shall constitute a Credit Support Document for the purposes of the Agreement):

**Independent Amount with respect to Party B:**     An amount determined by Party A in a commercially reasonable manner (subject to adjustment by Party A on any Exchange Business Day). This amount shall be aggregated with any other Independent Amounts applicable to Party B under the terms of other ATS Transactions or other Transactions or specified in the Credit Support Annex in determining the amount of all Independent Amounts applicable to Party B for the purposes of calculating the Credit Support Amount under the Credit Support Annex.

The provisions of paragraphs 6, 8, 9 and 10 of the Supplement shall apply *mutatis mutandis* to the Transaction as if set out herein at length.

15

Confidential Treatment Requested by King & Spalding

**Schedule to Initial Confirmation**

| Issuer | ISIN | Class | Number of Shares | Initial Price | Fee Adjustment (per Share or Basis Points) | Dividend Ratio | Equity Amount Payer | Spread |
|--------|------|-------|------------------|---------------|--------------------------------------------|----------------|---------------------|--------|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

16

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 014194
SDNY_P001_0000042634

Schedule 3

**Form of Deemed Confirmation**

This Confirmation confirms the terms and conditions of the transaction entered into between Morgan Stanley & Co. International Limited ("Party A") and Tiger Asia Fund LP ("Party B" and, together with Party A, the "Parties") on the Trade Date specified below (the "Transaction") and constitutes a "Confirmation " as referred to in the ISDA Master Agreement specified below.

The definitions and provisions contained in the 2000 ISDA Definitions (other than Articles 10 through 17) (the "Swap Definitions") and in the 1996 ISDA Equity Derivatives Definitions as amended by the 1998 ISDA Euro Definitions (the "Equity Definitions", and together with the Swap Definitions, the "Definitions"), in each case as published by the International Swaps and Derivatives Association, Inc. ("ISDA"), are incorporated into this Confirmation subject as specified herein. In the event of any inconsistency between the Swap Definitions and the Equity Definitions, the Equity Definitions will govern. In the event of any inconsistency between either set of Definitions and this Confirmation, this Confirmation will govern. Any reference to a currency shall have the meaning contained in the 1998 ISDA FX and Currency Option Definitions, as published by ISDA.

This Confirmation supplements, forms part of, and is subject to, the ISDA Master Agreement dated as of November 8, 2001 as amended and supplemented from time to time (the "Agreement") between the Parties including any Supplement thereto referencing ATS Transactions (the "Supplement"). All provisions in the Agreement (excluding the Equity Option Annex (if any) thereto) govern this Confirmation subject to any express modification below. Terms defined in the Supplement have the same meanings herein and shall prevail in the event of any inconsistency with the Definitions.

As used herein, the "relevant ATS Transaction Request" means the ATS Transaction Request specifying proposed terms for the Transaction and "Initial Confirmation" means the Confirmation with respect to the initial ATS Transaction(s) of the ATS Series having the ATS Series Reference specified in the relevant ATS Transaction Request.

**General Terms:**

| | |
|---|---|
| ATS Series Reference: | As specified in the relevant ATS Transaction Request. |
| Trade Date: | The date of Party A's acceptance of the relevant ATS Transaction Request. |
| Equity Amount Payer: | As specified in the Initial Confirmation. |
| Effective Date: | The date determined as such by Party A with respect to the Transaction. |
| Termination Date: | The date specified as such in the Initial Confirmation |

17

Confidential Treatment Requested by King & Spalding

or the final Equity Payment Date, whichever is later, subject as provided in paragraph 8 of the Supplement.

Settlement Currency:                     As specified in the Initial Confirmation.

Shares:                                  As specified in the relevant ATS Transaction Request.

Exchange:                                The primary exchange on which the Shares are traded.

Related Exchange:                        The primary exchange on which listed options or futures on the Shares are traded.

**Equity Amounts payable by Equity Amount Payer:**

Number of Shares:                        The number of Shares specified in the relevant ATS Transaction Request as reduced by Party A as contemplated in paragraph 5(c) of the Supplement (subject to adjustment with respect to each Unwind Valuation Date as provided in paragraph 6 of the Supplement).

Equity Notional Amount:                  The product of the Number of Shares and the Initial Price (subject to adjustment with respect to each Unwind Valuation Date as provided in paragraph 6 of the Supplement).

Equity Notional Reset:                   As specified in the Initial Confirmation.

Equity Payment Dates:                    As specified in the Initial Confirmation.

Type of Return:                          Total Return

Initial Price:                           The price determined as such by Party A acting in a commercially reasonable manner as of the Trade Date or, at any time after the first Valuation Date, the Final Price as at the most recent Valuation Date (other than an Unwind Valuation Date).

                                         For the purposes of this Confirmation the following defined terms shall apply:

                                         "Gross Initial Price" means the Initial Price per Share exclusive of any Fee Adjustment;

18

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 014196
SDNY_P001_0000042636

"Net Initial Price" means the Initial Price per Share inclusive of any Fee Adjustment.

Final Price:

The Final Price for any scheduled Valuation Date, other than the final Valuation Date, shall be a price per Share determined by Party A acting in a commercially reasonable manner. The Final Price for any Unwind Valuation Date and for the final Valuation Date shall be a price per Share determined by Party A acting in a commercially reasonable manner (in the case of any Unwind Valuation Date, subject to any price limitation provided by Party B in accordance with Schedule 1 to the Supplement) minus (or, if the Equity Amount Payer is Party B, plus) the Fee Adjustment (where expressed otherwise than as an amount per Share, as determined by Party A by reference to such price per Share).

For the purposes of this Confirmation, the following defined terms shall apply:

"Gross Final Price" means the Final Price per Share exclusive of any Fee Adjustment;

"Net Final Price" means the Final Price per Share inclusive of any Fee Adjustment.

Valuation Time:

The time selected by Party A in a commercially reasonable manner.

Valuation Dates:

The date(s) specified as such in the Initial Confirmation and each Unwind Valuation Date, subject as provided in paragraph 8 of the Supplement.

Dividend Payment Dates:

For Dividend Amounts with Dividend Receipt Dates prior to the Final Valuation Date, the Equity Payment Date relating to the Valuation Date next following such Dividend Receipt Date. For Dividend Amounts with Dividend Receipt Dates on or following the final Valuation Date, the third Currency Business Day following such Dividend Receipt Date.

19

Archegos-CFTC-SEC 014197
SDNY_P001_0000042637

| | |
|---|---|
| Dividend Amount: | As specified in the Initial Confirmation. |
| Dividend Receipt Dates: | The date on which the relevant Dividend Amount would have been received by the relevant Equity Amount Payer. |
| Dividend Ratio: | As specified in the [Month End Report]. |
| Re-investment of Dividends: | Not applicable |

**Floating Amounts payable by Floating Amount Payer:**

| | |
|---|---|
| Floating Amount Payer: | As specified in the Initial Confirmation. |
| Notional Amount: | The Equity Notional Amount |
| Payment Dates: | As specified in the Initial Confirmation. |
| Floating Rate Option: | As specified in the Initial Confirmation. |
| Designated Maturity: | As specified in the Initial Confirmation. |
| Spread: | The rate determined as such by Party A acting in a commercially reasonable manner. |
| Floating Rate Day Count Fraction: | As specified in the Initial Confirmation. |
| Reset Dates: | As specified in the Initial Confirmation. |

**Adjustments:**
| | |
|---|---|
| Method of Adjustment: | Calculation Agent Adjustment |

**Extraordinary Events:**
Consequences of Merger Events:
| | |
|---|---|
| Share-for-Share: | Alternative Obligation |
| Share-for-Other: | Alternative Obligation |
| Share-for-Combined: | Alternative Obligation |
| **Nationalisation or Insolvency:** | Negotiated Close-out |
| **Calculation Agent:** | Party A |

20

Confidential Treatment Requested by King & Spalding

Archegos-CFTC-SEC 014198
SDNY_P001_0000042638

**Account details:**                              As specified in the Initial Confirmation.

**Other Terms:**

Party B agrees to provide Eligible Credit Support in accordance with the following requirements and the ISDA Credit Support Annex dated as of November 8, 2001 between the Parties (which shall constitute a Credit Support Document for the purposes of the Agreement):

**Independent Amount with respect to Party B:**   An amount determined by Party A in a commercially reasonable manner (subject to adjustment by Party A on any Exchange Business Day). This amount shall be aggregated with any other Independent Amounts applicable to Party B under the terms of other ATS Transactions or other Transactions or specified in the Credit Support Annex in determining the amount of all Independent Amounts applicable to Party B for the purposes of calculating the Credit Support Amount under the Credit Support Annex.

The provisions of paragraphs 6, 8, 9 and 10 of the Supplement shall apply *mutatis mutandis* to the Transaction as if set out herein at length.

21

Confidential Treatment Requested by King & Spalding