UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

COMMODITY FUTURES TRADING
COMMISSION,

                   Plaintiff,        ECF Case

  - against –                             No. 22 Civ. 03401 (JPO)

ARCHEGOS CAPITAL MANAGEMENT LP, and
PATRICK HALLIGAN,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION TO INTERVENE AND FOR A STAY OF DISCOVERY

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for the United States
     of America

Matthew Podolsky
Alex Rossmiller
Danielle R. Sassoon
Andrew Thomas
Assistant United States Attorneys

   *- Of Counsel -*

## PRELIMINARY STATEMENT

The United States of America, by and through Damian Williams, the United States Attorney for the Southern District of New York (the "Government"), respectfully submits this memorandum in support of its application (i) to intervene in the above-captioned case (the "CFTC Case"), pursuant to Rule 24 of the Federal Rules of Civil Procedure; and (ii) to stay discovery in the CFTC Case until the conclusion of the parallel criminal case, *United States v. Sung Kook (Bill) Hwang, et al.*, 22 Cr. 240 (AKH) (the "Criminal Case").

This Court should stay discovery in the CFTC Case until the conclusion of the trial in the Criminal Case. The CFTC Case arises from and concerns much of the same conduct and circumstances that underlie the Criminal Case and litigation of the CFTC Case will necessarily involve substantially the same facts, documents, and witnesses relevant to the criminal trial. A stay of discovery is appropriate because any exchange of discovery in the CFTC Case would be asymmetrical and would allow the defendants to circumvent the criminal discovery rules and improperly tailor their defenses in the Criminal Case, which has been scheduled for trial.[1] And a stay of discovery now would be fair because it would permit the defendants to litigate putatively dispositive motions to dismiss in the CFTC Case, while conserving the parties' resources and preventing improper abuse of civil discovery tools to gain advantage in the Criminal Case.

The CFTC does not oppose the Government's request for a stay of discovery. Counsel for Archegos Capital Management LP has informed the Government that its client consents to a stay of discovery in the CFTC Case while any motions to dismiss are pending, but would object to a complete stay of discovery after the motions to dismiss are resolved, if any claims survive.

---

[1] CFTC Case defendant Halligan is also a defendant in the Criminal Case. CFTC Case defendant Archegos Capital Management, which was at all times relevant to the Criminal Case and the CFTC Case owned and controlled by Criminal Case defendant Hwang, is not a defendant in the Criminal Case.

Counsel for Halligan has informed the Government that their client opposes the Government's motion. But as detailed below, the fairness, efficiency, and public good resulting from a stay of discovery outweighs the defendants' preference, particularly because the defendants have sought to delay trial in the Criminal Case while seeking discovery in the CFTC Case. Accordingly, and for the reasons set forth below, the Government respectfully requests that this Court enter an order staying discovery in this action until the completion of the Criminal Case.

## FACTUAL BACKGROUND

On April 27, 2022, the United States District Court unsealed Indictment 22 Cr. 240 (AKH) (the "Indictment"). The Indictment charged Halligan and Sung Kook (Bill) Hwang in a total of eleven counts. Halligan and Hwang each were charged with one count of racketeering conspiracy, securities fraud, and wire fraud, respectively; Hwang was also charged with an additional count of securities fraud and seven counts of market manipulation. *See generally* Indictment (Exhibit A). Also on April 27, 2022, the U.S. Securities and Exchange Commission (the "SEC") filed a complaint against Hwang, Halligan, and Archegos Capital Management LP alleging violations of securities laws related to the same schemes as contained in the Indictment (the "Initial SEC Complaint").[2] On the same day, the CFTC filed a complaint against Halligan and Archegos Capital Management LP alleging violations of the commodities laws relating to the same schemes described in the Indictment. On August 26, 2022, the SEC amended the Initial SEC Complaint to add further detail, including quotations from the transcript of criminal proceedings involving one of the Government's cooperating witnesses (the "Amended SEC Complaint").

---

[2] The Initial SEC Complaint also charged defendants William Tomita and Scott Becker; the civil charges against Tomita and Becker have been resolved. *See Securities and Exchange Commission v. Hwang et al.*, 22 Civ. 3402 (JPO), Dkts. 23, 29.

As alleged in the Indictment, the Amended SEC Complaint, and the CFTC Complaint, Halligan, with Hwang and others, participated in corrupting the operations and activities of the family office known as Archegos Capital Management and its related corporate entities and employees (collectively, "Archegos"). Halligan, Hwang, and their co-conspirators used Archegos, a family office that invested Hwang's personal fortune, as an instrument of market manipulation and fraud. Hwang, the founder and co-Chief Executive Officer of Archegos Capital Management ("ACM"), and Halligan, ACM's Chief Financial Officer, along with their co-conspirators, used Archegos to perpetrate two interrelated criminal schemes.[3]

First, as alleged in the Indictment, and as relevant for background here, Hwang schemed and conspired to defraud market participants by manipulating, controlling, and artificially affecting the market for certain securities in Archegos's portfolio. In particular, to drive up the prices of those securities, Hwang amassed extraordinary exposure to those stocks through billions of dollars in purchases made with money borrowed from numerous leading global investment banks and brokerages (collectively, the "Counterparties") based on lies and misrepresentations. The increased demand for these stocks, and the dwindling supply of freely trading shares, led to significant artificial appreciation in the price of each stock. This manipulative strategy harnessed the margin frameworks of Archegos's Counterparties by recycling "excess" margin into further buying. In turn, the strategy generated additional price inflation and, thus, still more "excess" margin. Hwang further used his market power to "support" or "defend" the prices of stocks underlying Archegos's positions through a variety of manipulative short-term trading techniques, including by engaging in trades at certain times, or

---

[3] William Tomita, ACM's Head Trader, and Scott Becker, ACM's Director of Risk Management, have each pleaded guilty to offenses relating to their roles in these schemes pursuant to cooperation agreements. *See United States v. Scott Becker, et al.*, 22 Cr. 231 (LTS) (Dkts. 20, 22).

3

trading in certain dollar amounts or volumes of shares, in ways designed and intended to artificially affect stock prices. In doing so, Hwang led market participants to believe that the prices of those stocks were the product of natural forces of supply and demand when, in truth, they were the artificial product of Hwang's manipulative trading and deceptive conduct that caused others to trade. *See, e.g.*, Indictment ¶¶ 2, 20-40.

 Second, with Hwang's knowledge and approval, and as also alleged in this case, Halligan and others repeatedly made materially false and misleading statements about Archegos's portfolio of securities to the Counterparties. Specifically, the conspirators repeatedly made materially false and misleading statements to Counterparties about Archegos's portfolio and positions in order for Hwang to obtain billions of dollars of credit and trading capacity. These lies and misrepresentations disguised the true—and grave—risks associated with Archegos's portfolio and were integral to the conspiracy's success. The false and misleading statements were designed to fraudulently induce the Counterparties into trading with and extending credit to Archegos, enabling and facilitating the market manipulation scheme, and to hide the true risk of doing business with Archegos. *See, e.g.*, Indictment ¶¶ 2, 41-59.

 The criminal conduct of the defendants and others transformed Hwang and Archegos into significant economic forces in the United States securities markets. Between in or about March 2020 and the week of March 22, 2021, Archegos's capital—essentially Hwang's personal fortune—increased from approximately $1.5 billion to more than $35 billion. Archegos's positions, including indirectly through derivative securities positions, were larger than any of the disclosed shareholders of multiple public companies. The total size of Archegos's market positions, including investments made with money borrowed from the Counterparties, grew from approximately $10 billion to more than $160 billion. *See, e.g.*, Indictment ¶ 3.

These manipulative and fraudulent schemes left Archegos's portfolio highly vulnerable to price fluctuations in a handful of stocks. In late March 2021, that risk materialized: a decline in the prices of certain stocks in Archegos's portfolio prompted margin calls; that is, Counterparties required Archegos to provide more cash to support its trading. Because selling Archegos's positions to raise cash could further deflate the artificial prices of those securities, leading to a downward spiral, Hwang instead directed Archegos's traders to engage in a desperate buying spree in an attempt to reverse the price declines of stocks underlying Archegos's core positions. Acting at Hwang's direction, the traders used Archegos's remaining cash and credit, including funds borrowed based on misrepresentations and lies to the Counterparties, to pay for billions of dollars in trades over just a few days. *See, e.g.*, Indictment ¶¶ 5, 60-67.

The buying spree failed, and Archegos was unable to pay the additional cash demanded by its Counterparties. As a result, the Counterparties sold Archegos's positions, and the prices—which had been artificially supported by the trading directed by Hwang—collapsed. More than $100 billion in apparent market value for nearly a dozen companies disappeared within days. Ultimately, the market manipulation and fraud schemes, and the billions of dollars in losses that they caused, victimized an array of market participants, including (a) banks and prime brokers that engaged in loans and securities trading with Archegos based on lies and deceit; (b) ordinary investors who purchased and sold the relevant securities at artificial prices; and (c) securities issuers who made business decisions based on the artificial prices of their stocks. The schemes also caused millions of dollars of losses to innocent Archegos employees who had been required to allocate to Archegos a substantial amount of their pay as deferred compensation. *See, e.g.*, Indictment ¶¶ 6, 7.

**ARGUMENT**

The Government's requests to intervene and for a stay of discovery in the CFTC Case should be granted. Were discovery in the CFTC Case to proceed, there would be a risk of significant interference with the Criminal Case. A stay of discovery in the CFTC Case would prevent the circumvention of important statutory limitations on criminal discovery and avoid asymmetrical discovery, and preserve the Court's resources because many of the issues presented by the civil action will be resolved in the Criminal Case. And particularly because such a stay would be limited to delaying the production of discovery, it would not prejudice any party to the CFTC Case.

**I.    THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE**

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of these provisions, given the effect upon the Criminal Case this civil proceeding would have and the similarity of claims and facts between the parallel proceedings.

As a general rule, courts "have allowed the government to intervene in civil actions— especially when the Government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992); *see also SEC v. Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used

6

to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

As an initial matter, intervention is warranted because the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represents the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the plaintiff or the defendants have this identical interest.").

Moreover, a trial in this action in advance of a related criminal trial could impair or impede the Government's ability to protect its interests in the enforcement of federal criminal law. This case and the related Criminal Case arise from the same alleged scheme to commit fraud at and through Archegos. Holding a civil trial before a criminal trial would create the possibility that there will be two trials covering the same fraudulent acts and therefore the probability that witnesses will be unnecessarily burdened by having to testify twice. In light of those circumstances, the Government respectfully submits that its application to intervene should be granted.

## II.   A STAY OF DISCOVERY IN THIS ACTION SHOULD BE GRANTED

### A.   Applicable Law

This Court has the inherent power to stay discovery in the interests of justice pending the completion of a parallel criminal trial. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action." (internal citations and quotations omitted)). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of

7

the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). When considering whether to grant a stay, courts balance the following factors:

>(1) the extent to which the issues in the criminal case overlap with those presented in the civil case;
>
>(2) the status of the case, including whether the defendants have been indicted;
>
>(3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay;
>
>(4) the private interests of and burden on the defendants;
>
>(5) the interest of the court; and
>
>(6) the public interest.

*SEC v. Treadway*, No. 04 Civ. 3464 (VM) (JCF), 2005 WL 713826, at *2-*3 (S.D.N.Y. March 30, 2005) (quoting *In re Worldcom, Inc. Sec. Litig.*, Nos. 02 Civ. 3288, 02 Civ. 4816, 2002 WL 31729501, at *4 (S.D.N.Y. Dec. 5, 2002)); *see also Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (listing similar factors). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Id.*

Here, the parallel Criminal Action arises, at least in part, from an identical set of facts and circumstances that underlie this action. In similar situations, courts in this Circuit and others have routinely entered a stay of parallel civil actions, even over a defendant's objection. *See, e.g., CFTC v. Baldwin, et al.*, No. 21 Civ. 5707 (LJL), ECF Doc. 54 (S.D.N.Y. Nov. 15, 2021) (granting stay of all proceedings except for entry of default judgment against non-appearing defendants); *SEC v. Hu*, No. 20 Civ. 5496 (DLC), ECF Doc. 12 (S.D.N.Y. Sep. 21, 2020) (granting full stay with consent of defendant and non-objection of plaintiff); *SEC v. LaGuardia*,

No. 19 Civ. 5895 (ALC) (SDA), ECF Doc. 31 (S.D.N.Y. Jan. 23, 2020) (granting partial stay over defendant's objection); *SEC v. Blakstad*, No. 19 Civ. 6387 (DLC), ECF Doc. 17 (S.D.N.Y. Sep. 10, 2019); *SEC v. Pinto-Thomaz*, No. 18 Civ. 5757 (JPO), ECF Doc. 21 (S.D.N.Y. Oct. 11, 2018); *SEC v. Wey*, No. 15 Civ. 7116 (PKC) (S.D.N.Y. June 9, 2016) (after Government's motion for partial stay of discovery, and over objection of multiple defendants, implementing full stay of discovery, with the exception that SEC would produce testimony transcripts that had been produced in criminal case); *SEC v. Town of Ramapo N.Y., et al.*, No. 16 Civ. 2779 (CS), ECF Doc. 90 at 42 (S.D.N.Y. Nov. 4, 2016) (granting partial stay requested by Government over defense objection); *SEC v. Durante et al.*, No. 15 Civ. 9874 (RJS) (S.D.N.Y. Mar. 23, 2016) (after Government's initial motion for partial stay of discovery, fully staying discovery and proceedings in the matter); *SEC v. Shkreli, et al.*, No. 15 Civ. 7175 (KAM), 2016 WL 1122029, at *2-7 (E.D.N.Y. Mar. 22, 2016) (granting, over defendants' opposition, a full stay); *SEC v. Dubovoy*, 15 Civ. 6076, Docket No. 244 (Transcript of Oral Decision) (D.N.J. Jan. 29, 2016) (granting stay of discovery of civil case in light of parallel criminal action, notwithstanding "vigorous[] oppos[ition]" from certain of the civil defendants who were not a party to the criminal action); *Harris v. Nassau County et al.*, No. 13 Civ. 4728 (NGG) (RML), 2014 WL 3491286, at *4 (E.D.N.Y. July 11, 2014) ("Courts consistently hold that a stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct." (quotation marks omitted)); *SEC v. One or More Unknown Purchasers of Securities of Global Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) (granting request for full stay of discovery for six months over defendant's objection while criminal investigation was proceeding but prior to any criminal charge); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008).

**B.     Discussion**

Application of each of these factors here weighs in favor of the stay sought by the Government.

**1.     *The Extent of the Overlap***

That the criminal and civil cases involve essentially identical facts and issues weighs heavily in favor of a stay. "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues." *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Parker v. Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

Here, as described above, although the Criminal Case involves additional market manipulation allegations against Hwang and Tomita, the Criminal Case and this case involve the same alleged fraudulent schemes perpetrated against the Counterparties by Hwang, Halligan, Tomita, and Becker. The cases involve virtually identical facts, witnesses, and issues, and the CFTC case names one of the same individual defendants as the Criminal Case. As a result, this factor weighs heavily in favor of a stay. *See, e.g.*, *Shkreli*, 2016 WL 1122029, at *4; *SEC v. Tuzman*, No. 15 Civ. 7057 (AJN), ECF Doc. 43 at 3 (S.D.N.Y. Mar. 1, 2016).

**2.     *The Status of the Criminal Case***

The filing of the Indictment and scheduling of a trial date for October 10, 2023 in the Criminal Case also weigh in favor of a stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and

citation omitted). Indeed, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990); *see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved.").

Halligan (along with his codefendant in the Criminal Case, Hwang) has been formally charged and arrested, has received Rule 16 discovery, and a trial has been scheduled. Indeed, the Government sought a trial in April 2023, and counsel for Hwang and Halligan requested to delay trial until 2024, and Judge Hellerstein set trial down for October 10, 2023. *See United States v. Hwang, et al.*, 22 Cr. 240 (AKH), Sept. 8, 2022 Tr. at 10-12.   In other words, the Criminal Case is proceeding toward trial and would do so more quickly, but for the criminal defendants' request for a later trial date. Halligan should not be permitted to seek to delay criminal proceedings while seeking to obtain discovery he is not entitled to by refusing to stay this case.

### 3.     *The Potential Prejudice to the Parties*

A stay of discovery will not prejudice any party. As an initial matter, the requested stay is limited to a stay of discovery, and the defendants will therefore still be able to litigate motions to dismiss the CFTC Case while the Criminal Case is pending. Moreover, with respect to the individual defendants, granting a stay of discovery in the CFTC Case to permit the Criminal Case to proceed to its conclusion would in fact benefit Halligan, as granting a stay of discovery

11

in the CFTC Case would, for now, obviate him being forced to choose between being prejudiced in the CFTC Case by the assertion of Fifth Amendment rights or being prejudiced in the Criminal Case if he waived those rights. With respect to Archegos, the entity, counsel for Archegos has previously informed the Government that Archegos has no ongoing business operations and that it is engaged in winding down its affairs, so it seems unlikely its business operations will be impaired by a stay. Further, should a jury convict Hwang in the Criminal Case, Hwang's ownership of Archegos will be subject to forfeiture by the Government, so a stay may also avoid the needless depletion of Archegos's assets on civil litigation that will be subject to forfeiture and could be used for compensating victims in the Criminal Case. The Government has agreed to a protective order in the Criminal Case that permits the individual defendants to share discovery with Archegos, enabling Archegos to prepare its civil defense while the Criminal Case proceeds. And the CFTC has informed the Government that it does not oppose the Government's motion. Accordingly, a stay of discovery would not prejudice the parties to the CFTC Case.

    **4.**    *The Interests of the Court*

Considerations of judicial economy also weigh in favor of granting a stay of discovery. Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action. *Cf. SEC v. Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *Global Indus.*, 2012 WL 5505738, at *4 ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered).

Because the Criminal Case's outcome will likely affect the conduct, scope, and result of the CFTC Case, potentially streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor favors the Government's application.

### 5. *The Public Interest*

The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery—restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *Nicholas*, 569 F. Supp. 2d at 1070 (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

In *Tuzman*, Judge Nathan outlined three principal Government interests justifying a stay of discovery of civil proceedings while parallel criminal proceedings are pending:

> First, broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence. Second, revelation of the identity of prospective witnesses may create the opportunity for intimidation. Third, criminal defendants may unfairly surprise the prosecution at trial with information developed through [civil] discovery, while the self-incrimination privilege would effectively

13

> block any attempts by the Government to discover relevant evidence from the defendants.

*Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43 at 3-4 (internal citations and quotations omitted). Based on these concerns, judges in this District frequently have granted Government requests to limit discovery in a parallel civil action in order to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in the criminal proceeding. *See, e.g.*, *id.* at 3-7 (granting stay sought by Government); *SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting government's motion to stay, court noted: "The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'" (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952))).

Indeed, the rationale underlying a stay is even stronger in an indicted matter, given that a defendant in a charged criminal case likely will invoke his Fifth Amendment rights in the civil case and not participate in the very discovery process he or she seeks to use affirmatively. *See, e.g., SEC v. Chakrapani*, Nos. 09 Civ. 325 (RJS), 09 Civ. 1043 (RJS), 2010 WL 2605819 (S.D.N.Y. June 29, 2010) (inviting the Government to renew its motion to stay discovery if the

14

defendant intends to invoke the Fifth Amendment if noticed for a deposition); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants").

A denial of the Government's requested stay would therefore result in asymmetrical discovery, pursuant to which the CFTC Case defendants would be able to obtain statements from relevant witnesses through depositions and use other discovery mechanisms such as requests for admission and interrogatories to obtain information from the CFTC, while the CFTC would be unable to use any of these discovery mechanisms to obtain information from Halligan because of the assertion of his Fifth Amendment rights. Such asymmetry is both unfair and a circumvention of the criminal discovery rules that govern when criminal defendants are entitled to obtain prior statements of the Government's trial witnesses. *See* 18 U.S.C. § 3500(b) (prior statements of Government witnesses must be made available after the witnesses have testified on direct examination).

Therefore, in order to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent defendants from tailoring their testimony and obtaining asymmetrical discovery, and because the CFTC Case defendants will not in any way be prejudiced in preparing and defending themselves, this factor weighs in favor of the Government's application.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that its application to intervene and for a stay of discovery in this matter be granted. A proposed stay order is attached as Exhibit B.

Dated: New York, New York
November 3, 2022

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/ Danielle R. Sassoon
Matthew Podolsky
Alex Rossmiller
Danielle R. Sassoon
Andrew Thomas
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-2415