UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMMODITY FUTURES TRADING
COMMISSION,

                              Plaintiff,           **No. 1:22-cv-3401 (JPO)**

        v.

ARCHEGOS CAPITAL MANAGEMENT, LP, and
PATRICK HALLIGAN,

                              Defendants.

**DEFENDANT ARCHEGOS CAPITAL MANAGEMENT, LP'S
MEMORANDUM OF LAW IN SUPPORT OF PARTIAL OPPOSITION TO THE
<u>GOVERNMENT'S MOTION TO INTERVENE AND FOR A STAY OF DISCOVERY</u>**

Carmen J. Lawrence
William F. Johnson
Eric A. Hirsch
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100

*Attorneys for Defendant
Archegos Capital Management, LP*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ......................................................................................2

ARGUMENT .........................................................................................................7

    A.    Although the Issues Overlap Between the Parallel Proceedings, the Government Parties Engineered the Overlap ......................................................................10

    B.    ACM Has Not Been Indicted ......................................................................14

    C.    Denying a Complete Discovery Stay Serves the Government's Publicly Stated Interest in an Expeditious Conclusion to these Matters ....................................14

    D.    A Complete Discovery Stay Would Prejudice ACM .....................................15

    E.    Denying a Blanket Stay Serves the Court's Interest in Judicial Efficiency.................17

    F.    A Stay is Not in the Public Interest .............................................................18

CONCLUSION ...................................................................................................23

## **TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page(s)**

*CFTC v. Baldwin, et al.*,
   No. 21 Civ. 5707 (LJL), ECF Doc. No. 54 (S.D.N.Y. Nov. 15, 2021) ....................................9

*Harris v. Nassau Cty.*,
   No. 13-CV-4728 (NGG) (RML), 2014 WL 3491286 (S.D.N.Y. July 11, 2014) ...................12

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
   676 F.3d 83 (2d Cir. 2012)............................................................................................ *passim*

*In re Par Pharm., Inc. Sec. Litig.*,
   133 F.R.D. 12 (S.D.N.Y. 1990) ...................................................................................12, 14

*Parker v. Dawson*,
   No. 06 CV 6191 (JFB), 2007 WL 2462677 (E.D.N.Y. Aug. 27, 2007) ...............................12

*Phillip Morris Inc. v. Heinrich*,
   No. 95 Civ. 0328 (LMM), 1996 WL 363156 (S.D.N.Y. June 28, 1996)...............................20

*SEC v. Beacon Hill Asset Mgmt. LLC*,
   No. 02 Civ. 8855 (LAK), 2003 WL 554618 (S.D.N.Y. Feb. 27, 2003) ...............................10

*SEC v. Blakstad*,
   No. 19 Civ. 6387 (DLC), ECF Doc. No. 17 (S.D.N.Y. Sep. 10, 2019)...................................9

*SEC v. Chakrapani*,
   Nos. 09 Civ. 325 (RJS), 09 Civ. 1043 (RJS), 2010 WL 2605819 (S.D.N.Y.
   Jun. 29, 2010).................................................................................................................. 20-22

*SEC v. Cioffi*,
   No. 08–CV–2457 (FB) (WP), 2008 WL 4693320 (E.D.N.Y. Oct. 23, 2008) ........................13

*SEC v. Fraser*,
   No. CV-09-00443-PHX-GMS, 2009 WL 1531854 (D. Ariz. June 1, 2009)................... *passim*

*SEC v. Hu*,
   No. 1:20-cv-05496-DLC, ECF Doc No. 12 (S.D.N.Y. Sept. 21, 2020) ...................................9

*SEC v. Kornman*,
   No. 3:04 CV 1803-L, 2006 WL 1506954 (N.D. Tex. May 31, 2006) ...................................11

*SEC v. LaGuardia*,
   435 F. Supp. 3d 616 (S.D.N.Y. 2020)....................................................................................14

*SEC v. Oakford Corp.*,
181 F.R.D. 269 (S.D.N.Y. 1998) ................................................................................ *passim*

*SEC v. Pinto-Thomaz*,
No. 18-CV-5757 (JPO), 2018 WL 11225631 (S.D.N.Y. Oct. 11, 2018) ................................9

*SEC v. Saad*,
229 F.R.D. 90 (S.D.N.Y. 2005) ............................................................ 10-11, 18, 21

*SEC v. Sandifur*,
No. 05 Civ. 1631, 2006 WL 3692611 (W.D. Wash. Dec. 11, 2006) ..............................11, 21

*SEC v. Shkreli*,
No. 15-CV-7175 (KAM) (RML), 2016 WL 1122029 (E.D.N.Y. Mar. 22,
2016) ........................................................................................................12, 14

*SEC v. Town of Ramapo N.Y., et al.*
No. 16 Civ. 2779 (CS), ECF Doc. No. 90 (S.D.N.Y. Nov. 4, 2016) .....................................20

*SEC v. Treadway*,
No. 04 Civ. 3463 (VM), 2005 WL 713826 (S.D.N.Y. Mar. 30, 2005) ..................................20

*SEC v. Tuzman*,
No. 15 Civ. 7507 (AJN), 2016 U.S. Dist. LEXIS 193710 (S.D.N.Y. Mar. 1,
2016) .................................................................................................. 10, 19-20

*Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech.,
Inc.*,
886 F. Supp. 1134 (S.D.N.Y. 1995) ........................................................................12

*Twenty First Century Corp. v. LaBianca*,
801 F. Supp. 1007 (E.D.N.Y. 1992) ........................................................................12

*United States v. Banco Cafetero Int'l*,
107 F.R.D. 361 (S.D.N.Y. 1985), *aff'd*, 797 F.2d 1154 (2d Cir. 1986) ............................8, 21

*United States v. Certain Real Property & Premises Known as 4003-4005 5th
Ave., Brooklyn, N. Y.*,
55 F.3d 78 (2d Cir. 1995) .................................................................................22

*United States v. One 1964 Cadillac Coupe DeVille*,
41 F.R.D. 352 (S.D.N.Y. 1966) ............................................................................12

*United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*,
811 F. Supp. 802 (E.D.N.Y. 1992) ........................................................................18

*Volmar Distribs., Inc. v. New York Post Co.*,
152 F.R.D. 36 (S.D.N.Y. 1993) ............................................................................12

*In re Worldcom, Inc. Sec. Litig*,
    Nos. 02 Civ. 3288 (DLC), 02 Civ. 4816 (DLC), 2002 WL 31729501
    (S.D.N.Y. Dec. 5, 2002)........................................................................................12

**Other Authorities**

*SEC v. Durante et al.*,
    No. 15 Civ. 9874 (RJS), ECF Doc. No. 32 (S.D.N.Y. Mem. of Law dated
    Mar. 11, 2016)...................................................................................................20

*SEC v. Wey*,
    No. 15 Civ. 7116 (PRK), ECF Doc. No. 91 (S.D.N.Y. Letter Motion dated
    Mar. 6, 2016).....................................................................................................20

28 U.S.C. § 2462.................................................................................................13

Fed. R. Civ. P. 16(b)(1)....................................................................................9-10

S.D.N.Y. Judge Oetken, Indv. Rules and Practices in Civil Cases, Rule 2(D)..............................9

Alvin Hellerstein & Gary Naftalis, Private Civil Actions and Concurrent or
    Subsequent Regulatory or Criminal Proceedings, SG046 ALI–ABA 903,
    (2001)...............................................................................................................19

Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201,
    (S.D.N.Y. 1989)...........................................................................................10, 17

## PRELIMINARY STATEMENT

Archegos Capital Management, LP ("ACM"), the management company of the Archegos

family office ("Archegos") and a defendant in *SEC v. Hwang et al.*, No. 1:22-cv-3402 (SDNY)

(JPO) (the "SEC Case") and *CFTC v. Archegos Capital Management, LP & Patrick Halligan*,

No. 1:22-cv-3401 (SDNY) (JPO) (the "CFTC Case," and together with the SEC Case, the "Civil

Cases") submits this brief in support of its partial opposition to the motion of the United States,

through the U.S. Attorney's Office for the Southern District of New York ("SDNY"), to

intervene and stay discovery in the CFTC Case.[1]

The full discovery stay sought by the SDNY is unwarranted and unsupported.  More than

six months after a joint press conference, in which the SDNY, SEC, and CFTC (the

"Government Parties") announced coordinated actions against ACM, Bill Hwang, and Patrick

Halligan, the SDNY now comes before this Court seeking a stay of indeterminate length of all

discovery based on the pending criminal action against Archegos' founder (Mr. Hwang) and

ACM's Chief Financial Officer (Mr. Halligan) (the "Criminal Case").  The grounds for the

SDNY's motion – the potential for broader discovery in civil actions than that afforded in a

parallel criminal proceeding – are not novel circumstances and should have been, and likely

were, anticipated and considered by the Government Parties at the time of the coordinated

actions.  Nevertheless, the SEC and CFTC filed their civil charges on the same day that the

SDNY indicted Mr. Hwang and Mr. Halligan despite no compelling need to do so, including no

statute of limitations issue.  Having received significant publicity from these closely-coordinated

---

[1] ACM does not object to the SDNY's motion to intervene.  ACM incorporates by reference, as if fully set forth herein, Mr. Halligan's arguments in opposition to the SDNY's motion for a discovery stay.

actions, the CFTC now "does not oppose" the SDNY's motion for a discovery stay pending the outcome of the Criminal Case.

ACM was not named as a defendant in the Criminal Case.  As ACM advised the SDNY, it has no objection to a stay of discovery during the pendency of its motions to dismiss the Civil Cases, which are in the process of being briefed.  Any further stay of discovery is premature at this time – in the event any claims survive ACM's motions, the parties will, in coordination with the Court, enter a case management order that ACM expects can mitigate any tangible concerns the SDNY has about infringing upon the Criminal Case, while at the same time respecting ACM's rights to defend itself against the civil charges it faces.

## STATEMENT OF FACTS

*The Archegos Family Office.*  ACM is the investment manager of the Archegos family office.  Archegos had no outside investors or clients.  It invested only funds that derived from Mr. Hwang's personal wealth.  ECF No. 33, Am. Compl. ("AC") ¶ 18.  As a family office managing only Mr. Hwang's money, Archegos was not an "investment adviser" and was not required to make disclosures about, among other things, its investments and operations in annual filings with the SEC.  It was also exempt from inspection and books and records requirements imposed on registered advisers through the Investment Advisers Act of 1940.  Neither the SEC nor CFTC has questioned Archegos' status as a family office or claimed that Archegos failed to make any required disclosures or filings.

*Archegos' Investments.*  Archegos' investments were primarily made in equity shares (i.e., stock) and in total return security-based swaps ("swaps").  Like many investors, Archegos purchased both equity shares and swaps "on margin."  AC ¶¶ 30-31.  That is, Archegos borrowed money from its counterparties, using the securities in its brokerage accounts as collateral.

2

Most of Archegos' investments were in swaps, which are private contractual arrangements between Archegos and a counterparty bank. The swaps were derivative securities and represented synthetic exposure to an underlying equity security (for example, an equity share of ViacomCBS). They did not represent actual purchases of shares in the underlying company or direct market activity on the part of Archegos. *Id.* ¶ 3 n.1. There was no requirement that Archegos disclose its swaps transactions, and neither the SEC nor CFTC allege otherwise.

Whether or not the market price of the reference security was impacted by any Archegos swap transaction depended not on Archegos, but entirely on the counterparty's discretionary risk management judgment – i.e., whether a counterparty chose to hedge its swaps exposure by purchasing shares in the underlying security at issue, in what amount, and for how long. Purchasing shares in the underlying security is not the only way a bank can hedge its swap exposure, however. It is well-known in the securities industry that there are other ways that a bank can hedge its swaps transactions – beyond purchasing the underlying shares – that would not impact the market prices of the equity shares at issue, including by entering into offsetting swap contracts with another customer.[2] There is no claim that Archegos had any control over its counterparties' hedging activity.

*Archegos' Portfolio.* Archegos invested using a long/short investment strategy. This is an investment strategy that takes long positions in securities that are expected to appreciate (such as ViacomCBS), and short positions in securities that are expected to decline. To balance out its long positions, Archegos took short positions in, among other things, total return swaps that referenced both exchange traded funds ("ETF Swaps") and custom index baskets ("Custom Basket Swaps"). AC ¶¶ 27-28.

---

[2] *See* ECF No. 44, November 1, 2022 Declaration of Eric A. Hirsch Exs. 2-5 (hereinafter "11/1/22 Hirsch Decl.").

At the onset of the COVID-19 pandemic in March 2020, the equities market crashed. As the market rebounded, Archegos continuously added to the size of its investments in its top companies, with the view that although their prices were temporarily suppressed by the pandemic, they would eventually rise again. Between March 2020 and March 2021, both the S&P 500 and the Dow Jones Industrial Average increased by 70%. *See* ECF No. 43, Mem of Law in Supp of ACM Mot. to Dismiss ("ACM MtD Br.") at 6-7. During this period, Archegos' family office grew from a fund with approximately $1.5 billion in net capital to approximately $35 billion in net capital. AC ¶ 39. At all times, Archegos fully complied with the securities laws concerning the disclosure of its equity share positions, and the SEC and CFTC do not contend otherwise. There were no applicable disclosure requirements that governed Archegos' swaps positions.

*Archegos' Collapse.* During the week of March 22, 2021, certain of Archegos' top positions precipitously lost their value. *See* ACM MtD Br. at 9-10. Ultimately, because Archegos was unable to satisfy margin calls, its counterparties delivered default notices and unwound or sold off Archegos' investments and any related hedging positions. Immediately after Archegos' collapse, the SEC, CFTC, and SDNY launched investigations into its circumstances. In connection with those investigations, ACM produced over 4.6 million pages of documents to each of the Government Parties.[3]

*The Government Actions.* On April 27, 2022, Mr. Hwang and Mr. Halligan were indicted by the SDNY for violations of RICO and the securities laws. The same day, in coordination with the SDNY, the SEC and CFTC filed civil actions naming ACM as a defendant. The SEC Case is also pending before this Court. The Criminal Case (*U.S. v. Hwang & Halligan*, 22 Cr. 240

---

[3] November 17, 2022 Declaration of Eric A. Hirsch ("11/17/22 Hirsch Decl.") filed herewith, ¶ 6.

(AKH)) is pending before Judge Alvin Hellerstein in this District.  Mr. Hwang and Mr. Halligan have pled not guilty to the charges, and the court in the Criminal Case has set a trial date for October 10, 2023.  11/1/22 Hirsch Decl. Ex. 10.

*The April 27, 2022 Press Conference.*  On the same day the indictment and complaints were filed, the three government agencies provided a joint press conference, hosted by the U.S. Attorney for the SDNY, Damian Williams (the "April 27 Press Conference").  He was joined by Deputy Attorney General Lisa Monaco, SEC Enforcement Director Gurbir Grewal, and CFTC Deputy Director of Enforcement Bernard Saltan.  Mr. Williams referred to the SEC and the CFTC as "partners" and commended them for their "invaluable" "dedication and hard work" during the investigation.[4]  The SEC's Director of Enforcement touted the "parallel" civil complaint filed by his agency and the collaboration with the SDNY and the CFTC in bringing these actions.  The CFTC's Deputy Director of Enforcement, although in attendance, did not address the media at the press conference.  The CFTC did issue a press release that day, however, stating that:  "These actions demonstrate the CFTC will continue to work vigilantly to protect the financial integrity of transactions in the swaps markets."[5]

*ACM's Motions to Dismiss.*  On June 28, 2022, and July 1, 2022, respectively, ACM moved to dismiss the SEC and CFTC Complaints.  Rather than responding to the motions, both agencies filed amended complaints, which ACM moved to dismiss on October 25, 2022 and November 1, 2022, respectively.  Those motions are scheduled to be fully briefed by January 23, 2023 (in the SEC Case) and February 6, 2023 (in the CFTC Case).

---

[4] USAO SDNY, United States Attorney Announces Charges In Connection With Collapse Of Archegos Capital Management, YouTube (May 6, 2022), available at https://www.youtube.com/watch?v=DZIWvpDmhc8; 11/17/22 Hirsch Decl. Ex. 1 (transcript of April 27, 2022 Press Conference).

[5] 11/17/22 Hirsch Decl. Ex. 2 (Press Release, CFTC Charges Archegos Capital Management and Three Employees with Scheme to Defraud Resulting in Swap Counterparty Losses Over $10 Billion (Apr. 27, 2022)).

The CFTC and SEC both allege that certain ACM employees made misrepresentations to Archegos' counterparties in connection with their evaluation of Archegos' credit risk.[6]  As is explained in ACM's motion to dismiss the CFTC Case (ECF No. 43), these allegations fail to state a claim.  The Supreme Court has made clear that fraud claims are outside the scope of the anti-fraud provisions of the federal securities laws unless they relate to the value of the security traded or the consideration received for those trades.  The misrepresentations at issue in both Civil Cases relate to the characteristics of Archegos' portfolio, and were allegedly made to induce improved margin rates and increased trading capacity, and thus fall outside the scope of the federal securities laws.  The CFTC's claims suffer from an additional defect.  The CFTC premises its civil action on two products – ETF Swaps and Custom Basket Swaps – over which it does not even have jurisdiction.  Both of these securities are security-based swaps, which are securities that fall under the exclusive jurisdiction of the SEC.  *See* ACM MtD Br. at 11-17.

*The SDNY's Stay Motions.*  On November 3, 2022, more than six months after the Civil Cases were filed in lockstep coordination with the SDNY's Criminal Case, the SDNY filed a motion in the CFTC Case to intervene and stay discovery during the pendency of the Criminal Case.[7]  *See* ECF No. 52, SDNY Moving Brief ("SDNY Br.") at 1.  The CFTC "does not oppose" the SDNY's request for a stay.  SDNY Br. at 1.  In its moving brief, the SDNY asserts that "defendants have sought to delay trial in the Criminal Case while seeking discovery in the CFTC case."  *Id*. at 2.  This statement is inaccurate.  First, ACM is not a defendant in the Criminal

---

[6]  The SEC has also alleged market manipulation claims against ACM, which fail to state a claim for the reasons explained in ACM's motion to dismiss the SEC Case.  *See* SEC Case, ECF No. 55.

[7]  The SDNY filed an identical motion seeking the same relief in the SEC Case on November 1, 2022.  *See* SEC Case, ECF Nos. 70-71.  ACM filed its brief in opposition to the SDNY's motion in the SEC Case on November 15, 2022.  *See* SEC Case, ECF Nos. 73-74.

Case, and has had no role at all in setting the calendar in that case.  Second, and more significantly, no discovery has been initiated in the Civil Cases by any party.

As ACM has advised the SDNY, it does not object to a discovery stay while the motions to dismiss the Civil Cases are pending.  In the event any claims survive, however, ACM intends to vigorously defend itself from the claims in the Civil Cases.  Although ACM has no ongoing business operations and is engaging in winding down its affairs (*see* SDNY Mem. at 11), that does not mean that it has no interest in defending itself against the factually insufficient and legally flawed fraud allegations made by the SEC and CFTC.  The SEC and CFTC, through the Civil Cases, are seeking to impose fines and penalties that they are not entitled to.  ACM also believes that clearing its name of the serious charges brought by the SEC and CFTC will vindicate not only ACM, but the more than 50 individuals who formerly served as ACM employees and are currently burdened with having worked for a family office that is accused of securities fraud.

## ARGUMENT

The Second Circuit has characterized a stay of a civil case during the pendency of a criminal proceeding as an "extraordinary remedy." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012).  The question of whether to grant a stay requires "a particularized inquiry into the circumstances of, and the competing interests in, the case."  *Id.* at 99 (citation and quotations omitted).  In *Louis Vuitton*, the Second Circuit acknowledged that District Courts in this Circuit often used a six-factor test to assess whether a stay is appropriate.  *Id.* (holding that this test, and similar tests from other Circuits, "can do no more than act as a rough guide for the district court as it exercises its discretion.").  The six-factor balancing test considers:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case;

2) the status of the case, including whether the defendants have been indicted;

3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay;

4) the private interests of and burden on the defendants;

5) the interests of the courts; and

6) the public interest

*Louis Vuitton*, 676 F.3d at 99 (upholding the denial of a stay) (citations omitted); *SEC v. Oakford Corp.,* 181 F.R.D. 269, 271 (S.D.N.Y. 1998) (citations omitted).  Ultimately, the court's decision should consider the "particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton*, 676 F.3d at 99.

As the party seeking the stay, the SDNY "bears the burden of establishing its need."  *Id*. at *97 (citing *Clinton v. Jones,* 520 U.S. 681, 706-08 (1997)).  To justify a stay, the SDNY must provide "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *United States v. Banco Cafetero Int'l*, 107 F.R.D. 361, 366 (S.D.N.Y. 1985), *aff'd*, 797 F.2d 1154 (2d Cir. 1986) (quoting *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)) (denying stay).  The SDNY has not satisfied its burden, relying instead on boilerplate arguments of supposed harm that ignore the particular facts and circumstances here, including the fact that the SDNY – along with the SEC and CFTC – engineered the circumstances that resulted in these parallel proceedings.

The SDNY instead raises generic concerns about potential civil discovery impacting the criminal case because civil discovery rules are broader.  This is not sufficient to establish the "substantial prejudice" necessary to warrant a stay.  *SEC v. Fraser*, No. CV-09-00443-PHX-GMS, 2009 WL 1531854, at *2 (D. Ariz. June 1, 2009) (citing *United States v. All Funds on Deposit,* 767 F. Supp. 36, 42 (E.D.N.Y. 1991) ("[M]ere conclusory allegations of *potential* abuse

or simply the *opportunity* by the claimant to improperly exploit civil discovery ... will not avail on a motion for a stay.") (emphasis in original)).  At a minimum, the SDNY's motion is premature absent an actual discovery request that imposes some specific prejudice on the Criminal Case.  Moreover, the SDNY's boilerplate arguments regarding circumventing or "abusing" criminal discovery rules or tailoring defenses in the Criminal Case (SDNY Br. at 1) are both premature and inapplicable to ACM, since it is not a defendant in that case.

In support of its arguments, the SDNY points to several cases where, it claims, courts have entered stays "even over a defendant's objection."  SDNY Br. at 8.  But the cases cited do not support the SDNY's argument.  One of those cases is a decision*, SEC v. Pinto-Thomaz*, No. 18-CV-5757 (JPO), 2018 WL 11225631 (S.D.N.Y. Oct. 11, 2018) (Oetken, J.), in which this Court quite explicitly stated that the government's stay motion was granted because, in part, "neither the SEC nor Defendants have identified any prejudice that would result from a stay and, indeed, *no party has sought to oppose a stay*."  *Id.* *2 (emphasis added).  Other unpublished orders and opinions cited by the SDNY for the same point also do not award stays "over a defendant's objection."  Like *Pinto-Thomaz*, in *CFTC v. Baldwin, et al.*, No. 21 Civ. 5707 (LJL), ECF Doc. No. 54 (S.D.N.Y. Nov. 15, 2021), *SEC v. Blakstad*, No. 19 Civ. 6387 (DLC), ECF Doc. No. 17 (S.D.N.Y. Sep. 10, 2019) and *SEC v. Hu*, 1:20-cv-05496-DLC, ECF Doc No. 12 (S.D.N.Y. Sept. 21, 2020) (all cited at SDNY Br. at 9) the government's stay motions were granted where the defendants *consented* to the stay.[8]

In the event any claims survive ACM's motions to dismiss, ACM believes that the parties to the Civil Cases should be afforded the opportunity to submit a scheduling order under Fed. R.

---

[8] The SDNY cites several unpublished decisions and orders (such as *Baldwin, Blakstad*, and *Hu*) available only in slip opinions or from court dockets, but has not included those decisions and orders in a submission with its motion. *See* Judge Oetken Indv. Rules and Practices in Civil Cases, Rule 2(D).  Copies of unpublished decisions and orders cited herein are attached to the 11/17/22 Hirsch Decl.

Civ. P. 16(b)(1) that includes a discovery schedule that is tailored to address any concerns raised by the pending Criminal Case, and at the same time permits the defendants to make efficient use of the Court's calendar by, at a minimum, requesting documents from the CFTC and third parties necessary to litigate the claims in the Civil Cases. This approach is consistent with the holdings of several of the decisions cited by the SDNY, which recognize that tailored discovery in connection with parallel proceedings is more appropriate than a complete discovery stay. *See SEC v. Tuzman,* No. 15 Civ. 7507 (AJN), 2016 U.S. Dist. LEXIS 193710 (S.D.N.Y. Mar. 1, 2016) (SDNY Br. at 13-14) (granting limited stay as to certain specific categories of discovery but allowing other categories to proceed); *SEC v. Beacon Hill Asset Mgmt. LLC,* No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *2 (S.D.N.Y. Feb. 27, 2003) (SDNY Br. at 14) (same); *see also* Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 211-12 (S.D.N.Y. 1989) (SDNY Br. at 10) (report from judges' conference, noting alternatives to a complete discovery stay include "the issuance of protective orders under Civil Rule 26(c), quashing or modifying subpoenas under Civil Rule 45(b), limiting examinations under Civil Rule 30(d), and sealing confidential depositions.").

**A.      Although the Issues Overlap Between the Parallel Proceedings, the Government Parties Engineered the Overlap**

The first factor of the six-factor test in *Louis Vuitton* considers the extent to which the issues between the civil and criminal proceedings overlap. *See Louis Vuitton*, 676 F.3d at 97. There is overlap here, but it is a direct result of the publicly acknowledged coordination among the Government Parties, who made a tactical decision to bring parallel civil and criminal charges at the same time. As Judge Rakoff pointed out under similar circumstances:

> Although applications for a stay similar to the one here made by the U.S. Attorney are not uncommon in such "parallel proceedings" situations, they are not without their bizarre aspects. It is bewildering enough that Congress has decreed that, even

though someone facing the potentially ruinous financial penalties of an SEC civil complaint should be accorded substantial discovery in order to defend herself, the same defendant facing the even more severe penalties of a criminal action should barely receive any discovery at all. But it is stranger still that the U.S. Attorney's Office, having closely coordinated with the SEC in bringing simultaneous civil and criminal actions against some hapless defendant, should then wish to be relieved of the consequences that will flow if the two actions proceed simultaneously.

*SEC v. Saad*, 229 F.R.D. 90, 91 (S.D.N.Y. 2005).

The same tactic was criticized in *SEC v. Sandifur*, No. 05 Civ. 1631, 2006 WL 3692611 (W.D. Wash. Dec. 11, 2006).  There, after an individual was indicted, the SEC filed a civil complaint asserting claims against the criminal defendant's employer, as well as several other employees of that company.  The court denied the government's request for a stay, observing that unlike a motion to stay a private action brought by a private litigant, "[c]ourts regularly deny stays when civil regulators have worked directly in concert with the criminal prosecutors during the investigation and the Government has used parallel proceedings to its advantage." *Id.* at *2; *see also SEC v. Kornman*, No. 3:04 CV 1803-L, 2006 WL 1506954 (N.D. Tex. May 31, 2006) (permitting defendant to proceed with already-noticed discovery in an SEC action where the SEC moved to dismiss the action after the government's motion for a stay was denied).

The government in *Sandifur* was not seeking a complete stay of discovery, but only a stay of the depositions of five non-party witnesses.  In denying the stay, the court acknowledged the government's objections to allowing those depositions to proceed, but further observed that "[h]ad the Government thought this was a serious problem, it could have easily avoided it by waiting until after the criminal matter was resolved to institute civil proceedings." *Id*. at *3. Instead, the U.S. Attorney's Office in *Sandifur* – like the SDNY here – "worked directly with the SEC and voluntarily chose to institute both civil and criminal actions at the same time." *Id*.; *see*

*also Fraser*, 2009 WL 1531854, at *3 (denying stay and citing cases denying stays "when the Government itself brings a civil lawsuit simultaneous with a criminal proceeding.").

The cases cited by the SDNY do not compel a contrary result. *Parker v. Dawson*, No. 06 CV 6191 (JFB), 2007 WL 2462677 (E.D.N.Y. Aug. 27, 2007) (SDNY Br. at 10) and *Volmar Distribs., Inc. v. New York Post Co.*, 152 F.R.D. 36 (S.D.N.Y. 1993) (SDNY Br. at 8) were both private civil actions where the defendants, not the government, sought stays.  They have no bearing on a government motion to stay parallel civil actions it coordinated with two other federal agencies.[9]  *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352 (S.D.N.Y. 1966) (SDNY Br. at 10) was a forfeiture action where the defendant, also a defendant in a parallel criminal case, had served interrogatories on the U.S. government that the court determined were intended to "secur[e] information regarding the legality of the seizure" of the automobile at issue, which was "of paramount importance in the pending criminal action."  *Id*. at 354-55.  No discovery requests have been served by any defendant here, and ACM is not proposing to direct any discovery requests to the SDNY while the Criminal Case is pending.[10]

---

[9] *See also Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) (SDNY Br. at 11) (private civil action where defendants moved for a complete stay); *In re Par Pharm., Inc. Sec. Litig.*, 133 F.R.D. 12 (S.D.N.Y. 1990) (SDNY Br. at 11) (denying stay in private civil action where defendants moved for a stay); *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992) (SDNY Br. at 12) (private civil action where government and one of the defendants moved for a discovery stay). In *In re Worldcom, Inc. Sec. Litig*,, Nos. 02 Civ. 3288 (DLC), 02 Civ. 4816 (DLC), 2002 WL 31729501 (S.D.N.Y. Dec. 5, 2002) (SDNY Br. at 8), the government's motion for a stay was limited to proceedings against one defendant (who took no position on the motion) and a limited discovery stay of two non-party cooperating witnesses that was unopposed by the other parties.  *Id*. at *10.  *Harris v. Nassau Cty.*, No. 13-CV-4728 (NGG) (RML), 2014 WL 3491286 (S.D.N.Y. July 11, 2014) (SDNY Br. at 9) was a § 1983 civil rights action that the government defendant moved to stay while a parallel criminal proceeding was pending over the objection of the pro se plaintiff/criminal defendant.

[10] While the court in *SEC v. Shkreli*, No. 15-CV-7175 (KAM) (RML), 2016 WL 1122029 (E.D.N.Y. Mar. 22, 2016) (SDNY Br. at 9) did grant a stay where parallel civil and criminal proceedings were simultaneously brought by the Department of Justice and SEC, there, unlike here, all of the civil defendants were also facing criminal charges.

Any potential issues arising from discovery in the Civil Cases should have been anticipated and considered by the Government Parties as part of their litigation strategy. There was no need to commence simultaneous proceedings here. The statutes of limitations for the alleged civil violations have years left to run.[11] The "Relevant Period" alleged in the SEC's amended complaint runs from September 2020 to March 2021, meaning that the SEC had until September 2025 to file its action. *See* SEC Case, ECF No. 47, Amen. Compl. ¶ 3. For the CFTC, the alleged "Relevant Period" in its amended complaint runs from March 2020 to March 2021, meaning that the CFTC had until March 2025 to file its action. AC ¶ 1. Nevertheless, the SEC and CFTC, in coordination with the SDNY, chose to file the Civil Cases in April of 2022, joining the SDNY at the podium during the April 27 Press Conference. Having chosen to avail themselves of the publicity associated with their simultaneous filings, the Government Parties should not be permitted to avoid the consequences of proceeding with reasonably tailored discovery in the Civil Cases while the Criminal Case is pending.

Overall, "[c]ourts are justifiably skeptical of blanket claims of prejudice by the government where—as here—the government is responsible for the simultaneous proceedings in the first place." *SEC v. Cioffi*, No. 08–CV–2457 (FB) (WP), 2008 WL 4693320, at *1–2 (E.D.N.Y. Oct. 23, 2008) (denying stay). Instead, the "far more sensible approach is to allow discovery to go forward, but to allow the U.S. Attorney to object to particular requests." *Id*. at *2. The Court should deny a preemptive full stay of discovery here as premature.

---

[11] The statute of limitations for civil actions by the government under the Securities Act of 1933, the Securities Exchange Act of 1934, and the Commodity Exchange Act is 5 years from the violation. 28 U.S.C. § 2462.

**B.      ACM Has Not Been Indicted**

The second factor considers whether there has been an indictment in the criminal case. *Louis Vuitton*, 676 F.3d at 97.  There is a presumption that without an indictment, there will be no stay.  *Par Pharm.*, 133 F.R.D. at 13 (denying request for a stay absent an indictment).  Here, although Mr. Halligan has been indicted, ACM has not.  Cases such as *SEC v. LaGuardia*, 435 F. Supp. 3d 616 (S.D.N.Y. 2020) (SDNY Br. at 8), where the only defendants to the civil action have also been indicted, are not applicable here since there was no need to consider the prejudice of a complete discovery stay to the interests of an unindicted civil defendant.  In any event, this factor – which considers whether an indicted defendant will be faced with the choice of whether to testify in the parallel civil action or avail themselves of their Fifth Amendment rights – is not relevant here.  ACM's position is that some form of discovery should proceed in the Civil Cases, including at a minimum document discovery.  It has no objection to a stay of depositions or other testimonial-based discovery that may otherwise interfere with the Fifth Amendment rights of its co-defendant.

**C.      Denying a Complete Discovery Stay Serves the Government's Publicly
          Stated Interest in an Expeditious Conclusion to these Matters**

The third factor considers "the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay." *Louis Vuitton*, 676 F.3d at 97.  The CFTC has apparently advised the SDNY that it "does not oppose" the SDNY's motion.  SDNY Br. at 1.  Where the civil enforcement agency takes no position on the government's motion for a stay, "that factor has no bearing on the analysis." *Shkreli*, 2016 WL 1122029, at *2.  This sudden lack of urgency in litigating these matters stands in stark contrast to the rush in bringing these actions.  Standing before the press, the SDNY touted the speed of the joint investigation:

> What I can speak to … is the speed with which we were able to get to the bottom of this conduct.  These cases are hard.  These cases are complex.  They often take a lot of time.  I'm proud we were able to bring this investigation to a conclusion within a year of conduct being found.  And I think that's a model for what we will continue to do going forward in this space.

11/17/22 Hirsch Decl. Ex. 1 (April 27, 2022 Press Conference Transcript).  The CFTC, for its part, issued a press release stating, "[t]hese actions demonstrate the CFTC will continue to work vigilantly to protect the financial integrity of transactions in the swaps markets."  *Id.*, Ex. 2.

By filing a complaint containing serious securities fraud charges, the CFTC implicitly represented to the Court that it was prepared to litigate those claims.  *See Oakford,* 181 F.R.D. at 273 ("To use the federal courts as a forum for filing serious civil accusations that one has no intention of pursuing until a parallel criminal case is completed is a misuse of the processes of these courts.")  The CFTC's current position is inconsistent with that implicit representation, and is prejudicial to ACM where a complete stay of discovery would prevent ACM from defending itself against any claims that survive its motions to dismiss.

**D.     A Complete Discovery Stay Would Prejudice ACM**

The fourth factor considers "the private interests of and burden on the defendants."  *Louis Vuitton*, 676 F.3d at 97.  A civil action, "like the criminal case, asserts serious violations of the securities laws, and Defendant[ ] ha[s] a strong interest in being able to defend [himself] against the SEC's allegations as quickly as possible." *Fraser*, 2009 WL 1531854, at *3-4.  The SDNY makes three arguments as to why ACM would not be prejudiced by its proposed discovery stay, none of which have merit.

First, the SDNY claims that since ACM has no ongoing business operations and is engaged in "winding down its affairs," "it seems unlikely that its business operations will be impaired by a stay."  SDNY Br. at 12.  To begin with, this argument includes the incorrect inference that the only possible effect of a stay would be on ACM's business operations.  ACM's

legal rights are at stake, having been accused of fraud in factually unsupported and legally

insufficient allegations.  ACM has a right to defend itself in court regardless of what might be

going on with respect to its business operations.  Further, the argument ignores what "winding

down its affairs" means.  That wind down necessarily involves moving as expeditiously as

possible to resolve all pending litigations, including the civil actions commenced by the SEC and

CFTC.  In addition, ACM employed over 50 individuals who are presently being unfairly

associated with a family office that has been accused of securities fraud.  Any measures that

delay ACM's ability to clear its name of these charges unfairly prejudices not only ACM, but

also those former employees.

Second, the SDNY argues that if the Criminal Case is successful against Mr. Hwang, Mr.

Hwang's ownership of Archegos (and ACM) would be subject to forfeiture anyway, and a stay

would prevent the "needless depletion" of ACM's assets.  SDNY Br. at 12.  This asks the Court

to turn the presumption of innocence on its head, and presume that Mr. Hwang will be found

guilty and that the SDNY will prevail on its forfeiture claims.  Prosecutors do not get to decide

when a defendant's right to challenge allegations through litigation is "needless."  The SDNY

cites no basis for the Court to proceed in this manner, and ACM is aware of none.

Finally, the SDNY argues that ACM would not be prejudiced by a discovery stay because

the Protective Order in the Criminal Case permits Mr. Hwang and Mr. Halligan to share

discovery in that action with ACM, "enabling Archegos to prepare its civil defense while the

Criminal Case proceeds." (SDNY Br. at 12).  This position assumes, wrongly, that the criminal

discovery file would contain everything the defense might ever seek to discover.  The SDNY's

discovery file is by its nature one-sided, however.  It consists of material gathered by the SDNY

during its investigation in an attempt to support charges against Mr. Hwang and Mr. Halligan.  It

does not represent a complete record of all of the issues germane to the claims brought by the

SEC and CFTC in the Civil Cases against ACM, but only that information the SDNY deemed in

its discretion was important to obtain.  Moreover, although these investigations were

coordinated, it is unclear to what extent the SDNY has possession of relevant information that

was obtained by the SEC or the CFTC in their independent investigations.  Therefore, the

discovery provided by the SDNY may have gaps in the information relevant to the SEC or CFTC

Cases.

**E.      Denying a Blanket Stay Serves the Court's Interest in Judicial Efficiency**

The fifth factor considers the interests of the courts.  *Louis Vuitton*, 676 F.3d at 97.  The

SDNY argues that a stay would save the Court time and resources because the Criminal Case's

outcome will likely affect the conduct, scope and result of the Civil Cases.  The SDNY's own

cited authority disagrees.  *See* Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. at

211 (SDNY Br. at 10) ("Indeed, I should stress that a general stay of all civil discovery is not by

any means the best option available to the court or to the litigants.  Stays can and should be

tailored to avoid undue prejudice.  By limiting both the time and subject matter covered in

temporary deferrals of particular discovery, a Court can allow civil proceedings to progress as

much as possible without prejudicing the relative interests of the litigants.").

If the motions to dismiss fail to resolve all of the claims against ACM, considerations of

judicial efficiency would best be served by permitting the parties to work out a discovery

schedule that permits some discovery to proceed, including document-based discovery on

ACM's counterparties.  There are a dozen financial institutions at issue, several of which are

foreign-based institutions or institutions with foreign-based affiliates.  Allowing some discovery

to proceed will allow the parties to make valuable progress in resolving any discovery issues

(including issues related to obtaining discovery from those foreign-based institutions) while the

Criminal Case is pending.  None of that discovery would prejudice the Criminal Case.  Under the circumstances, the path to judicial efficiency is best served by allowing the parties to work out a discovery schedule that is sensitive to the requirements of the Criminal Case.  *See United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 811 F. Supp. 802, 808 (E.D.N.Y. 1992) (denying stay and holding that the "convenience of the courts is best served when motions to stay proceedings are discouraged").

## F.    A Stay is Not in the Public Interest

The sixth factor considers the public interest.  *Louis Vuitton*, 676 F.3d at 97.  Here, the SDNY argues that the public has an interest in ensuring that civil discovery is not used to circumvent restrictions on criminal discovery.  SDNY Br. at 13.  Generalized concerns about criminal defendants using civil discovery to get broader disclosure than what is available in a criminal action are not sufficient to support a discovery stay.  *See Saad*, 229 F.R.D. at 91; *Fraser*, 2009 WL 1531854, at *2 ("The Government, however, offers only the conclusory allegation that the criminal case might be harmed simply because civil discovery rules are more broad than criminal discovery rules. Such a blanket assertion is not sufficient to establish the 'substantial prejudice' that is necessary to warrant granting a stay.") (citations omitted).  As Judge Rakoff pointed out in *Oakford*, this argument amounts to no more than a complaint of a loss of tactical advantage.  *See Oakford Corp.,* 181 F.R.D. at 272–73 ("[T]o the extent that the defendants' discovery requests simply result in the happenstance that in defending themselves against the serious civil charges ... they obtain certain ordinary discovery that will also be helpful in the defense of their criminal case, there is no cognizable harm to the government ... beyond its desire to maintain a tactical advantage.").

In coordinating the filing of the Criminal and Civil Cases, the SDNY intentionally chose to forgo this tactical advantage.  If the SDNY truly perceived the risk of discovery in the Civil

Cases to be harmful to the public interest, the SDNY could have requested that the SEC and CFTC delay the filing of their actions until the criminal case was resolved, and the SEC and CFTC likely would have acquiesced – the relevant statutes of limitations have years left to run. The SDNY, SEC and CFTC opted instead to file all three actions at the same time, despite the concerns now raised by the SDNY in the motion for a stay.  It is this circumvention of the litigation process, not some hypothetical one posed by as-yet unserved civil discovery requests from the defendants, that should concern the Court.  *See Oakford*, 181 F.R.D. at 271 ("the SEC never had any intention of providing discovery in this case but nonetheless permitted the case to proceed, thereby seeking the advantage of filing its charges without having to support them."). As Judge Hellerstein, who is presiding over the Criminal Case, has written, "[a] stay … will not be granted when movant intentionally creates the impediment which he then seeks to erect as a shield against disclosure."  Alvin Hellerstein & Gary Naftalis, Private Civil Actions and Concurrent or Subsequent Regulatory or Criminal Proceedings, SG046 ALI–ABA 903, 905 (2001) (citing *Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494 (S.D.N.Y. 1987)).

The SDNY also contends that a stay would "preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses."  SDNY Br. at 13.  There is absolutely no basis for such inflammatory rhetoric here, and the SDNY cites none.

Citing *SEC v. Tuzman*, No. 15-CV-7507 (AJN), 2016 U.S. Dist. LEXIS 193710 (S.D.N.Y. Mar. 1, 2016), the SDNY argues that the limitations on discovery in criminal cases are important because they are designed to protect against perjury and manufactured evidence, the intimidation of prospective witnesses or government informants, and surprises by the defendant. SDNY Br. at 13-14.  But it is the SDNY's burden to demonstrate that those concerns are

substantiated here, and they have provided no evidence in support of this generic claim that is typically made in every stay motion the SDNY files. *See Louis Vuitton*, 676 F.3d at 99. The Government Parties have been investigating this case for over a year and have already interviewed the witnesses and subpoenaed the documents they believe are pertinent to their cases. Further, the SDNY has not – and cannot – demonstrate that allowing discovery to proceed in the Civil Cases will "intimidate" Archegos' former counterparties, all of which are large, sophisticated financial institutions. In addition, given the extensive pre-filing investigation here, there is little risk that discovery will result in surprises for the prosecution at trial. Indeed, the SDNY's position here is undermined by *Tuzman*. There, the government was seeking a "partial stay of discovery," not a complete stay of discovery. *Tuzman*, 2016 U.S. Dist. LEXIS 193710, at *3. While acknowledging the government's concerns regarding the risks of perjury and manufactured evidence, the court in *Tuzman* entered an order that would have permitted some discovery to proceed based on the needs of that particular case, which is the same result ACM is requesting here if its motions to dismiss are unsuccessful. *See id.* at *10-11; *see also Oakford*, 181 F.R.D. at 272 (discovery requests that threaten the integrity of the criminal case are "subject to being narrowed or quashed upon an appropriate showing by the United States Attorney.").[12]

This result would be consistent with the holding of another case cited by the SDNY. In *SEC v. Chakrapani*, Nos. 09 Civ. 325 (RJS), 09 Civ. 1043 (RJS), 2010 WL 2605819 (S.D.N.Y.

---

[12] *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 0328 (LMM), 1996 WL 363156 (S.D.N.Y. June 28, 1996) (SDNY Br. at 14) is similarly inapposite. There, unlike here, the government recognized the competing interests of the parties and did not request a complete stay of discovery while a criminal investigation was pending. *Id.* at *18-19 (requesting a discovery stay that permitted document discovery to proceed); *see also SEC v. Treadway*, No. 04 Civ. 3463 (VM) (JCF), 2005 WL 713826, at * 2 (S.D.N.Y. Mar. 30, 2005) (SDNY Br. at 8) (government's request for a stay was limited to the depositions of two fact witnesses); *SEC v. Town of Ramapo N.Y., et al.* No. 16 Civ. 2779 (CS), ECF Doc. No. 90 at 5, 42 (SDNY Br. at 9) (same). Likewise, the government requested limited – not complete – discovery stays in *SEC v. Wey*, No. 15 Civ. 7116 (PRK), ECF Doc. No. 91 (S.D.N.Y. Letter Motion dated Mar. 6, 2016) and *SEC v. Durante et al.*, No. 15 Civ. 9874 (RJS), ECF Doc. No. 32 (S.D.N.Y. Mem. of Law dated Mar. 11, 2016) (SDNY Br. at 9).

Jun. 29, 2010) (SDNY Br. at 14), Judge Sullivan granted a motion to compel discovery over the government's objection that a civil defendant – also a defendant in a parallel criminal case – was attempting to use civil discovery to obtain a tactical advantage in the criminal case:

> The Court, furthermore, is not particularly moved by the government's plight in this context.  Surely, the government was well aware of the discrepancy between the civil and criminal discovery rules when it, along with the SEC, chose to initiate parallel proceedings against Contorinis [a defendant in the criminal and civil proceedings].  Before doing so, the government and SEC could have engaged in a cost-benefit analysis that weighed the benefits of simultaneously initiating civil and criminal proceedings against the cost of possibly losing the government's tactical discovery advantage in the criminal case.

*Id.* at *7.

The SDNY's argument "boils down in the end to its standard complaint that the defendants are getting a 'special advantage' because, if they were only facing a criminal indictment, they would not be entitled to [the discovery] at this time." *Saad,* 229 F.R.D. at 92 (permitting "full document discovery, as well as depositions of the non-parties" to proceed). Courts have found that such generalized assertions fall short of the extraordinary circumstances required to impose a stay.  *See, e.g., Banco Cafetero Int'l,* 107 F.R.D. at 366 (denying stay where government made only conclusory allegations of prejudice to criminal case from civil discovery); *Sandifur,* 2006 WL 3692611, at *3 (denying stay where the government's generalized assertions about need to protect integrity of investigation and concern about broader discovery available in civil action carried "little weight" when balanced against interests of defendants, court, and public in efficient resolution of civil matter).

The SDNY next argues that allowing civil discovery to proceed raises the risk that those defendants that are also defendants in the criminal case would be able to pursue "asymmetrical discovery" by obtaining discovery of the CFTC but asserting their Fifth Amendment rights in response to any discovery by the CFTC.  SDNY Br. at 15.  This argument was also rejected in

*Chakrapani* where, as here, none of the relevant witnesses had yet invoked the Fifth Amendment.  *Chakrapani*, 2010 WL 2605819, at * 11 ("Because Contorinis and other relevant witnesses have not yet invoked their Fifth Amendment privileges in connection with discovery, the Court declines to speculate on the merit of potential stay applications.").  Furthermore, the notion that any discovery in the CFTC Case would be "asymmetrical" with respect to ACM is absurd in light of the fact that ACM has produced over 4.6 million documents to the CFTC during its pre-filing investigation.

More importantly, the as yet hypothetical question of whether Mr. Halligan will assert his Fifth Amendment right against self-incrimination does not negate the prejudice to ACM that would result from a complete discovery stay.  As the Second Circuit has held:

> [B]ecause all parties – those who invoke the Fifth Amendment and those who oppose them - should be afforded every reasonable opportunity to litigate a civil case fully and because exercise of Fifth Amendment rights should not be made unnecessarily costly, courts, upon an appropriate motion, should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege.

*United States v. Certain Real Property & Premises Known as 4003-4005 5th Ave., Brooklyn, N. Y.*, 55 F.3d 78, 83-84 (2d Cir. 1995) (citation omitted).  Certainly, in the event any claims survive ACM's motion to dismiss, there is no reason to impose a complete stay of discovery based on these concerns.

## CONCLUSION

For the reasons set forth above, the Court should deny the SDNY's motion for a complete stay of discovery as both premature and overbroad.

Dated: New York, New York
November 17, 2022                    **KING & SPALDING LLP**

By:  */s/ Carmen J. Lawrence*
Carmen J. Lawrence
William F. Johnson
Eric A. Hirsch
1185 Avenue of the Americas
New York, NY 10036-4003
Tel: (212) 556-2100
Email: clawrence@kslaw.com

*Attorneys for Defendant*
*Archegos Capital Management, LP*